IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____

GLASS DIMENSIONS, INC. ON BEHALF )
OF THE GLASS DIMENSIONS, INC.        )        Case No. 1:10-cv-10588 (JLT)
PROFIT SHARING PLAN AND TRUST,  )
and all others similarly situated,             )
                                                              )
                                  Plaintiffs,        )
                                                              )
              vs.                                          )
                                                              )
STATE STREET BANK AND TRUST      )
COMPANY,                                            )
                                                              )
                                  Defendant.       )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Lori A. Martin
Dawn M. Wilson
WILMER CUTLER PICKERING
   HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888
lori.martin@wilmerhale.com

Jeffrey B. Rudman (433380)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Counsel for Defendant State
Street Bank and Trust Company*

Table of Contents

Page

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...........................................................................................4

     A.    The Parties ..............................................................................4

     B.    The Securities Lending Program ..............................................5

     C.    Effect of the Liquidity Crisis on the Cash Collateral Pools........................6

     D.    Recent Developments ..............................................................7

     E.    Plaintiff's Claims ....................................................................8

ARGUMENT .............................................................................................................9

    I.    PLAINTIFF LACKS ARTICLE III STANDING FOR FAILURE TO SHOW
          THAT IT HAS SUFFERED SOME ACTUAL, extant INJURY ...........................9

          1.    Plaintiff Has Not Alleged an Actual Injury ...................................10

          2.    Plaintiff's Claim Is Now Moot ....................................................13

    II.    The Complaint Fails to State a Claim under ERISA Sections 404 and 406 ..........14

     A.    The Complaint Fails to Allege Any Actual Damages ...............................14

     B.    Plaintiff Fails to Plead That the Defendant Violated Any Fiduciary Duty
         Under ERISA Section 404 ........................................................15

         1.    The Alleged Imprudence Violations Impermissibly Are Based
            Upon Hindsight........................................................................15

         2.    Plaintiff Fails to Allege That State Street Violated A Duty of
            Loyalty ..................................................................................18

     C.    Plaintiff Fails to Allege that State Street Engaged in Transactions
         Prohibited by ERISA Section 406 ............................................19

CONCLUSION.......................................................................................................21

## Table of Authorities

CASES ......................................................................................................................PAGES

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)...................................................................................... passim

*Barry v. Trustees of Int'l Ass'n Full-Timed Salaried Officers*,
   No. 02-2371 (JDB), 2006 WL 2507557 (D.D.C. Aug. 29, 2006) ........................................... 11

*Beddall v. State St. Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998)……………………………3

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544, 557 (2007)...................................................................................... 14

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986)............................................................................................ 9

*Bd. of Trustees of the S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of NY Mellon Corp.*,
   No. 09 Civ. 6273 (RMB)(AJp), 2010 WL 1558587 (S.D.N.Y. April 14, 2010) ..................... 16

*In re Boston Scientific Corp. ERISA Litig.*,
   254 F.R.D. 24 (D. Mass. 2008)............................................................................. 10

*Bunch v. W.R. Grace Co.*,
   555 F.3d 1 (1st Cir. 2009).............................................................................. 15, 16

*Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care*,
   433 F.3d 181 (2d Cir. 2005)............................................................................. 9, 10

*Chao v. Merino*,
   452 F.3d 174 (2d Cir. 2006)................................................................................ 15

*Church of Scientology v. United States*,
   506 U.S. 9 (1992)........................................................................................ 12, 13

*Coyne v. Cronin,* 356 F.3d 280 (1st Cir. 2004)……………………………………………………3

*Crawford v. Lamantia*,
   34 F.3d 28 (1st Cir. 1994).................................................................................. 14

*Cruz v. Melecio*, 204 F.3d 14 (1st Cir. 2000)…………………………………………………..3

*Fishman Haygood Phelps Walmsley Willis & Swanson v. State St. Corp., No. 1:09-cv-10533-PBS*, 2010 WL 1223777 (D. Mass. Mar. 25, 2010).......................................................... 5, 11

*Free v. Landrieu*,
   666 F.2d 698 (1st Cir. 1981)............................................................................... 13

*Glanton v. AdvancePCS, Inc.*,
   465 F.3d 1123 (9th Cir. 2006) ................................................................ 10

*Gulf of Me. Fishermen's Alliance v. Daley*,
   292 F.3d 84 (1st Cir. 2002) ................................................................... 13

*Johansen v. United States*
   *No. 2004-11789-RLL* 2006 WL 4391304 (D. Mass, Feb. 9, 2006) ......................... 13

*Kenny v. State St. Corp.*,
   694 F. Supp. 2d 67 (D. Mass. 2010) ............................................... 16, 17

*Loren v. Blue Cross & Blue Shield*,
   505 F.3d 598 (6th Cir. 2007) ................................................................. 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................... 10

*Maldonado v. Fontanes*,
   568 F.3d 263 (1st Cir. 2009) ................................................................ 14

*Mangual v. Rotger-Sabat*,
   317 F.3d 45 (1st Cir. 2003) .................................................................. 13

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 812 (N.D. Cal. 2005) .................................................. 18

*Morse v. Stanley*,
   732 F.2d 1139 (2d Cir. 1984) ............................................................... 19

*O'Neil v. Retirement Plan for Salaried Employees of RKO Gen. Inc.*,
   37 F.3d 55 (2d Cir. 1994) ................................................................... 12

*Public School Ret. System of Mo. v. State St. Bank and Trust Co.*,
   2010 WL 318538 (W.D. Mo. Jan. 21, 2010) ..........................................19

