## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **Glass Dimensions, Inc. on behalf of the** | ) | |
| **Glass Dimensions, Inc. Profit Sharing** | ) | |
| **Plan and Trust,** *and all others* | ) | |
| *similarly situated,* | ) | **FIRST AMENDED CLASS ACTION** |
| | ) | **COMPLAINT** |
| | ) | |
| Plaintiffs, | ) | **CIVIL ACTION NO:** 1:10-cv-10588 (JLT) |
| v. | ) | |
| | ) | |
| **State Street Corporation, State Street** | ) | |
| **Bank & Trust Co.,** | ) | |
| **and State Street Global Advisors,** | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Glass Dimensions, Inc., ("Dimensions" or "Plaintiff"), as fiduciary for the Glass Dimensions, Inc. Profit Sharing Plan and Trust (the "Dimensions Plan" or "Plan"), brings this action on behalf of the Plan, and on behalf of all similarly-situated retirement plans (collectively, the "Plans"), that suffered losses as a result of the breaches of fiduciary duties committed by Defendants State Street Corporation ("SSC"), State Street Bank & Trust Company ("SSBT"), and State Street Global Advisors ("SSGA") (collectively with their affiliates, the "Defendants"). Plaintiff brings this action by and through its undersigned attorneys based upon its personal knowledge and information obtained through counsel's investigation. Plaintiff anticipates that discovery will uncover further substantial support for the allegations in this Amended Complaint.

1.       This Amended Complaint presents a case of fiduciary self-dealing and enrichment in violation of Defendants' fiduciary obligations under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") at the expense of the retirement Plans (and

their respective participants and beneficiaries), to whom Defendants owed some of the highest duties known to the law.

2.      Defendants were (and are) Plan fiduciaries, responsible for managing Plan investments prudently and solely in the interests of the Plan and its participants.

3.      The Plan, like hundreds of other ERISA retirement plans, invested in collective trust funds offered and managed by Defendants (the "Collective Trusts"). Collective Trusts are investment funds that pool the investments of many institutional investors, much like mutual funds. Defendants received investment advisory, custodial, trustee, and administrative fees for managing the Collective Trusts.

4.      The Collective Trusts engaged in a practice known as "securities lending" through which they made securities they held available for loan to third parties, such as short sellers, for short term use. The borrower secures the loan with collateral which is invested in various income-producing instruments so that the Collective Trusts receive investment income from the collateral investment.

5.      Accordingly, third party borrowers provided the Collective Trusts with cash collateral when they borrowed the Collective Trusts' securities. The Collective Trusts engaged in securities lending in order to garner the interest income generated from the collateral investment, which, given the extent of their holdings, could equal millions of dollars each year.

6.      Defendants controlled all aspects of the Collective Trusts' securities lending programs. Defendants decided which securities would be loaned to which borrowers, collected the collateral from those borrowers, and invested that collateral in another set of collective trusts -- which Defendants also managed and established solely for the purpose of investing the

securities lending collateral in income-producing instruments (the "Collateral Pools"). As with the Collective Trusts, Defendants received investment advisory, custodial, trustee, and administrative fees in exchange for managing the Collateral Pools.

7.      Upon return of the borrowed securities, the collateral is returned to the borrower. In addition, the borrower is generally paid a "rebate" (essentially interest) for the investment use of the collateral. The difference between (a) the gross income generated from Collateral Pool investments and (b) the fees and expenses of managing the Collateral Pools plus the rebate paid to the borrower is the "spread". The spread is split between the manager of the securities lending program, commonly known as the Lending Agent, here Defendants, and the lenders, here the Plans. As alleged below, Defendants took an exorbitant share of the spread for themselves.

