# EXHIBIT 1

SECURITIES LENDING AUTHORIZATION AGREEMENT

Between

**THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI and
THE NON-TEACHER EMPLOYEE RETIREMENT SYSTEM OF MISSOURI**

and

**STATE STREET BANK AND TRUST COMPANY**

a:\missouri

## TABLE OF CONTENTS

                                                                    PAGE

1.   APPOINTMENT OF STATE STREET............................    1

2.   SECURITIES TO BE LOANED................................    1

3.   BORROWERS..............................................    2

4.   SECURITIES LENDING AGREEMENTS..........................    3

5.   LOANS OF AVAILABLE SECURITIES..........................    3

6.   DISTRIBUTIONS ON AND VOTING RIGHTS WITH RESPECT TO
         LOANED SECURITIES..................................    4

7.   COLLATERAL.............................................    5

8.   COMPENSATION FOR THE CLIENT AND STATE STREET...........    6

9.   FEE DISCLOSURE.........................................    9

10.  RECORDKEEPING AND REPORTS..............................    9

11.  STANDARD OF CARE.......................................    9

12.  REPRESENTATIONS AND WARRANTIES.........................   10

13.  DEFINITIONS............................................   11

14.  CONTINUING AGREEMENT; TERMINATION; REMEDIES............   12

15.  NOTICES................................................   13

16.  SECURITIES INVESTORS PROTECTION ACT....................   14

17.  MISCELLANEOUS..........................................   14

18.  MODIFICATION...........................................   15

     EXHIBIT 3.1

     SCHEDULE A

     SCHEDULE 7.1

### SECURITIES LENDING AUTHORIZATION AGREEMENT

Agreement dated the /st day of December, 1995 between THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI and THE NON-TEACHER SCHOOL EMPLOYEE RETIREMENT SYSTEM OF MISSOURI, each a government plan organized and existing under the laws of Missouri (each a "Client" and collectively, the "Clients"), and STATE STREET BANK AND TRUST COMPANY, a Massachusetts trust company ("State Street"), setting forth the terms and conditions under which State Street is authorized to act on behalf of the Clients with respect to the lending of certain securities of the Clients held by State Street as trustee or custodian.

Certain capitalized terms used in this Agreement are defined in Section 13.

The Clients and State Street, as the parties hereto, hereby agree as follows:

1.  Appointment of State Street.  The Clients hereby authorize State Street as their agent to lend Available Securities to Borrowers in accordance with the terms of this Agreement.  State Street shall have the responsibility and authority to do or cause to be done all acts State Street shall reasonably determine to be desirable, necessary, or appropriate to implement and administer the securities lending program in accordance with the terms of this Agreement (the "Securities Lending Program").  State Street may take action as agent of the Clients on an undisclosed or a disclosed basis.  State Street is hereby authorized to request a third party bank, at State Street's expense, to undertake certain custodial functions in connection with holding of the Collateral provided by a Borrower hereunder.  In connection therewith, State Street may instruct said third party to establish and maintain a Borrower's account and a State Street Account wherein all Collateral, including cash shall be maintained by said third party in accordance with the terms of a form of custodial arrangement which shall also be consistent with the terms hereof.

2.  Securities to be Loaned.  State Street acts or will act as trustee or custodian of certain securities owned by the Clients.  All of the Clients' securities held by State Street as trustee or custodian shall be subject to the Securities Lending Program, except those securities which a Client or the Investment

1

Manager specifically identifies in notices to State Street as not being Available Securities.  In the absence of such notification, State Street shall have no authority or responsibility for determining whether any of the Clients' securities should be excluded from the lending program.

3.  Borrowers.  The Available Securities may be loaned only to Borrowers approved by State Street from time to time in accordance with State Street's procedures therefor, which procedures shall include, but not be limited to, review (i) of a Borrower's most recent available audited and unaudited financial statements and (ii) annually by senior management of the credit status of Borrowers.  State Street shall furnish a list of the names of approved Borrowers to Clients quarterly or more frequently as requested by the Clients.  Notwithstanding the foregoing to the contrary, the Clients may, by notice to State Street, modify the list of approved Borrowers for the Securities Lending Program in the Clients' sole and absolute discretion.

In the event Clients approve lending to Borrowers resident in the United Kingdom, Clients shall complete Part 1 of the document known as a "MOD-2 form," which is attached hereto as Exhibit 3.1.

All Loans of Available Securities shall be made directly by State Street or its subsidiaries, and finders shall not be utilized nor receive compensation of any type for Loans for the Clients' accounts.