*Ramirez v. Ramos*,
   438 F.3d 92 (1st Cir. 2006) ................................................................. 10

*Silverman v. Mutual Benefit Life Ins. Co.*,
   138 F.3d 98 (2d Cir. 1998) .................................................................. 14

*State St. Bank & Trust Co. v. Denman Tire Corp.*,
   No. Civ. A. 98-12251-RWZ, 2000 WL 33964359 (D. Mass. 2000) ...................... 15

*In re Xerox Corp. ERISA Litig.*,
   483 F. Supp. 2d. 206 (D. Conn. 2007)………...……………………………………………...18

## STATUTES AND RULES

56 Fed. Reg. 31966 (Jul. 12, 1991)……………………………………………………....20

71 Fed. Reg. 63786 (Oct. 31, 2006)…………………………………………………..……20

Fed. R. Civ. P. § 8…………………………………………………………………………...1

Fed. R. Civ. P. § 12(b)(1)…………………………………………………………………….1

Fed. R. Civ. P. § 12(b)(6)…………………………………………………………………….1

## OTHER

Restatement (Second) of Trusts §183………………………………………………………..4

Defendant State Street Bank and Trust Company ("State Street") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 8, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint ("Complaint") of plaintiff Glass Dimensions, Inc., on behalf of the Glass Dimensions, Inc. Profit Sharing Plan and Trust (the "Plan").

## PRELIMINARY STATEMENT

This action is a carbon copy of a securities lending lawsuit that the Honorable Patti B. Saris previously dismissed against State Street. On March 25, 2010, Judge Saris dismissed *Fishman Haygood Phelps Walmsley Willis & Swanson v. State Street Corporation* ("Fishman") on the ground that plaintiff lacked Article III and statutory standing under ERISA. The dismissal followed limited discovery on the jurisdictional deficiencies in Fishman's complaint; namely, whether the Fishman Plan had suffered any cognizable injury. Fishman had incurred no losses from State Street's securities lending program and was free to exit the program at full value without restriction. The court appropriately found that Fishman had no injury.

Now comes Glass Dimensions. Represented by the same counsel that filed the *Fishman* action, and asserting nearly identical allegations of speculative future harm, it too purports to bring a class action under the Employee Retirement Income Security Act of 1974 ("ERISA"). Its claim should also be dismissed for want of injury. Glass Dimensions, like Fishman, has incurred no losses from State Street's securities lending program and is free to exit the program at full value without restriction. On July 7, 2010, State Street announced that it had contributed $330 million to the cash Collateral Pools held by collective trust funds managed by State Street Global Advisors (the "SSgA Lending Funds"). State Street's cash contribution established a market-based net asset value ("NAV") per unit of the Collateral Pools (including the Collateral Pool associated with the three funds in which Plaintiff invested) of $1.00 per unit. At the same time,

State Street announced that it was removing all redemption restrictions applicable to the SSgA Lending Funds.  Glass Dimensions, therefore, is free to exit the securities lending program at full value.  Like Fishman, it has not been damaged as a result of its investment in funds that lend their securities for incremental returns to investors.

Plaintiff, nonetheless, complains that it has been injured because State Street imposed redemption restrictions on the SSgA Lending Funds in 2009, limiting the amount it was permitted to withdraw per month from the three funds in which it had invested.  State Street implemented those restrictions during the height of the liquidity crisis.  This prudent conduct spared investors, including Plaintiff, from market losses attributable to the forced sale of assets in a dysfunctional market.  As a result of State Street's actions, investors incurred no losses from the securities lending program during an unprecedented and illiquid market.

Moreover, the Declaration of Trust governing the Funds in which Plaintiff invested expressly authorized State Street to implement the very withdrawal restrictions that Plaintiff challenges in this action.  It is not surprising that Plaintiff points to no provision under ERISA or other law that prevented State Street's actions in setting withdrawal restrictions.  To the contrary, Article 4.5 of the Declaration of Trust which governs the three funds in which Plaintiff invested, provides that State Street "may suspend . . . the right to make withdrawals" from the Fund in circumstances in which disposition of the assets of the Fund would be prejudicial to other investors.  State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans Fourth Amended and Restated Declaration of Trust, dated August 15, 2005 ("Decl. of

Trust"), Exhibit A to the Declaration of Dawn Wilson, dated July 23, 2010 ("Wilson Decl.").[1]

Having invested in funds in which State Street reserved authority to make withdrawal

restrictions, Plaintiff cannot now bootstrap the exercise of that authority by State Street into an

ERISA violation.

   The Complaint is deficient for additional reasons as well.

   *First*, Plaintiff's allegations regarding State Street's so-called "risky" management of the

cash Collateral Pools (Compl. ¶ 68) do not satisfy the pleading standard articulated in *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009); namely, that Plaintiff allege "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." Plaintiff does not allege facts that suggest any

breach of duty by State Street. Plaintiff does not, for example, plead facts sufficient to identify

the so-called "risky" investments in the cash Collateral Pools, facts indicating the nature and

extent of the risk associated with those investments, or facts demonstrating that State Street

failed to employ reasonable methods to investigate the merits of the investment or asset

allocation decisions for the Collateral Pool *at the time* State Street selected each of the

unidentified securities in the Collateral Pool. The Complaint's failure to offer allegations

relating to Defendant's conduct at the time that State Street invested the Collateral Pool is fatal to

Plaintiff's ERISA claims.