8.      In violation of their fiduciary duties to the Plans, Defendants took unreasonably large compensation, separate and apart from their fees for managing the Collective Trusts and Collateral Pools, for managing the securities lending program. Indeed, Defendants took **fifty percent of all net income, *i.e.*, the spread, generated by the Collateral Pools for the benefit of the Collective Trusts**. Thus, only 50 percent of the net income generated through the securities lending program managed by Defendants inured to the Plans. Defendants took from the Plans – to whom they owed fiduciary obligations – much higher compensation for managing securities than they collected from other institutional investors who had negotiated securities lending compensation with Defendants in arm's length transactions, where the investors were represented by independent fiduciaries, that is fiduciaries unaffiliated with Defendants. Moreover, the fifty percent received by Defendants far exceeds industry standards.

9.      Defendants' excessive compensation is not surprising given that their investment relationship with the Plans was fraught with conflicts and self-dealing. As shown in greater detail below, Defendants, on the one hand, managed the Collective Trusts and purportedly represented the Collective Trusts and the Plans in setting the terms of and executing a Securities Lending Agreement with Defendants, on the other hand, representing themselves as the Lending Agent. The Defendants, acting as Lending Agent, then allocated to themselves, or an affiliate, the responsibility for managing the collateral investment program via the Collateral Pools. Essentially, Defendants, all of whom operate under the same corporate umbrella, negotiated with themselves the terms of their compensation, discretion, authority, and even liability. Not surprisingly, these arrangements led to Defendants setting and receiving excessive and unreasonable compensation for themselves.

10.      Every dollar Defendants collected in excess of reasonable compensation was one dollar less that the Plans, and their respective participants and beneficiaries, received. Moreover, the Plans suffered additional losses in the form of lost investment opportunity on the securities lending income wrongfully taken by Defendants for themselves where such income would have been reinvested in the respective Collective Trusts, rather than taken by Defendants for their own profit and use. As a result, the Plans suffered hundreds of millions of dollars in losses due to Defendant's fiduciary breaches and prohibited self-dealing.

## I. JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and ERISA §502(e)(1), codified at 29 U.S.C. § 1132(e)(1). The claims asserted herein are brought as a class action under Rule 23 of the Federal Rules of Civil Procedure.

12.     Venue is proper in this district pursuant to ERISA §502(e)(2), codified at 29 U.S.C. §1132(e)(2), because SSC, SSBT, and SSGA are located in this judicial district.

## II. THE PARTIES

**Plaintiff**

13.     **Glass Dimensions, Inc**. Dimensions is the plan administrator for the Plan and, therefore, a fiduciary for the Plan. It is authorized under ERISA §502(a)(2) to represent the Plan in lawsuits arising under ERISA. The Plan is a defined contribution plan under ERISA. The Plan invested in the following Collective Trusts offered or managed by the Defendants, all of which participated in Defendants' securities lending program: Active U.S. Small Cap Securities Lending Fund; Passive Bond Market Securities Lending Fund; and Daily International Alpha Securities Lending Fund. All of the Collective Trusts participated in Defendants' securities lending programs. Plaintiff did not know any facts regarding Defendants' establishment and management of the securities lending program until Defendants began to communicate about deficiencies and illiquidity in the Collateral Pools in 2008 and 2009. Plaintiff did not know any facts concerning Defendants' compensation in connection with managing the securities lending program, including, especially, the facts showing that Defendants' compensation was unreasonable as compared to industry standards, until conferring with counsel in 2010.

**Defendants**

14.     **State Street Bank & Trust Company ("SSBT")**. SSBT is the principal banking subsidiary of SSC. SSBT is the trustee of the Plan and is located at 3 Batterymarch Park, Quincy, Massachusetts. As trustee, SSBT is, by definition, a fiduciary to the Plan.

15. **State Street Corporation ("SSC")**. SSC is a financial holding company, organized in 1970 under the laws of the Commonwealth of Massachusetts. Through its subsidiaries, including its principal banking subsidiary, SSBT, SSC provides a full range of products and services for institutional investors worldwide. Its executive offices are located at One Lincoln Street, Boston, Massachusetts.