In those cases that certain loan activity (such as order taking overnight) is carried out by State Street through its London Office, then it becomes subject to additional regulation by State Street's UK regulator, namely the UK Securities and Futures Authority ("SFA"), and as such, in accordance with the rules of the SFA, State Street is obliged to notify Clients of the following matters:

i.   State Street shall make available to you established procedures in accordance with the requirements of SFA for the effective consideration of complaints concerning State Street's activities carried on in the UK.

ii.  Where a liability in one currency is to be matched by an asset in a different currency, or where an investment transaction relates to an investment denominated in a currency other than sterling, a

2

movement of exchange rates may have a separate effect, favorable or unfavorable, on the gain or loss which would otherwise be experienced on the investment.

iii.  State Street or an affiliate may have an interest that is material to the investment or transaction concerned and neither State Street nor any such affiliate shall be obliged to disclose such interest or account to you for any profits or benefits made or derived by it or any of its associates from any such transaction.

iv.  Any assets which State Street holds in the form of money shall not be treated by State Street as "Clients' Money" as defined by The Financial Services (Client Money) Regulations 1991 of the United Kingdom as amended (the "Clients' Money Regulations") and will not be held in accordance with the Clients' Money Regulations or such other regulations as shall amend or replace the Clients' Money Regulations from time to time.

4.   Securities Lending Agreements.  Subject to the provisions of Section 3, the Clients authorize State Street to enter into one or more Securities Lending Agreements with such Borrowers as may be selected by State Street.  Each Securities Lending Agreement shall have such terms and conditions as State Street may negotiate with the Borrower, however certain terms of individual loans, including rebate fees to be paid to the Borrower for the use of cash Collateral, shall be negotiated at the time a Loan is made.

5.   Loans of Available Securities.  State Street shall have authority to make Loans of Available Securities to Borrowers, and to deliver such securities to Borrowers.  Subject to the provisions of Section 3, State Street shall be responsible for determining whether any such Loan shall be made, and for negotiating and establishing the terms of each such Loan.  State Street shall have the authority to terminate any Loan in its discretion, at any time and without prior notice to the Clients.

The Clients acknowledge that State Street administers securities lending programs for other clients of State Street. State Street will allocate securities lending opportunities among its clients, using reasonable and equitable methods established by State Street from time to time.  State Street does not represent or warrant that any amount or percentage of the

3

Clients' Available Securities will in fact be loaned to
Borrowers.  Subject to the provisions of the second sentence of
this paragraph and of Section 11, Clients agree that they shall
have no claim against State Street  and State Street shall have
no liability arising from, based on, or relating to, loans made
for other clients, or loan opportunities refused hereunder,
whether or not State Street has made fewer or more loans for any
other client, and whether or not any loan for another client, or
the opportunity refused, could have resulted in loans made under
this Agreement.

The Clients also acknowledge that, under the applicable
Securities Lending Agreements, Borrowers will not be required to
return Loaned Securities immediately upon receipt of notice from
State Street terminating the applicable Loan, but instead will be
required to return such Loaned Securities within such period of
time following such notice as is specified in the applicable
Securities Lending Agreement.  Upon receiving a notice from a
Client or the Investment Manager that Available Securities which
have been loaned to a Borrower should no longer be considered
Available Securities (whether because of the sale of such
securities or otherwise), State Street shall use its reasonable
efforts to notify promptly thereafter the Borrower which has
borrowed such securities that the Loan of such securities is
terminated and that such securities are to be returned within the
time specified by the applicable Securities Lending Agreement.

6.  Distributions on and Voting Rights with Respect to
Loaned Securities.  The Clients represent and warrant that they
are the beneficial owners of all Available Securities and that
they are entitled to receive all distributions made by the issuer
with respect to Loaned Securities. Except as provided in the
next sentence, all interest, dividends, and other distributions
paid with respect to Loaned Securities shall be credited to the
appropriate Client's account on the date such amounts are
delivered by the Borrower to State Street.  Any non-cash
distribution on Loaned Securities which is in the nature of a
stock split or a stock dividend shall be added to the Loan (and
shall be considered to constitute Loaned Securities) as of the
date such non-cash distribution is received by the Borrower;
provided that a Client (or Investment Manager) may, by giving
State Street at least ten (10) Business Days' notice prior to the
payment or effective date of such non-cash distribution, direct
State Street to request that the Borrower deliver such non-cash
distribution to State Street, pursuant to the applicable
Securities Lending Agreement, in which case State Street shall

4

credit such non-cash distribution to the appropriate Client's account on the date it is delivered to State Street.

The Clients acknowledge that they will not be entitled to participate in any dividend reinvestment program or to vote with respect to securities that are on loan on the applicable record date for such securities.

The Clients also acknowledge that any payments of distributions from Borrower to Clients are in substitution for the interest or dividend accrued or paid in respect of Loaned Securities and that the tax treatment of such payment may differ from the tax treatment of such interest or dividend.