   *Second*, Plaintiff's allegations that State Street engaged in self-dealing within the

meaning of ERISA § 406 do not meet the pleading standard articulated in *Iqbal*. The Complaint

does not specify the transactions that amounted to "self-dealing" or the specific provision of

---

[1]      District courts may take into account documents beyond the complaint "when there is some doubt
about a court's subject matter jurisdiction." *Coyne v. Cronin*, 356 F.3d 280,386 (1st Cir. 2004). Similarly, the court
may consider documents that are integral to the allegations in the Complaint on motion to dismiss for failure to state
a claim. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a
complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the
authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can
review it in deciding a motion to dismiss under Rule 12(b)(6)"); *Cruz v. Melecio*, 204 F.3d 14, 21 (1st Cir. 2000)
("The jurisprudence of Rule 12(b)(6) requires us to consider not only the complaint, but also matters fairly
incorporated within it and matters susceptible to judicial notice").

ERISA that State Street allegedly violated.  The artful pleading is no accident.  Numerous exemptions set forth in ERISA and by the Department of Labor permit the operation of securities lending on behalf of employee benefit plans.

## STATEMENT OF FACTS

### A.      The Parties

Plaintiff is the plan administrator of the Glass Dimensions, Inc. Profit Sharing Plan and Trust.  Compl. ¶ 21.  Defendant State Street Bank and Trust Company is a Massachusetts trust company.  State Street's investment arm, State Street Global Advisors ("SSgA"), "is the investment manager for some or all of the Collective Trusts that State Street offers or manages as well as the Collateral Pools."  Compl. ¶ 22.

Plaintiff invested in three Funds:  Active U.S. Small Cap Securities Lending Fund, Passive Bond Market Securities Lending Fund, and the Daily International Alpha Securities Lending Fund.  As their names suggest, all three participate in the State Street securities lending program.  The Declaration of Trust for all of the funds expressly authorizes State Street to impose withdrawal restrictions on the Funds.  It states, for example, that State Street "in its sole discretion, may suspend the . . . right to make withdrawals" in circumstances where "there exists any state of affairs which, in the opinion of the Trustee, constitutes an emergency as a result of which disposition of the assets of such Fund would not be practicable or would be seriously prejudicial to the Participants."  Decl. of Trust, Wilson Decl., Ex. A at Article 4.5; *see also* Articles 5.3, 6.1.  In accordance with well-developed trust law, trustees to multi-beneficiary funds are authorized to suspend withdrawals and take such other actions as may be required to respond to events that may harm all investors in the trust.  *See generally* Restatement (Second) of Trusts §183.  In March 2009, State Street clarified that redemption restrictions may be imposed "in the interest of fair and equitable treatment of all Participants and the protection of the Fund."

*Details Regarding Modifications to the SSgA Securities Lending Funds and Securities Lending*

*Program* from SSgA to Lending Fund investors, dated March 23, 2009 ("Mar. 23, 2009 letter")

at 13, Wilson Decl., Ex. B; Compl. ¶37.

### B.     The Securities Lending Program

The *Fishman* opinion includes a description of the State Street securities lending

program:

> In simplified terms, securities lending involves the temporary loan of a stock (or
> other security) by its long-term owner – often a large, institutional investor – to a
> borrower – such as a hedge fund – that needs the security for various short-term
> purposes.  This borrower secures the loan of the stock or security by providing the
> long-term owner with collateral that usually slightly exceeds the value of the
> security.  In this case, the borrowers provided collateral equal to 102% to 105% of
> the value of the borrowed securities.  This collateral was placed into 'Collateral
> Pools,' which then are supposed to invest in lower-risk, liquid instruments so that
> the long-term owner of the stock is able to receive investment income from the
> collateral investment.

*Fishman Haygood Phelps Walmsley Willis & Swanson v. State Street Corp.,* No. 1:09-cv-10533-

PBS, 2010 WL 12237777 at *1 (D. Mass Mar. 25, 2010).  (A copy of the decision is attached at

Wilson Decl., Ex. C).

State Street invested the collateral for securities lending in high quality instruments such

as U.S. Treasury bills, notes and bonds, corporate debt obligations of U.S. and foreign

companies, mortgage-backed securities, asset-backed securities, and repurchase agreements.[2/]

The assets owned by the Collateral Pools have high credit quality, though these securities may

have longer average duration than money market assets, meaning that they may mature in

periods exceeding one year.[3/]  The Collateral Pools have historically valued their existing assets

---

[2/] *See* State Street Bank and Trust Company Quality Funds for Short Term Investment Fund Declaration
Establishing Quality Trust for SSgA Funds Trust Fund and Investment Guidelines (Fund Declaration effective Oct.
10, 2008, Amended and Restated Investment Policy Guidelines Effective Apr. 1, 2009) ("Quality Trust Fund
Declaration and Investment Guidelines"), Wilson Decl., Ex. D.

[3/] *Id.*

using an amortized cost pricing method, which means that an asset is valued at initial issuance, plus or minus any interest payments, discounts or impairments.[4/]  Money market funds and the Collateral Pools use this accounting convention in order to maintain stable unit prices of $1.00 and to reflect accurately the underlying investments' full value at term.  Compl. ¶ 27. Alternative accounting conventions, such as mark-to-market accounting, assign values to assets based upon the current market price of the assets.  Mark-to-market accounting typically is not utilized by stable value products, such as the Collateral Pools, because it disregards the investments' value at term and can lead to undue price volatility due to short-term fluctuations in the market.  Compl. ¶ 27.