16. **State Street Global Advisors ("SSGA")**. SSGA is the investment management arm of SSC. On information and belief, SSGA is the Investment Manager, and therefore a fiduciary, for some or all of the Collective Trusts that State Street Defendants offer and manage. To the extent that the investment advisor for a given Collective Trust is not an affiliate of State Street Defendants, State Street Defendants retain the discretion and control over the securities lending feature of the Collective Trust.

### III. DEFENDANTS' FIDUCIARY STATUS

17.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under §402(a)(1), 29 U.S.C. §1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i).

18.     **Investment Manager**. Under ERISA, an investment manager or investment adviser is a fiduciary. ERISA defines investment manager as:

> (38) any fiduciary (other than a trustee or named fiduciary, as defined in section 1102(a)(2) of this title) –
>
> (A) who has the power to manage, acquire, or dispose of any asset of a plan;
>
> (B) who
>
> (i) is registered as an investment adviser under the Investment Advisers Act of 1940 [15 U.S.C. 80b-1 et seq.];
>
> (ii) is not registered as an investment adviser under such Act by reason of paragraph (1) of section 203A(a) of such Act [15 U.S.C. 80b-3a (a)], is registered as an investment adviser under the laws of the State (referred to in such paragraph (1)) in which it maintains its principal office and place of business, and, at the time the fiduciary last filed the registration form most recently filed by the fiduciary with such State in order to maintain the fiduciary's registration under the laws of such State, also filed a copy of such form with the Secretary;
>
> (iii) is a bank, as defined in that Act; or
>
> (iv) is an insurance company qualified to perform services described in subparagraph (A) under the laws of more than one State; and
>
> (C) has acknowledged in writing that he is a fiduciary with respect to the plan.

ERISA §3(38), 29 U.S.C. §1002(38).

19.     Here, Defendants are named and/or serve as the Investment Manager, Trustee, Advisor or administrator of all the Collective Trusts, and the Lending Agent, as described below, and thus are fiduciaries to the Plans. Moreover, Defendants exercise discretion and control over the Plans' assets because the State Street Defendants manage the Collateral Pools, and thus

decide how to invest the Collateral posted by borrowers. Further, Defendants set their own compensation for managing the securities lending program and received that compensation from the Plans' assets. Thus, Defendants were responsible for prudently and loyally managing the assets that were invested in the Collective Trusts and Collateral Pools for the benefit of the Plans.

## IV. DEFENDANTS' FIDUCIARY DUTIES

20.     ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), provides, in relevant part, that a civil action for breach of fiduciary duty for relief under ERISA §409, 29 U.S.C. §1109 may be brought by a participant, beneficiary or fiduciary of a plan.

21.     ERISA §409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in relevant part:

> any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

22.     ERISA §§404(a), 29 U.S.C. §§1104(a), provides in relevant part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

23.     These fiduciary duties under ERISA §§404(a) are referred to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to the law." *Donovan v. Bierwith*, 680 F.2d 263, 272 n.2 (2d Cir. 1982). They entail, among other things:

> The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves, including, in this case, the State Street Defendants' personal interests in receiving some of the cash collateral from securities lending; and

24.     ERISA also prohibits certain transactions with plan involving parties in interest and fiduciaries because of their high potential for abuse. Specifically, ERISA §406 provides as follows:

(a) Transactions between plan and party in interest
Except as provided in section 1108 of this title:
(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
(A) sale or exchange, or leasing, of any property between the plan and a party in interest;
(B) lending of money or other extension of credit between the plan and a party in interest;
(C) furnishing of goods, services, or facilities between the plan and a party in interest;
(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107 (a) of this title.
(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107 (a) of this title.

(b) Transactions between plan and fiduciary
A fiduciary with respect to a plan shall not—
(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

## V. **DEFENDANTS' VIOLATIONS OF ERISA**

25.     Defendants' violations of ERISA arise from their self-dealing in taking unreasonable compensation for managing the securities lending program on behalf of the Collective Trusts.