If an installment, call or rights issue becomes payable on or in respect of any Loaned Securities, State Street shall use all reasonable endeavors to ensure that any timely instructions from the Clients are complied with, but State Street shall not be required to make any payment unless a Client has first made available to State Street funds to make such payment.

7.  Collateral.  The Clients authorize and direct State Street to receive and to hold, on the Clients' behalf, Collateral from Borrowers to secure the obligations of Borrowers with respect to any Loan of Available Securities made on behalf of the Clients pursuant to the Securities Lending Agreements.  Subject to the provisions of Section 11, all investments of cash Collateral shall be for the account and risk of the Clients. Concurrently with the delivery of the Loaned Securities to the Borrower under any Loan, State Street shall receive from the Borrower Collateral in any of the forms listed on Schedule 7.1. Said Schedule may be amended from time to time by mutual agreement of the parties.

Such Collateral shall have an initial Market Value of not less than one hundred and two percent (102%) of the Market Value of the Loaned Securities for such securities whose primary trading location is within the United States or sovereign debt issued by foreign governments, and an initial Market Value of not less than one hundred and five percent (105%) of the Market Value of the Loaned Securities which are corporate securities not denominated in United States dollars or whose primary trading location is outside the United States. Except in the event of minimal discrepencies or minor fluctuations in the value of Loaned Securities or Collateral, in which case State Street shall not require a Borrower to post additional Collateral, which fluctuations shall not exceed .125% for government securities, $1000 for corporate securities or exceed .5% for any consecutive five (5) day period, a decline in the Market Value of the

5

Collateral or an increase in the Market Value of the Loaned Securities during the term of the Loan shall require the Borrower to post additional Collateral, by the close of business on the next business day, at any time that the Market Value of the Collateral declines to less than: (i) one hundred and two percent (102%) of the Market Value of the Loaned Securities whose primary trading location is within the United States or sovereign debt issued by foreign governments or (ii) one hundred and five percent (105%) of the Market Value of Loaned Securities which are corporate securities not denominated in United States dollars or whose primary trading market is located outside the United States.

The Collateral shall be returned to Borrower at the termination of the Loan upon the return of the Loaned Securities by Borrower to State Street in accordance with the applicable Securities Lending Agreement.  State Street shall invest cash Collateral in accordance with any directions, including any limitations established by the Clients in a writing identified to this Agreement and acknowledged in writing by State Street. Where cash Collateral is invested in commingled funds maintained for such purpose by State Street, State Street shall furnish such monthly reports regarding such funds as are requested by Clients. State Street shall exercise reasonable care, skill, diligence and prudence in the investment of Collateral.  Subject to the foregoing limits and standard of care, State Street does not assume any market or investment risk of loss with respect to the investment of cash Collateral and, except as provided in any arrangements with respect to sharing of income and loss between Clients and State Street, if at any time during the term of any Loan, the value of the cash Collateral so invested is insufficient to return the rebate fee (i.e., the return to the Borrower), the full amount of the Collateral or any and all other amounts due to such Borrower pursuant to the Securities Lending Agreement, Clients shall be solely responsible for such shortfall and hereby agree to pay an amount equal to such shortfall to State Street, and State Street shall be entitled to charge Clients' accounts for such shortfall.

8.  Compensation for the Clients and State Street.  To the extent that a Loan is secured by cash Collateral, such Collateral, including money received with respect to the investment of the same, or upon the maturity, sale, or liquidation of any such investments, shall be invested by State Street, subject to the directions referred to above, if any, in short-term instruments, short-term investment funds maintained by State Street, money market mutual funds and such other investments as State Street may from time to time select, including without limitation investments with State Street's

6

banking department or the banking department of any State Street affiliate and investments in any mutual fund, securities lending trust or other collective investment fund with respect to which State Street and/or its affiliates provide investment management or advisory, trust, custody, transfer agency, shareholder servicing and/or other services for which they are compensated. The Clients acknowledge that interests in such mutual funds, securities lending trusts and other collective investment funds, to which State Street and/or one or more of its affiliates provide services are not guaranteed or insured by State Street or any of its affiliates or by the Federal Deposit Insurance Corporation or any government agency.  The Clients hereby authorize State Street to purchase or sell investments of cash Collateral to or from other accounts held by State Street or its affiliates; provided, however, that all such transactions shall be on terms no less favorable than those available from parties which do not have any of such relationships with State Street.

The net income generated by any investment made pursuant to the preceding paragraph of this Section 8 shall be allocated among the Borrower, State Street, and the Clients, as follows: (a) a portion of such income shall be paid to the Borrower in accordance with the Securities Lending Agreement negotiated between the Borrower and State Street; (b) the balance, if any, shall be split between  State Street as compensation for its services in connection with this Securities Lending Program and the Clients and such income shall be credited to the Clients' accounts, in accordance with the fee schedule attached hereto as Schedule A.