C.       **Effect of the Liquidity Crisis on the Cash Collateral Pools**

The historic liquidity crisis that commenced in 2007, and was exacerbated by the collapse of Bear Stearns, Merrill Lynch and Lehman Brothers, produced valuation challenges for assets subject to mark-to-market accounting.  Certain assets in the Collateral Pools – for example, intermediate-term high credit quality asset backed securities – faced downward pressure on their market price, which would have eroded the unit price of the Collateral Pools if they were valued on a mark-to-market basis.  At the end of 2008, the Collateral Pools were mark-to-market valued at 93 cents on the dollar.  Compl. ¶ 9.  Although the Complaint suggests that the valuation of the Collateral Pools has remained depressed – and that Plaintiff is at imminent risk of realizing a loss as a result of the Lending Funds' investment in the Collateral Pools – market conditions have improved.  Indeed, the Collateral Pool values had improved to 99 cents on the dollar by the time Plaintiff filed this action.  American Bar Association Members/State Street Collective Trust Form S-1 (March 24, 2010) ("ABA Form S-1") at 47, Wilson Decl., Ex. F.

_____

[4/] State Street Bank and Trust Company Quality Funds for Short-Term Investment Declaration of Trust (Jan. 25, 1995) at 6, section 4.03, Wilson Decl., Ex. E.  The Declaration of Trust for State Street Bank and Trust Company Quality Funds for Short-Term Investment was amended and restated on May 26, 2009.

In October 2008, and in response to unprecedented market conditions, State Street notified investors in the Funds that it was instituting redemption restrictions from the SSgA Lending Funds.  Compl. ¶ 10, 33; Letter from SSgA to Lending Fund investors, dated October 7, 2008 ("Oct. 7, 2008 letter"), Wilson Decl., Ex. G.  In a letter to investors, State Street wrote that "liquidity and valuation issues in the short-term markets" were impairing the valuation of high quality assets and that sales of those assets in the current market environment could lead to losses.  Oct. 7, 2008 letter at 3, Wilson Decl., Ex. G.  For this reason, and in order to "protect[ ] all participants in our lending funds and also provide[ ] the greatest level of liquidity that can be prudently made available to our investors" State Street announced it was limiting redemptions to "normal course transactions."  *Id.*  To the extent that investors wanted to exit the securities lending program, investors would be required to "receive a portion of the withdrawal proceeds in cash and a portion in an interest in the underlying collateral pool."  Compl. ¶ 18; Oct. 7, 2008 letter at 4, Wilson Decl., Ex. G.

In March 2009, State Street modified the withdrawal restrictions applicable to the SSgA Lending Funds.  In accordance with the modified redemption restrictions, Plaintiff was permitted to withdraw 4% of its assets per month from the Funds.  Compl. ¶35; Mar. 23, 2009 letter at 5, Wilson Decl., Ex. B.  The 4% was cumulative.  Thus, over a 12-month period, Plaintiff would have accumulated rights to withdraw 48% of its investment in the Funds.  *See id.*  State Street was able to provide for continued liquidity in the Funds because the assets in the cash Collateral Pools were not in default and continued to pay interest and principal when due.  ABA Form S-1 (March 24, 2010) at 47, Wilson Decl., Ex F.

### D.   Recent Developments

On July 7, 2010, State Street announced that it had contributed $330 million to the cash Collateral Pools for the SSgA Lending Funds.  State Street Corporation Form 8-K, dated July 7,

2010, and incorporated News Release dated July 7, 2010, Wilson Decl., Ex. H.  As a result, the Collateral Pool for the three funds in which Plaintiff invested is now market valued at $1.00 per unit.  *Id.*  State Street also announced that it was removing all redemption restrictions applicable to the SSgA Lending Funds.  *Id.*  State Street described this contribution, and its effect on Plaintiff's ability to exit the securities lending program, in a letter to clients, including the Plaintiff.  Letter from SSgA to Lending Fund investors, dated July 7, 2010 ("Jul. 7, 2010 letter"), Wilson Decl., Ex. I.

  **E.**  **Plaintiff's Claims**

  The Complaint brings two claims, none of which alleges cognizable harm.

  Count I alleges that State Street failed to invest prudently the securities lending collateral it received from borrowers, and instead "exposed the plan to excessive levels of risk," in violation of ERISA § 404.  Compl. ¶ 67.  The Complaint makes no attempt to identify the so-called "risky" investments in the cash Collateral Pools, nor does it plead any facts indicating the nature and extent of the risk associated with those investments.  Further, while Plaintiff asserts that State Street had a duty to invest the securities lending collateral in "high quality, liquid instruments" and to "manage the asset liability duration differences" (Compl. ¶ 32), the Complaint includes no allegations that Defendant's decision to invest in any securities in the cash Collateral Pool deviated from appropriate standards of care, or even more fundamentally, the investment guidelines for the cash Collateral Pool.  Importantly, nothing in the Complaint relates to alleged deficiencies in Defendant's investment diligence and decision-making *at the time of the investment* in those securities or that there was an asset liability duration risk at the time State Street made the investment.

  Count II alleges that State Street "engaged in numerous prohibited transactions involving the Plans' assets with parties in interest" and that it "engaged in numerous self-dealing

transactions . . . including acting for the benefit of themselves in managing the Collateral Pools and in receiving compensation, direct or indirect, from involving Plan assets," in violation of ERISA § 406.  Compl. ¶ 75.  Although the Complaint gives a nod to DOL regulations permitting affiliated parties to provide securities lending services in the manner that State Street has structured its securities lending program, it alleges only in cursory fashion that "State Street failed in the discharge of" its duties under ERISA.  Compl. ¶ 49.