26.     As shown above, Defendants were (and are) fiduciaries responsible for managing the Plans' investments in the Collective Trusts prudently and solely in the interests of the Plans and their respective participants and beneficiaries. Defendants received investment advisory, custodial, trustee, and administrative fees for managing the Collective Trusts. In addition to investing and managing the Plans' assets in accordance with a given Collective Trust's stated objectives (*e.g.*, Defendants' Index Equity fund has a primary objective of replicating the total return of the Russell 3000 Stock Index by investing in stocks included in the Russell 3000 Index), Defendants also invested Plan assets through their securities lending program.

27.     Through the securities lending program, the Collective Trusts, and the Plans indirectly, made securities available for loan. Defendants set the terms and conditions, via a securities lending authorization agreement between the Collective Trusts and Defendants, of the Collective Trusts' participating in the securities lending program. Defendants, acting as the "Lending Agent," decided which securities would be loaned to which borrowers, collected the collateral from the borrowers, and invested the collateral in one or more Collateral Pools.

28.     Defendants established and managed the Collateral Pools and received investment advisory, custodial, trustee, and administrative fees for managing them. In addition, Defendants took fifty percent of the spread, that is, the income, after expenses and rebates, generated by the Collateral Pools. Only half of the income generated from the securities lending collateral went to the Collective Trusts. Defendants controlled all aspects of the securities lending program and all agreements and contracts created and executed thereunder.

29.     These arrangements were fraught with conflicts and self-dealing. Defendants managed the Collective Trusts and purportedly represented the Collective Trusts and the Plans in setting the terms of and executing a Securities Lending Agreement with one or more of themselves, who acted as the Lending Agent. One or more of Defendants, as Lending Agent, then allocated to one or more of Defendants, or an affiliate, the responsibility for managing the collateral investment program via the Collateral Pools. Essentially, Defendants negotiated with themselves the terms of their compensation, discretion, authority, and even liability. Not surprisingly, these arrangements led to Defendants setting and receiving excessive and unreasonable compensation for themselves.

30.     Although Defendants received fifty percent of the net income produced by the Collateral Pools pursuant to their self-dealing arrangements, in arm's length securities lending agreements, where the investors were represented by independent fiduciaries, Defendants received far less compensation. For example, Defendants' securities lending arrangements with the States of Missouri's and Florida's retirement plans provided that Defendants received only 30% of securities lending income. (Exhibits 1 (Missouri), 2 (Florida).)

31.     Moreover, the fifty percent received by Defendants far exceeds industry standards. As one financial columnist explained, a "few exemplary firms, like T. Rowe Price Group and Vanguard Group, rebate all securities-lending income (net of expenses) back to the funds that generated it. The total cost of Vanguard's securities-lending program is well under 1%, says Tom Higgins, chief financial officer of the funds. That suggests that most of the 30%-to-50% toll charged by other fund managers is pure profit -- in effect, money for nothing." *Is Your Fund Pawning Shares at Your Expense?*, Jason Sweig, Wall Street Journal, May 30, 2009. (Exhibit 3.)

32.     An August 2002 survey by Plansponsor.com found that the norm for division of securities lending income was between 70 and 80% to the lender, *i.e.*, the investors. Charles Ruffel,               *Lending               Logic*               (available               at http://www.plansponsor.com/MagazineArticle.aspx?id=6442460188&magazine=6442459) (Exhibit 4.)

33.     A leading consultant and investment advisor to retirement plans and other institutional investors, Enis Knupp & Associates, Inc., reported in an October 2003 article that securities lending agents typically receive 15 to 35% of the income from collateral investment. *Less is More: Securities Lending Revisited*, Enis Knupp & Associates, Inc., 2003. (Exhibit 5.) The trend for large investors, however, has been toward a split of 80-20 in favor of the investor. *Lending Logic*, *supra*. (Exhibit 4.)