In the event the net income generated by any investment made pursuant to the first paragraph of this Section 8 does not equal or exceed the amount due the Borrower in accordance with the Securities Lending Agreement between Borrower and State Street, State Street shall  debit the Clients' accounts by an amount equal to the difference between such accounts' respective allocable shares of the net income generated and the amounts to be paid to the Borrower pursuant to the Securities Lending Agreement in accordance with the fee schedule attached hereto as Schedule A.  In the event debits to the Clients' accounts produce a deficit therein, State Street shall sell investments made with cash Collateral and credit the net proceeds of such sale or liquidation to satisfy the deficit.  In the event the foregoing does not eliminate the deficit, State Street shall have the right to charge the deficiency to any other account or accounts maintained by the applicable Client with State Street.

State Street may, in its sole discretion, advance funds on behalf of the Clients in order to eliminate a deficiency created

7

under the foregoing paragraph.  The Clients agree to repay State Street on demand the amount of any advance or credit described herein.

In connection with the investment of cash Collateral pursuant to Section 8 hereof in any security, including a Securities Lending Trust or other collective investment fund that is not publicly offered, the Clients authorize State Street (unless the Clients have expressly notified State Street to the contrary in writing) to execute and deliver, on behalf of the Clients, one or more documents representing that such securities are being acquired only for investment and not with a view to distribution and that the Clients qualify as "accredited investors" within the meaning of Rule 501 of Regulation D under the Securities Act of 1933, as amended.

In the event of a Loan to a Borrower resident in Canada, which is outstanding at a record date for a dividend reinvestment program ("DRP") and is secured by cash Collateral, the Borrower shall pay the Clients a substitute payment equal to the full amount of the cash dividend declared, and may pay a loan premium, the amount of which shall be negotiated by State Street, above the amount of the cash dividend.  Such loan premium shall be allocated between State Street and the Clients as follows:  (a) a portion of such loan premium shall be paid to State Street as compensation for its services in connection with this Securities Lending Program, in accordance with Schedule A and (b) the remainder of such loan premium shall be credited to the Clients' accounts.

To the extent that a Loan is secured by non-cash Collateral, the Borrower shall be required to pay a loan premium, the amount of which shall be negotiated by State Street.  Such loan premium shall be allocated between State Street and the Clients as follows:  (a) a portion of such loan premium shall be paid to State Street as compensation for its services in connection with this securities lending program, in accordance with Schedule A hereto; and (b) the remainder of such loan premium shall be credited to the Clients' accounts.

Clients acknowledge that in the event that Clients' participation in the Securities Lending Program generates income for the Clients, State Street may be required to withhold tax or may claim such tax from the Clients as is required in accordance with applicable law, provided, however, that State Street shall give the Clients prompt written notice of any such withholding.

The Clients shall reimburse State Street for such reasonable fees and expenses that State Street may incur in connection with

8

the performance of its obligations hereunder, including, without
limitation: (i) the ordinary telecommunication charges associated
with the movement of securities in connection with the securities
lending activity contemplated by this Agreement; and (ii) any and
all funds advanced by State Street on behalf of the Clients as a
consequence of the Clients' obligations hereunder, including the
Clients' obligation to return cash Collateral to the Borrower and
to pay any fees due the Borrower, all as provided in Section 7
hereof.

    9.   Fee Disclosure.   The fees associated with the investment
of cash Collateral in funds maintained or advised by State Street
are disclosed on Schedule A hereto.   Said Schedule may be
replaced from time to time by State Street upon not less than 30
days' notice to Client.   An annual report with respect to such
funds will be provided to the Client, at no expense, promptly
after such report becomes available.

    10.   Recordkeeping and Reports.   State Street will establish
and maintain such records as are reasonably necessary to account
for Loans made by each Client and the income derived therefrom.
On a monthly basis, State Street will provide each Client with a
statement describing the Loans made by it, and the income derived
from such Loans, during the period covered by such statement.
Each party to this Agreement shall comply with the reasonable
requests of the other for information necessary to the
requester's performance of its duties in connection with the
Securities Lending Program.   State Street shall make available
its records with respect to transactions undertaken in connection
with the Securities Lending Program, for inspection by the
Clients and their duly authorized representatives during normal
business hours.   Copies of the forms of Securities Lending
Agreements, and any amendments or modifications thereof, utilized
in connection with any Loans made hereunder shall be furnished to
each Client at such Client's sole expense upon its request.

    11. Standard of Care.   Subject to the requirements of
applicable law and as otherwise provided herein, State Street
shall not be liable for any loss or damage, including counsel
fees and court costs, whether or not resulting from its acts or
omissions hereunder or otherwise, unless the loss or damage
arises out of State Street's negligence, gross negligence,
misconduct, bad faith or fraud in the performance of its duties
under this Agreement.