## ARGUMENT

## I.   PLAINTIFF LACKS ARTICLE III STANDING FOR FAILURE TO SHOW THAT IT HAS SUFFERED AN INJURY-IN-FACT

Article III of the U.S. Constitution requires that a party seeking to invoke the authority of the federal courts "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (internal quotation marks omitted).  The requirement of an actual injury that may be redressed by the court assures that the legal question presented to the court "will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Id.*

The elements of Article III must be met even where statutory standing pursuant to ERISA is satisfied.  *See Loren v. Blue Cross & Blue Shield*, 505 F.3d 598, 606 (6th Cir. 2007); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 199 (2d Cir. 2005).  In order to meet this obligation, the party invoking federal jurisdiction – the Plaintiff in this action – bears the burden of establishing that (a) it has suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical[;]'" (b) the injury is fairly traceable to the conduct of the defendant; and (c) it must be "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ramirez v. Ramos*, 438 F.3d 92, 97 (1st Cir. 2006). Though these requirements are an indispensable part of Plaintiff's case, the Complaint here fails to allege facts showing that Plaintiff has suffered any injury at all.[5/]

       1.     <u>Plaintiff Has Not Alleged an Actual Injury</u>

     Read as a whole, the Complaint fails to allege a financial loss. For example, the Complaint nowhere alleges that the Plan lost money from its investment in the Funds, or that the securities in the cash Collateral Pool are not current on their interest and principal payments. The Complaint, instead, makes reference to the *mere possibility of a future loss* based on a series of events not alleged to have come to pass, and which may never occur:

> *If* a Collateral Pool suffers losses or its underlying investments default, there is insufficient liquidity in the Collateral Pool to discharge its obligations to fund cash payments to the borrowers, the Collateral Pool is required to sell investments prior to their maturity at a loss, and/or the Collateral Pool is required to cease using amortized cost pricing in whole or in part and is forced to reduce the value of its units. [*sic*] *Then* the affected lenders (the Collective Trusts, and indirectly the Plans) are obligated to use their own assets and cash to satisfy any deficiency or losses that may arise with respect to their investment in the Collateral Pools. This causes losses to the affected Collective Trusts, and therefore to the Plans.

Compl. ¶ 27.

     Notwithstanding Plaintiff's speculation that it might one day suffer losses based on these circumstances, the Complaint does not allege that State Street has been unable to fund cash payments to borrowers, that State Street has ceased to use amortized cost pricing, or that the Plan has had to use its own assets and cash to satisfy any deficiency or loss in the Collateral Pools.

---

[5/] It is of no moment whether Plaintiff sues individually or on behalf of a putative class of ERISA plans. Plaintiff must establish individual standing to proceed with this action. *See In re Boston Scientific Corp. ERISA Litig.,* 254 F.R.D. 24, 32 (D. Mass. 2008) ("Merely because Plaintiffs claim that they are suing on behalf of the respective ERISA plans does not change the fact that they must establish individual standing") (quotation omitted); *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006); *Cent. States*, 433 F.3d at 200 ("[A]n ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan").

Nowhere does Plaintiff allege that the Collateral Pools have incurred losses or caused any resulting injury to the Plan, much less the "reasonably quantifiable amount of damage" required by ERISA. *Barry v. Trustees of Int'l Ass'n Full-Timed Salaried Officers*, No. 02-2371 (JDB), 2006 WL 2507557 at *9 (D.D.C. Aug. 29, 2006).

This deficiency is not happenstance. There have been no defaults in the cash Collateral Pools and all of the cash Collateral Pools' securities – without exception – continue to pay principal and interest. ABA Form S-1 (March 24, 2010) at 47, Wilson Decl., Ex F. Transactions between the Funds and the cash Collateral Pools continue to be effected at the designated $1.00 per unit, and the $1.00 transaction price has remained unchanged since the time Plaintiff chose to invest in funds that participate in securities lending. *See id*. Indeed, at the time that Plaintiff filed this action, the value of the cash Collateral Pools had largely recovered and was marked at $0.99 on the dollar. *Id*. Thus, Plaintiff, like the earlier dismissed Fishman Plaintiff is unable to demonstrate that "injury from [an] unrealized loss[] is imminent." *Fishman Haygood*, 2010 WL 1223777 at *6.

Separately, the withdrawal restrictions that State Street temporarily imposed on the Funds in the midst of the liquidity crisis do not give rise to a cognizable injury. Plaintiff's claim that State Street breached its fiduciary duties to the Plan (Compl. ¶ 58) is entirely undermined by the terms of the Declaration of Trust. The governing document for the trust specifically authorizes State Street to do any or all of the following: (1) to suspend the Plan's withdrawal rights; (2) to limit Plan withdrawal in circumstances where State Street "determines that it cannot reasonably make such distribution on account of any . . . cause reasonably beyond its control including, but not limited to, illiquid markets or illiquid securities[,]" and (3) "to do all other acts in its judgment necessary or desirable for the proper administration of a Fund or with respect to the

investment or liquidation of any assets of a Fund."  Decl. of Trust at Articles 4.5, 5.3, 6.1(r),

Wilson Decl., Ex. A.  Having invested in a fund in which State Street reserved authority to make

withdrawal restrictions, Plaintiff cannot now bootstrap the exercise of that right by State Street

into an ERISA violation.  *See generally O'Neil v. Ret. Plan for Salaried Empl. of RKO Gen.,

Inc.*, 37 F.3d 55, 61 (2d Cir. 1994) (no violation where fiduciary discharges its duties in

accordance with the documents and instruments governing the Plan).