34.     A 2010 RFP shows that plans sponsored by the State of Oklahoma receive 85% of the securities lending income for the securities that they loan. (Exhibit 6.) In 2006, the State of Florida maintained securities lending arrangements with several large banks, including

Defendants. Under four of the contracts, Florida plans received 80% of securities lending income, and Florida plans received 70% of the income from its arrangement with SSGA. (Exhibit 2.)

35.      A vice-president at Citibank, Brendan McCarthy, commented, "anyone over $1 billion in assets still at 60/40 should be talking to agent lenders … and any large [investors] ($ billion and better) not at 80/20 should likewise be talking to lenders." *Lending Logic*, *supra*. (Exhibit 4.)

36.      The Collective Trusts at issue in this case collectively possessed billions of dollars of holdings. For example, the Russell 1000 Index Securities Lending Fund alone (fund number 044), had over $7 billion in assets at the end of 2007. In aggregate, Defendants' Collective Trusts held over $400 billion in assets at the end of 2007. Defendants, fiduciaries of the Collective Trusts, of course failed to take advantage of the Collective massive bargaining power and leverage to negotiate a favorable compensation arrangement for its clients. Instead, they gave themselves a sweetheart deal, 50% of the net lending income, that was not the product of arm's length negotiations.

37.      Each time Defendants received compensation from the Collateral Pools, on information and belief, each fiscal quarter, they engaged in a self-dealing transaction with the Plans' assets. Each Defendant was a fiduciary for the Plans, as alleged above. Therefore, each Defendant was, by definition, also a party-in-interest to the Plans.

38.      In setting, receiving, and controlling their own compensation, as well as creating and managing the Collateral Pool investments, Defendants caused all of the securities lending transactions, from making the securities available for loan, to contracting with themselves, to

investing the collateral in Collateral Pools, to managing the Collateral Pools, to receiving income from the Collateral Pools. These repeated violations over many years were breaches of their duty of loyalty under ERISA § 404(a) and violations of per se rules against self-dealing transactions under ERISA § 406.

39.     As a result of Defendants' fiduciary breaches and self-dealing, the Plans and their respective participants and beneficiaries suffered hundreds and millions of dollars in losses. Every dollar collected by Defendants in excess of reasonable compensation was one dollar less for the Plans. Moreover, the Plans also suffered additional losses in the form of lost investment opportunity on the securities lending income wrongfully taken by Defendants for themselves. That income would have been reinvested in the respective Collective Trusts and would have produced additional gains for the Plans.

## VI. CLASS ACTION ALLEGATIONS

40.     ERISA §§ 409(a) and 502(a)(2) authorize ERISA fiduciaries, such as Plaintiff, to sue in a representative capacity for losses suffered by plans as a result of breaches of fiduciary duty. Pursuant to that authority, Plaintiff brings this action as a class action under Fed. R. Civ. P. 23 on behalf the Plan and all other similarly-situated Plans, *i.e.,* all Plans that invested Collateral in the Collateral Pools through the Collective Trusts. Plaintiff seeks to restore losses to the Plans, for which the State Street Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2).

41.     **Class Definition**. Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3) of the Federal Rules of Civil Procedure on behalf of the Plans and the following class of persons similarly situated (the "Class"):

14

> All ERISA Plans that invested in any Collective Trust that invested Collateral in any Collateral Pool, which Collective Trusts and Collateral Pools were managed and offered by the State Street Defendants from April 9, 2004 to the present (the "Class Period").[1]

42.     **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff understands that hundreds of ERISA Plans throughout the country invested in the Collective Trusts during the Class Period, and sustained losses as a result of the State Street Defendants' securities lending activities. For example, Schedule D to the Form 5500 for the S&P 500 Flagship Fund (Exhibit 7), filed by Defendants for that Collective Trust lists dozens of ERISA plans as investors in the fund. The S&P 500 fund is but one of dozens of Collective Trusts offered to the Plans and managed by Defendants that engaged in securities lending.