    State Street, in determining the Market Value of
Securities, including without limitation, Collateral, may rely
upon any recognized pricing service and shall not be liable for
any errors made by such service.

9

State Street agrees that it shall be liable for any liabilities, losses, costs or expenses which each Client and their respective trustees, officers, employees, agents and representatives and their successors and assigns (individually, a "System Party" and collectively, the "System Parties") may incur in connection with this Agreement or the transactions contemplated hereby arising from State Street's breach of its obligations under this Agreement, negligence, gross negligence, or fraud, together with attorneys' fees, costs and expenses (including, without limitation, costs of investigation) incurred by any System Party as a result thereof.

Upon receipt by any System Party of notice of any Claim with respect to which State Street may be responsible under this Section, the System Party shall promptly notify State Street in writing thereof, enclosing a copy of all papers, if any, served; provided, however, any System Party's failure or delay in so notifying State Street shall not affect State Street's liability hereunder.

State Street shall be entitled to participate in or assume the defense of any claim against a System Party defended by State Street under this section, with legal counsel reasonably satisfactory to System Party. After written notice from State Street to the System Party of State Street's election to assume such defense, State Street shall not be liable to the System Party for any attorneys' fees or other expenses of litigation incurred by the System Party for any attorneys fees or other expenses of litigation subsequently incurred by the System Party in connection with such defense.

No party shall settle any claim with respect to the other without the prior written consent of the other, which consent shall not be unreasonably withheld. If one party does not agree with the decision of the other to settle, terminate, compromise, appeal or otherwise dispose of such litigation, the first party, for its own account and at its own expense, may elect to pursue the litigation in a different manner upon written notice to the second party.

12.   Representations and Warranties.   Each party hereto represents and warrants that (a) it has the power to execute and deliver this Agreement, to enter into the transactions contemplated hereby, and to perform its obligations hereunder; (b) it has taken all necessary action to authorize such execution, delivery, and performance; (c) this Agreement constitutes a legal, valid, and binding obligation enforceable against it; and (d) the execution, delivery, and performance by

10

it of this Agreement will at all times comply with all applicable laws and regulations.

The person executing this Agreement on behalf of the Clients represents that he or she has the authority to execute this Agreement on behalf of the Clients.

The Clients hereby represent to State Street that they are not subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") with respect to this Agreement and each Loan.

13. <u>Definitions</u>.  For the purposes hereof:

(a)  "Available Securities" means the securities of the Clients that are available for Loans pursuant to Section 2.

(b)  "Borrower" means any of the entities to which Available Securities may be loaned under a Securities Lending Agreement, as described in Section 3 and may include specified United States registered brokers or dealers, banks and foreign borrowers, if permitted by applicable law, as provided in Section 3.

(c)  "Collateral" means collateral delivered by a Borrower to secure its obligations under a Securities Lending Agreement.

(d)  "Investment Manager," when used in any provision, means the person or entity who has discretionary authority over the investment of the Available Securities to which the provision applies.  The Clients shall be deemed to be the Investment Managers for their respective Available Securities in the event the Clients have not designated a third party investment manager with respect thereto.

(e)  "Loan" means a loan of Available Securities to a Borrower.

(f)  "Loaned Security" shall mean any "security" which is delivered as a Loan under a Securities Lending Agreement; provided that, if any new or different security shall be exchanged for any Loaned Security by recapitalization, merger, consolidation, or other corporate action, such new or different security shall, effective upon such exchange, be deemed to become a Loaned Security in substitution for the former Loaned Security for which such exchange was made.

11

(g)   "Market Value" of a security means the market value of such security (including, in the case of a Loaned Security that is a debt security, the accrued interest on such security) as determined by the independent pricing service designated by State Street, or such other independent sources as may be selected by State Street on a reasonable basis.

(h)   "Securities Lending Agreement" means the agreement between a Borrower and State Street (on behalf of the Clients) that governs Loans, as described in Section 4.

14.   <u>Continuing Agreement; Termination; Remedies</u>.  It is the intention of the parties hereto that this Agreement shall constitute a continuing agreement in every respect and shall apply to each and every Loan, whether now existing or hereafter made.  The Client and State Street may each at any time terminate this Agreement upon at least five (5) Business Days' written notice to the other to that effect.  The only effects of any such termination of this Agreement will be that (a) following such termination, no further Loans shall be made hereunder by State Street on behalf of the Clients, and (b) State Street shall, within a reasonable time after termination of this Agreement, terminate any and all outstanding Loans.  The provisions hereof shall continue in full force and effect in all other respects until all Loans have been terminated and all obligations satisfied as herein provided.