      Moreover, the Complaint alleges nothing to support an inference that State Street

exercised its right to limit withdrawals from the Funds for any reason other than the protection of

investor interests.  Rather than support Plaintiff's assertion that State Street has breached its

duties to investors, the documents cited in the Complaint confirm that State Street implemented

withdrawal restrictions in order to protect all investors in the Funds, including Plaintiff.  *See* Oct.

7, 2008 letter at 4, Wilson Decl., Ex. G. ("Our goal is to protect the interest of all investors in the

Collateral Pools while continuing to permit normal activity"); *see also* Mar. 23, 2009 letter at 1,

Wilson Decl., Ex. B ("[t]he substantial disruption that the market and economic crisis has

brought to the market for fixed income securities over the past 18 months presents significant

challenges for all securities lending programs, including our own.  Our goals in addressing those

challenges have been, and will continue to be:  (1) to protect the interest of all investors in the

Lending Funds as a whole, (2) to avoid realizing any losses for investors in the Lending Funds

due either to credit events or the disposition of assets into a dysfunctional market in order to

meet liquidity requirements, and (3) to position the Lending Funds so that upon return of

normalcy in the fixed income markets, the long term returns of the Lending Funds are not

impacted by current market valuations").

2.      Plaintiff's Claim Is Now Moot

Plaintiff's claim of future injury is now rendered moot by virtue of State Street's recent support of the cash Collateral Pools for the SSgA Lending Funds.  Federal jurisdiction requires that "an actual controversy must be extant at all stages of [the litigation], not merely at the time the complaint is filed."  *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (citing *Steffel v. Thompson*, 415 U.S. 452, 460 n. 10 (1974)).  A claim can become moot if a change in circumstance "makes it impossible for the court to grant any effectual relief."  *Church of Scientology v. United States*, 506 U.S. 9, 12, (1992).  "The real value of the judicial pronouncement – what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion – is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff." Johansen v. United States, No. 2004-11789-RLL* 2006 WL 4391304 at *4 (D. Mass, Feb. 9, 2006) (*quoting Rhodes v. Stewart,* 488 U.S. 1, 4 (1988)).

Here, the Collateral Pools held by the SSgA Lending Funds are now valued at $1.00 per unit and State Street is removing, as of August 2010, the redemption restrictions from the SSgA Lending Funds.  State Street Corp. Form 8-K and incorporated News Release (Jul. 7, 2010), Wilson Decl., Ex. H.  This change in circumstance will make it "impossible for the Court…to grant…any effectual relief," and moots this case.  *Church of Scientology*, 506 U.S. at 12; *see also Gulf of Me. Fishermen's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002) (holding that procedural and substantive challenges to regulation were rendered moot by a new regulation that superseded old regulation); *Free v. Landrieu*, 666 F.2d 698 (1st Cir. 1981) (holding that case was moot after defendants abandoned a challenged interpretation of housing regulations).

In light of present circumstances, Glass Dimensions is no different than Fishman and should be dismissed for want of injury.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER ERISA SECTIONS 404 AND 406

Under Rule 8 of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted) (emphasis added).   The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   *Id*.   The Complaint here fails to plead a plausible claim that State Street breached its fiduciary duties under ERISA in any investment decision relating to the cash Collateral Pools. Plaintiff's "naked assertions devoid of further factual enhancement" are now plainly insufficient under Rule 8.   *Id*. (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 557 (2007) (brackets and internal quotation marks omitted); *see also Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (brackets and internal quotation marks omitted).

### A.   The Complaint Fails to Allege Any Actual Damages

The absence of actual loss is a statutory basis for dismissal as well as a Constitutional deficiency under Article III.   *See Crawford v. Lamantia,* 34 F.3d 28, 33 (1st Cir. 1994) (finding plaintiff lacked statutory standing where "plaintiff has failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on his benefits."); *see also Silverman v. Mut. Benefit Life Ins. Co.,* 138 F.3d 98, 104 (2d Cir. 1998) (ERISA requires that a plaintiff plead an actual "loss claimed" that springs from the defendant's alleged breach).   Dismissal of ERISA breach of duty claims is appropriate when plaintiff fails to show actual "losses suffered"

14

by the plan.  *See State St. Bank & Trust Co. v. Denman Tire Corp.*, No. Civ. A. 98-12251-RWZ,

2000 WL 33964359, at *2 (D. Mass. Feb. 14, 2000) (allowing motion to dismiss because "no

harm to the [plan] has been alleged.").  In light of State Street's recent investment in the cash

Collateral Pools for the SSgA Lending Funds, Plaintiff cannot establish a cognizable injury

under ERISA.

> **B.**   **Plaintiff Fails to Plead That the Defendant Violated Any Fiduciary Duty Under ERISA Section 404**

Plaintiff's claim under ERISA Section 404 (Count I) does not satisfy *Iqbal* and *Twombly*.

Read as a whole, the Complaint cannot support an inference that the Defendant breached its

obligations under Section 404 because it identifies no manner in which State Street acted either

imprudently or without the requisite loyalty.

> 1.   The Alleged Imprudence Violations Impermissibly Are Based Upon Hindsight

Allegations of imprudence must be based upon the "circumstances then prevailing," and

events that occur subsequent to the transaction – such as the later performance of the investment,

or changing market conditions that render high quality assets illiquid – cannot form the basis of a

claim.  *See Bunch v. W.R. Grace & Co.,* 555 F.3d 1, 7 (1st Cir. 2009) ("whether a fiduciary's

actions are prudent cannot be measured in hindsight") (internal citations omitted); *Chao v.