43.     **Commonalilty**. The claims of Plaintiff and all Class members originate from the same misconduct, breaches of duties and violations of ERISA perpetrated by the Defendants. Proceeding as a class action is particularly appropriate here, because Plan assets are held in Collective Trusts and/or Collateral Pools managed by the State Street Defendants, where each Plan investor shares in gains and losses on a pro rata basis, and, therefore, Defendants' imprudent actions affected all Plans in the same manner. Furthermore, common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The many questions of law and fact common to the Class include:

a.      Whether Defendants are fiduciaries under ERISA;

---

[1] The commencement of the Class Period is six years, *see* 29 U.S.C. §1113 (six year limitations period for breaches

b.      Whether Defendants breached their fiduciary duties under ERISA;

c.      Whether Defendants' acts proximately caused losses to the Plans and, if so, the appropriate relief to which Plaintiff, on behalf of the Plans and the Class, is entitled;

d.      Whether the compensation Defendants received in connection with transactions involving Plan assets was reasonable;

e.      Whether Defendants caused the Plans to engage in prohibited transactions with parties in interest, fiduciaries, and Defendants or their affiliates;

f.      Whether an affirmative defense to prohibited transactions applies and can be satisfied by Defendants.

44.     **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff seeks relief on behalf of the Plans pursuant to ERISA §502(a)(2), and, thus, Plaintiff's claims on behalf of the Plans are not only typical of, but identical to, a claim under this section brought by any Class member. If cases were brought and prosecuted individually, each of the members of the Class would be required to prove the same claims based upon the same facts, pursuant to the same remedial theories, and would be seeking the same relief.

45.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class. Plaintiff has undertaken to protect vigorously the interests of the absent members of the Class.

46.     **Rule 23(b)(1)(A) &(B) Requirements.** Class action status in this action is warranted under Rule 23(b)(1)(A), because prosecution of separate actions by the members of

---

of duty under ERISA), before the filing of the original complaint in this action.

the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B), because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

47.     **Rule 23(b)(2) Requirements.** Certification under 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

48.     **Rule 23(b)(3) Requirements.** In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VII. <u>REMEDY FOR BREACHES OF FIDUCIARY DUTIES</u>

49.     ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), authorizes the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan, to bring a civil action for appropriate relief under ERISA §409, 29 U.S.C. §1109. Section 409 requires "any person who is a fiduciary ... who breaches any of the ... duties imposed upon fiduciaries ... to make good such plan any losses to the plan ...." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate...."

50.     With respect to calculation of the losses to the Plans, breaches of fiduciary duty result in a presumption that, but for the violations of ERISA, the Plans would have received hundreds of millions of dollars in additional securities lending income and additional investment returns on that reinvested income. In this way, the remedy restores the Plans' lost value and puts the participants in the position they would have occupied had the Plans been properly administered.

51.     Plaintiff, on behalf of the Plans, is therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plans in an amount to be proven at trial based on the principles described above, as provided by ERISA §409(a), 29 U.S.C. §1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, including on order permitting the Plans and the Class to withdraw assets from Collective Trusts, as provided by ERISA §§409(a), 502(a)(2) and (3), 29 U.S.C. §§1109(a), 1132(a)(2); (c) disgorgement of compensation and profits earned thereon as a result of prohibited transactions; (d) reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund doctrine, and other applicable law; (e) taxable costs and interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

52.     Under ERISA, each Defendant is jointly and severally liable.

## VIII. CLAIMS FOR RELIEF

### COUNT I
### FAILURE PRUDENTLY AND LOYALLY TO MANAGE PLAN ASSETS

53.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

54.     Under Section 3(21) of ERISA, 29 U.S.C. §1002(21), Defendants were at all relevant times ERISA fiduciaries with respect to the Plans and the invested assets of the Plans.

55.     Under Section 3(38) of ERISA, 29 U.S.C. §1002(38), one or more of Defendants were at all relevant times the Investment Managers of the Plans.