12

15.   Notices.   Except as otherwise specifically provided herein, notices under this Agreement may be made orally, in writing, or by any other means mutually acceptable to the parties.   If in writing, a notice shall be sufficient if delivered to the party entitled to receive such notices at the following addresses:

        If to State Street to:
                State Street Bank and Trust Company
                Public Funds Division
                P.O. Box 1992
                Boston, MA  02110
                Attention: Patricia Walsh, Fund Manager

        With a copy to:
                Securities Lending Division
                Two International Place
                Boston, MA 02110
                Attention:  Legal Counsel

        If to Clients to:
                The Public School Retirement System of Missouri
                The Non-Teacher School Employee Retirement System of
                  Missouri
                P.O. Box 268
                Jefferson City, MO  65102
                Attention:  Executive Director

or to such other addresses as either party may furnish the other party by written notice under this section.

        Whenever this Agreement permits or requires the Clients to give notice to, direct, provide information to State Street, such notice, direction, or information shall be provided to State Street on the Clients' behalf by any individual designated for such purpose by the Client in a written notice to State Street. This Agreement shall be considered such a designation of the person executing the Agreement on the Clients' behalf.   After its receipt of such a notice of designation, and until its receipt of a notice revoking such designation, State Street shall be fully protected in relying upon the notices, directions, and information given by such designee.

13

16.  <u>Securities Investors Protection Act of 1970 Notice</u>.
CLIENTS ARE HEREBY ADVISED AND ACKNOWLEDGES THAT THE PROVISIONS
OF THE SECURITIES INVESTOR PROTECTION ACT OF 1970 MAY NOT PROTECT
THE CLIENTS WITH RESPECT TO THE LOAN OF SECURITIES HEREUNDER AND
THAT, THEREFORE, THE COLLATERAL DELIVERED TO THE CLIENTS MAY
CONSTITUTE THE ONLY SOURCE OF SATISFACTION OF THE BROKER'S OR
DEALER'S OBLIGATION IN THE EVENT THE BROKER OR DEALER FAILS TO
RETURN THE SECURITIES.

17.  <u>Miscellaneous</u>.  This Agreement supersedes any other
agreement between the parties or any representations made by one
party to the other, whether oral or in writing, concerning loans
of securities by State Street on behalf of the Clients.  This
Agreement shall not be assigned by either party without the prior
written consent of the other party.  Subject to the foregoing,
this Agreement shall be binding upon and shall inure to the
benefit of the parties hereto and their respective heirs,
representatives, successors, and assigns.  This Agreement shall
be performed, governed and construed in accordance with all
applicable federal law, and to the extent not inconsistent
therewith, the laws of the State of Missouri.  The parties hereby
agree that any action regarding the terms or performance or
breach of this Agreement shall be brought in any United States
District Court located in the State of Missouri, as shall be
elected by Clients in their sole and absolute discretion.  Upon
State Street's receipt of written notice of such election, State
Street shall take whatever actions are necessary to effectuate
Clients' election, including, but not limited to, dismissing and
refiling any action in the appropriate court.  The provisions of
this Agreement are severable and the invalidity or
unenforceability of any provision hereof shall not affect any
other provision of this Agreement.  If in the construction of
this Agreement any court should deem any provision to be invalid
because of scope or duration, then such court shall forthwith
reduce such scope or duration to that which is appropriate and
enforce this Agreement in its modified scope or duration.

14

18.  <u>Modification</u>.  This Agreement shall not be modified,
except by an instrument in writing signed by the party against
whom enforcement is sought.

THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI

By: _____

Name: _____M. Steve Yoakum_____

Title: _____Executive Director_____

THE NON-TEACHER SCHOOL EMPLOYEE RETIREMENT SYSTEM OF
MISSOURI

By: _____

Name: _____M. Steve Yoakum_____

Title: _____Executive Director_____

STATE STREET BANK AND TRUST COMPANY

By: _____

Name: _____

Title: _____VICE PRESIDENT_____

15



EXHIBIT 3.1

Ref No.............................
(For insertion by Inland Revenue when photocopy)

## APPLICATION FOR RELIEF FROM UK INCOME TAX ON MANUFACTURED OVERSEAS DIVIDENDS (Double Taxation Relief (Taxes on Income) (General) (Manufactured Overseas Dividends) Regulations S I 1993 No 1957)

**Part 1   Claimant's Declaration**
I declare, to the best of my knowledge and belief, that

.......................................................
(insert name of claimant)
Claimant's address...............................................