Merino*, 452 F.3d 174, 182 (2d Cir. 2006) ("Because the fiduciary's obligation is to exercise care

prudently and with diligence under the circumstances then prevailing, his actions are not to be

judged from the vantage point of hindsight") (internal citations and quotation marks omitted).

Plaintiff's allegation that, in hindsight, longer dated assets in the Collateral Pools would

be difficult to sell in the midst of a liquidity crisis (Compl. ¶ 30), is not sufficient to state a claim

under Sections 404 of ERISA.   The District Court for the Southern District of New York

rejected an analogous challenge to the securities lending program managed by The Bank of New

York Mellon in *Bd. of Trustees of the S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of N.Y. Mellon Corp.,* No. 09 Civ. 6273 (RMB)(AJp), 2010 WL 1558587 at *5 (S.D.N.Y. April 14, 2010).   In that case, the district court concluded that plaintiff's challenge to the propriety of investing in Lehman was insufficient to state a claim because it included no allegations as to why Lehman was an improper investment at the time of purchase.   The fact that Lehman later went into bankruptcy was no more than inactionable hindsight.

Here, too, Plaintiff fails to identify more than a "theoretically conceivable" allegation that State Street acted imprudently at the time it invested the collateral.  *See id.*  Plaintiff has not pleaded facts sufficient to demonstrate that State Street failed to employ reasonable methods to investigate the merits of its investments *at the time it engaged in the challenged transactions* or its decisions about duration of assets.  Instead, the Complaint alleges merely that State Street invested in "high-risk, illiquid instruments, for which there is no *current* market." Compl. ¶ 9 (emphasis added).  This is impermissible hindsight.  *See Bunch*, 555 F.3d at 7 (the fiduciary's actions must be "viewed from the perspective of the time of the challenged decision" and "[t]he test of prudence – the Prudent Man Rule – is one of conduct, and not a test of the result of performance of the investment"); *Kenny v. State St. Corp.*, 694 F. Supp. 2d, 67, 75 (D. Mass. 2010) (dismissing ERISA class action claim for imprudent investment where plaintiff pleaded "no facts plausibly suggesting that defendants knew or should have known that State Street common stock would be an imprudent investment *during the class period*.") (emphasis added).

Plaintiff does not claim that State Street violated any of its investment policy guidelines in purchasing a particular asset, including asset-backed securities.  Indeed, nothing in the investment policy guidelines for the Collateral Pool in which the three funds invested suggests that asset-backed securities were an impermissible investment.  *See Bd. of Trustees of the S. Cal.*

*IBEW-NECA Defined Contrib. Plan*, 2010 WL 1558587 at *6-7 (dismissing complaint in part because plaintiff had not alleged that defendants' investment had violated investment policy guidelines, and the guidelines permitted the challenged investments).  In fact, the guidelines expressly permitted such investments.[6/]

Moreover, the Complaint includes no facts indicating when State Street purchased any of the so-called "highly risky, illiquid, long term investments" or information available about those securities at the time that State Street purchased them that would give rise to an inference that the investments were imprudent at the time of purchase.  The Complaint neither identifies these so-called "risky" investments nor pleads any facts indicating the nature and extent of the risk associated with those investments.   As recently observed by Judge Saris in another matter involving State Street, "[b]ecause the investments are opaque and highly complex, plaintiff must allege sufficient facts to demonstrate . . . the riskiness of these . . . assets….  Conclusory allegations of riskiness will not suffice."  *Kenny,* 694 F.Supp. 2d at 76.[7/]

The only "fact" Plaintiff proffers in support of its claim that the investments were imprudent is the post hoc observation that the State Street maintained withdrawal restrictions for investors in the Lending Funds, and the opinion that those restrictions have been in place too long.  Compl. ¶ 30 (Defendant did not prudently evaluate the duration of its investments and the impact on the liquidity of the Collateral Pools, "*as evidenced by* the indefinite withdrawal restrictions that Defendant has imposed for approximately 18 months….") (emphasis added).  This conclusory allegation underscores the Complaint's reliance on hindsight pleading.  The Complaint says nothing about the particular investments that State Street should have

---

[6/] *See* Quality Trust Fund Declaration and Investment Guidelines, Wilson Decl., Ex. D ("Eligible Investments" included "Asset-backed securities").

[7/] Like the assets at issue in this case, the price of the assets at issue in *Kenny* had similarly been depressed by the liquidity crisis in 2008.  *See Kenny*, 694 F.Supp. 2d at 69 (noting the class period was January 3, 2008 to January 20, 2009).

maintained, when State Street should have made the decision to sell those investments, and the

facts that should have prompted State Street to manage the cash Collateral Pools in a different

manner.  Though such allegations are essential to a claim that a fiduciary breached its duties to a

Plan at the time that it made a challenged investment, the Complaint is devoid of facts which, if

true, suggest a violation of ERISA.

      2.    <u>Plaintiff Fails to Allege That State Street Violated A Duty of Loyalty</u>

Plaintiff's breach of loyalty claim under ERISA Section 404 is likewise without merit.

Plaintiff's loyalty allegations in Count I rest on a single, non-particularized allegation:  that

Defendant "failed to loyally and prudently manage the assets of the Plans . . . ."  Compl. ¶ 67.