56.     The scope of the fiduciary duties and responsibilities of Defendants included managing the assets of the Plans.

57.     Defendants were obligated to discharge their duties with respect to the Plans' assets with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

58.     Contrary to their duties and obligations under ERISA, Defendants failed loyally and prudently to manage the assets of the Plans. Specifically, Defendants breached their duties to the Plans and their participants, in violation of ERISA §404(a), by, *inter alia*, entering into contracts with their affiliates purportedly for the benefit of the Plans, in which the Plans were not represented by independent fiduciaries in order to award themselves unreasonable compensation far in excess of industry standards.

59.     As a consequence of Defendants' breaches of fiduciary duties, the Plans suffered massive losses. Had Defendants collected reasonable compensation, the losses suffered by the Plans would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans lost hundreds of millions of dollars of retirement savings.

60.     Pursuant to ERISA §§409, 502(a)(2) and (3), 29 U.S.C. §§1109(a), and 1132(a)(2), Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT II
## FOR PROHIBITED TRANSACTIONS INVOLVING PLAN ASSETS

61.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

62.     Under Section 3(21) of ERISA, 29 U.S.C. §1002(21), Defendants were at all relevant times ERISA fiduciaries with respect to the Plans and the invested assets of the Plans.

63.     Under Section 3(38) of ERISA, 29 U.S.C. §1002(38), one or more of Defendants were at all relevant times the Investment Managers of the Plans.

64.     The scope of the fiduciary duties and responsibilities of the Defendants included managing the assets of the Plans.

65.     Defendants, through the Collective Trusts, engaged in numerous self-dealing and prohibited transactions with fiduciaries and parties in interest, namely themselves, which transactions were *per se* prohibited by Section 406 of ERISA, 29 U.S.C. §1106. Such transactions were not exempted by an individual, class, or statutory exemption.

66.     Pursuant to ERISA §§409, 502(a)(2), and (a)(3), 29 U.S.C. §§1109(a), and 1132(a)(2), Defendants are liable to restore the losses to the Plans caused by their violations of Section 406, and to disgorge their compensation and profits thereon, and subject to other equitable relief as appropriate.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      A determination that this action is a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.      A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Plans and the Class;

C.      A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA §404(c)(1)(B), 29 U.S.C. §1104(c)(1)(B);

D.      A Declaration that Defendants, and each of them, have violated ERISA §406, 29 U.S.C. §1106;

E.      An Order compelling Defendants to make good to the Plans and the Class all losses or damages resulting from the securities lending program and to restore to the Plans and the Class all profits that the participants and beneficiaries would have made if Defendants had fulfilled their fiduciary obligations;

F.      Imposition of a constructive trust on any amounts by which any Defendants were unjustly enriched at the expense of the Plans and the Class as the result of beaches of fiduciary duty;

G.      Restoration of any losses to the Plans and the Class, allocated among the participants' individual accounts within the Plans and the Class, in proportion to the accounts' losses as required by ERISA;

H.      An Order awarding costs pursuant to 29 U.S.C. §1132(g);

I.      An Order awarding attorney fees pursuant to the common fund doctrine, 29 U.S.C. §1132(g), and other applicable law;

J.      An Order for equitable restitution and other appropriate equitable and injunctive

relief against Defendants; and

     K.     Granting such other and further relief as the Court may deem just and proper.

Plaintiff demands trial on all issues so triable.

## X. **DEMAND FOR JURY TRIAL**

     Plaintiff demands a jury trial on all claims so triable.

Dated: August 3, 2010     Respectfully submitted,

Todd M. Schneider
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, Arizona 85258

Todd S. Collins
Shanon J. Carson
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3040
Fax: (215) 875-4604

Matthew P. McCue
Law Office of Matthew McCue
179 Union Ave.
Framingham, MA 01702
Tel: (508) 620-1166
Fax: (508) 820-3311

Gregory Y. Porter
BAILEY & GLASSER LLP
910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103

Brian A. Glasser
Michael L. Murphy
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Tel: (304) 345-6555
Fax: (304) 342-1110

*Attorneys for Plaintiffs*