.........................................
.........................................

is beneficially entitled to the manufactured overseas dividends receivable from approved UK intermediaries or approved UK collecting agents as defined in SI 1993 Number 2004 and claim exemption under the Other Income article of the ...................../UK Tax Convention in respect of the manufactured overseas dividends

.......................................................
(claimant's signature)

**Part 2   Certificate of Tax Authority**

I certify

(a) that..........................................................is resident in ......................................within
              (insert name of claimant)

the meaning of the ......................................./United Kingdom Tax Convention and

(b)* is subject to tax on the manufactured dividends or interest to which it is entitled.
* delete if not required by Other Income article of convention

..........................................        ..............
(signature)                              (date)
Stamp of overseas                                    Overseas revenue
revenue authority                                    reference No.

Copy of Inland Revenue original

Issued on........................................................

Signature............................................

## Schedule A

This Schedule is attached to and made part of the Securities
Lending Authorization Agreement, dated the /5/ day of Dec.,
1995 among THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI and
THE NON-TEACHER SCHOOL EMPLOYEE RETIREMENT SYSTEM OF MISSOURI
("Clients") and STATE STREET BANK AND TRUST COMPANY ("State
Street").

### Schedule of Fees

1.   Subject to Paragraph 2 below, all proceeds collected by State
Street on investment of Cash Collateral or any fee income shall
be allocated as follows:

-- Seventy five percent (75%) payable to the Client, and

- Twenty five percent (25%) payable to State Street.

     In the event the net income generated by the investment of
cash Collateral does not equal or exceed the amount due the
Borrower hereunder, State Street and Client shall each be
responsible for their allocable share of the rebate based upon
the percentages set forth above.

2.   All payments to be allocated under Paragraph 1 above shall be
made after deduction of such other amounts payable to State
Street or to the Borrower under the terms of the attached
Securities Lending Authorization Agreement.

3.   Pooled Short-Term:   Investment Management Fees

     On an annualized basis, the base management fee for investing
cash collateral in any of the Pooled Trusts [also known as the
Quality Funds] is 1.75 basis points netted out of yield.   In
addition, the trustee may employ State Street as custodian for
the Trust upon such compensation as may be agreed upon by the
Trustee and State Street.

## Schedule 7.1

This Schedule is attached to and made part of the Securities Lending Authorization Agreement, dated the _1st_ day of _December_ 1995 among The Public School Retirement System of Missouri and The Non-Teacher School Employee Retirement System of Missouri ("Clients") and STATE STREET BANK AND TRUST COMPANY ("State Street").

### Acceptable Forms of Collateral

- Cash (U.S. and foreign currency);

- Securities issued or guaranteed by the United States government or its agencies;

- Sovereign debt rated A or better not to exceed 20% of the Market Value of the Collateral;

- Irrevocable bank letters of credit issued by a person other than the Borrower or an affiliate of the Borrower may be accepted as Collateral, if State Street has reasonably determined that it is appropriate to accept such letters of credit as Collateral under the securities lending programs it administers; and

- Such other Collateral as the parties may agree to in writing from time to time.

AMENDMENT TO
SECURITIES LENDING AUTHORIZATION AGREEMENT
BETWEEN
THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI AND THE
NON-TEACHER EMPLOYEE RETIREMENT SYSTEM OF MISSOURI
AND
STATE STREET BANK AND TRUST COMPANY

WHEREAS, The Public School Retirement System of Missouri and the Non-Teacher Employee Retirement System of Missouri ("Client") and State Street Bank and Trust Company ("State Street"), entered into a Securities Lending Authorization Agreement, dated 1 December 1995 ( the "Agreement");

WHEREAS, Section 18 of the Agreement provides that the Agreement may be modified by a writing signed by the party against whom enforcement is sought; and

WHEREAS, the Client and State Street both desire to amend the Agreement to provide for counterparty default indemnification, convertible bonds as collateral and a change in the fee split;

NOW, THEREFORE, for value received and in order to induce the parties to enter into the amendment contemplated hereby, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties mutually agree to amend the Agreement in the following respects:

1.   The following section is added as Section 19:

"19.   Indemnification.

(a)   If at the time of a default by a Borrower with respect to a Loan (within the meaning of the applicable Securities Loan Agreement) some or all of the Loaned Securities under such Loan have not been returned by the Borrower, and subject to the terms of this Agreement, State Street shall indemnify the Client against the failure of the Borrower as follows.  State Street shall purchase a number of Replacement Securities equal to the number of such unreturned Loaned Securities, to the extent that such Replacement Securities are available on the open market.  Such Replacement Securities shall be purchased by applying the proceeds of the Collateral with respect to such Loan to the purchase of

such Replacement Securities. Subject to the Client's obligations pursuant to Section 8 hereof, if and to the extent that such proceeds are insufficient or the Collateral is unavailable, the purchase of such Replacement Securities shall be made at State Street's expense.

(b)    If State Street is unable to purchase Replacement Securities pursuant to Paragraph (a) hereof, State Street shall credit to the Client's account an amount equal to the Market Value of the unreturned Loaned Securities for which replacement securities are not so purchased, determined as of (i) the last day the Collateral continues to be successfully marked to market against the unreturned Loaned Securities; or (ii) the next business day following the day referred to in (i) above, if higher.