How State Street improperly profited from its investment management decisions, to the

detriment of investors, is not alleged in the Complaint.  Indeed, the Complaint fails to identify

the terms of the compensation arrangement among the parties, resting entirely on its conclusory

allegation that State Street took "unreasonable compensation in connection with such

transactions," to imply that State Street was somehow motivated to act in its own interest rather

than those of the Plan, but making no factual allegations to support this conclusion.  Compl. ¶ 41.

Plaintiff's sole conclusory allegation is insufficient to support a claim for breach of the

duty of loyalty.  The Complaint does not allege that State Street actually placed its interests over

those of Plaintiff, and identifies no action consistent with this conclusion.  A fiduciary need not

avoid all potential conflicts of interest as long as the conduct at issue does not violate a relevant

duty.  *See In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834-5 (N.D. Cal.

2005) (rejecting the assertion that "fiduciaries face liability for merely creating the potential for a

conflict of interest") (italics in original); *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206,

218-19 (D. Conn. 2007) ("the cognizable claim with respect to any alleged conflict of interest is

not that the fiduciary is subject to a conflict of interest, but rather that in discharging his or her

duties under a Plan, the fiduciary breached his or her duty of loyalty").  Thus, to state a claim for

breach of duty of loyalty, Plaintiff must allege that State Street *actually engaged* in disloyal

conduct.  *See Iqbal*, 129 S. Ct. at 1950 (Rule 8 requires that a complaint "show[] that the pleader

is entitled to relief").  Plaintiff in this case has not done so.

> **C.      Plaintiff Fails to Allege that State Street Engaged in Transactions Prohibited by ERISA Section 406**

Count II recites statutory language from ERISA and claims that State Street engaged in

numerous prohibited transactions involving the Plans' assets with parties in interest.  Compl. ¶

75.  However, the Complaint does not identify any specific conduct by State Street that

constituted self-dealing.  Count II is at best a "[t]hreadbare recital of the elements of a cause of

action, supported by mere conclusory statements," and is plainly inadequate as against the

pleading standard described in *Iqbal*.  129 S. Ct. at 1949.

The Complaint includes a nonspecific allegation that State Street engaged in a prohibited

transaction by "favoring some investors over others with respect to withdrawal restrictions."

Compl. ¶ 41.  How State Street favored any investor is at best left to surmise.  Indeed, with

respect to the Missouri pension plans, the public record is clear that State Street did not favor the

two plans, forced an in kind distribution of assets from one of the cash Collateral Pools, and is

now in litigation with the plans in state court in Missouri over that distribution.  *See Public*

*School Ret. System of Mo. v. State St. Bank and Trust Co.*, 2010 WL 318538 (W.D. Mo. Jan. 21,

2010).  The allegations that State Street favored the ABA Collective Trust Fund are similarly

without merit.  The preferential treatment that State Street allegedly gave to the ABA Collective

Trust Fund is left to the imagination, and there is no factual allegation suggesting that the Trustee

did not deal even-handedly with all beneficiaries.  *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d

Cir. 1984).  Indeed, counsel for Glass Dimensions also represents Fishman, which participates in

the ABA Collective Trust program.  It complained throughout the Fishman litigation that it had been disfavored.

The Complaint also ignores the existence of numerous exemptions – set forth in ERISA and by the Department of Labor – that permit the operation of securities lending programs on behalf of employee benefit plans.  The Department of Labor fully understands the role that affiliated lending agents perform in investment programs such as the Funds in which the Plaintiff was invested and has endorsed securities lending programs by affiliates.  That endorsement is reflected in carefully crafted class exemptions through which the restrictions of various ERISA provisions *do not apply* to the lending of securities that are assets of employee benefit plans.[8]

---

[8] *E.g.*, Department of Labor Prohibited Transaction Exemption 2006-16 ("Class Exemption to Permit Certain Loans of Securities by Employee Benefit Plans") (Oct. 31, 2006), 71 Fed. Reg. 63786, Wilson Decl., Ex. J; Department of Labor Prohibited Transaction Exemption 91-38 ("Amendment to Prohibited Transaction Exemption 80-51 Involving Bank Collective Investment Trusts") (Jul. 12, 1991), 56 Fed. Reg. 31966, Wilson Decl., Ex. K; U.S. Dep't of Labor Adv. Op. 96-15A n.3 (Aug. 7, 1996), Wilson Decl., Ex. L.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

Dated:  July 23, 2010

Respectfully submitted,

  /s/ Lori A. Martin
Lori A. Martin
Dawn M. Wilson
WILMER CUTLER PICKERING
   HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
lori.martin@wilmerhale.com

Jeffrey B. Rudman (433380)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Counsel for Defendant State Street Bank
and Trust Company*

## **DEFENDANT'S CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

I, Lori A. Martin, counsel for Defendant State Street Bank & Trust Company, ("Defendant")

hereby certify that, pursuant to Rule 7.1(a)(2) of the Local Rules of the United States District Court

for the District of Massachusetts, I conferred with Gregory Porter, counsel for the Plaintiff in the

above-captioned action, and attempted in good faith to resolve or narrow the issues presented in

Defendant's Motion to Dismiss the Complaint, filed on July 23, 2010.


Dated:  July 23, 2010                                    Respectfully submitted,


                                                          /s/ Lori A. Martin
                                                         Lori A. Martin

CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2010, I caused a copy of this Document to be served electronically, via the electronic filing system, on the registered participants as identified on the Notice of Electronic Filing (NEF) and by first-class mail on those indicated as non-registered participants.

/s/ Lori A. Martin
Lori A. Martin