(c)    In addition to making the purchases or credits required by Paragraphs (a) and (b) hereof, State Street shall credit to the Client's account the value of all distributions on the Loaned Securities (not otherwise credited to the Client's accounts with State Street), the record dates for which occur before the date that State Street purchases Replacement Securities pursuant to Paragraph (a) or credits the Client's account pursuant to Paragraph (b).

(d)    Any credits required under Paragraphs (b) and (c) hereof shall be made by application of the proceeds of the Collateral (if any) that remains after the purchase of Replacement Securities pursuant to Paragraph (a). If and to the extent that the Collateral is unavailable or the value of the proceeds of the remaining Collateral is less than the value of the sum of the credits required to be made under Paragraphs (b) and (c), such credits shall be made at State Street's expense.

(e)    If after application of Paragraphs (a) through (d) hereof, additional Collateral remains or any previously unavailable Collateral becomes available or any additional amounts owed by the Borrower with respect to such Loan are received from the Borrower, State Street shall apply the proceeds of such Collateral or such additional amounts first to reimburse itself for any amounts expended by State Street pursuant to Paragraphs (a) through (d) above, and then to credit to the Client's account all other amounts owed by the Borrower to the Client with respect to such Loan under the applicable Securities Loan Agreement.

(f)    In the event that State Street is required to make any payment and/or incur any loss or expense under this Section, State Street shall, to the extent of such payment, loss, or expense, be subrogated to, and succeed to, all of the rights of the Client against the Borrower under the applicable Securities Loan Agreement.

    (g)    The provisions of this Section 14 shall not apply to losses attributable to war, riot, revolution, acts of government or other causes beyond the reasonable control or apprehension of State Street.

    (h)    The provisions of this Section 14 shall not apply such that State Street shall have no obligation to indemnify the Client in the event that equities are loaned to Borrowers against convertible bonds that have been delivered by Borrowers to State Street, on behalf of the Client, as Collateral."

2.    Paragraph 1 of Schedule A is hereby amended by changing the fee split from Seventy five percent (75%) to the Client and Twenty five percent (25%) to State Street to Seventy percent (70%) to the Client and Thirty percent (30%) to State Street.

3.    Schedule 7.1 is hereby amended by adding convertible bonds as an Acceptable Form of Collateral.

4.    The Agreement shall remain the same in all other respects.

    The Amendment is effective as of the 1st day of December 1999.

    IN WITNESS WHEREOF, the parities hereto agree to the execution of the above Amendment by affixing their signatures below.

| THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI AND THE NON-TEACHER EMPLOYEE RETIREMENT SYSTEM OF MISSOURI | STATE STREET BANK AND TRUST COMPANY |
|---|---|
| By: _(signature)_ | By: _(signature)_ |
| Name: Craig Husting | Name: Donald L. Hodgman |
| Title: Chief Investment Officer | Title: Senior Vice President |
| Date: 11/11/99 | Date: 11/17/99 |

w:\legal\amy\amdmt\missouri

Schedule 7.1

Effective November 22, 2006

This amended Schedule 7.1 is hereby attached to and made part of the Securities Lending Authorization Agreement dated the December 1, 1995 among The Public School Retirement System of Missouri and The Public Education Employee Retirement System of Missouri ( "Clients") and State Street Bank and Trust Company (the "Agreement"), as amended from time to time.  Any prior Schedule 7.1 to the Agreement is hereby deleted in its entirety as of the effective date above.

**Acceptable Forms of Collateral**

- Cash (U.S. and foreign currency);

- Securities issued or guaranteed by the United States government or its agencies;

- Sovereign debt rated A or better not to exceed 20% of the Market Value of the Collateral;

- Irrevocable bank letters of credit issued by a person other than the Borrower or an affiliate of the Borrower may be accepted as Collateral, if State Street has reasonably determined that it is appropriate to accept such letters of credit as Collateral under the securities lending programs it administers;

- Convertible Debt

- Assets permissible under Rule 15c3-3 under the Exchange Act of 1934

- Such other Collateral as the parties may agree to in writing from time to time.

Schedule 7.1

Effective November 22, 2006

IN WITNESS WHEREOF, the undersigned parties hereby agree to this amended Schedule 7.1.

THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI AND THE
PUBLIC EDUCATION EMPLOYEE RETIREMENT SYSTEM OF MISSOURI

By: _____ [Its authorized signatory]
Name: Craig Husting
Title:   Chief Investment Officer

STATE STREET BANK AND TRUST COMPANY

By: _____ [Its authorized signatory]
Name: Suzanne N. Lee
Title: Senior Managing Director

1 of 1