**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Glass Dimensions, Inc. on behalf of the Glass Dimensions, Inc. Profit Sharing Plan and Trust,** *and all others similarly situated*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>**State Street Corporation, State Street Bank and Trust Co.,** **and State Street Global Advisors,** )<br><br>Defendants. ) | **CIVIL ACTION NO:** 1:10-CV-10588 (JLT) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO**
**COLLECTIVE TRUST FUNDS PLAINTIFF DID NOT PURCHASE**

Jeffrey B. Rudman (BBO #433380)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Lori A. Martin (*pro hac vice*)
Brad E. Konstandt (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888

*Counsel for Defendants State Street*
*Corporation and State Street Bank & Trust*
*Company (including its division State Street*
*Global Advisors)*

## TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF UNDISPUTED FACTS ...............................................................2

      A.    The Parties ......................................................................................2

      B.    The SSBT Securities Lending Program .......................................3

      C.    The SSgA Lending Funds ..............................................................3

      D.    The Claims .......................................................................................7

ARGUMENT ..............................................................................................................7

I.      THE GLASS DIMENSIONS PLAN LACKS STANDING TO ASSERT
      CLAIMS BASED UPON FUNDS THAT THE PLAN DID NOT OWN..........................7

      A.    Article III Requires that Plaintiff Must Suffer Injury-in-Fact Traceable
           to the Alleged Wrongdoing..........................................................................8

      B.    Article III Requires that Plaintiff Have Standing to Assert All of the
           Claims in the Case In Order to Seek Relief on Behalf of a Class............................9

      C.    The Glass Dimensions Plan Has Not Been Injured From Compensation
           Paid to State Street by Lending Funds That the Plan Did Not Purchase ...............10

CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Baker v. Carr*,
  369 U.S. 186 (1962).................................................................................................8

*Barry v. St. Paul Fire & Marine Insurance Co.*,
  555 F.2d 3 (1st Cir. 1977)......................................................................................10

*Bendaoud v. Hodgson*,
  578 F. Supp. 2d 257 (D. Mass. 2008) ...................................................................10

*Blum v. Yaretsky*,
  457 U.S. 991 (1982).................................................................................................9

*Britt v. McKenney*,
  529 F.2d 44 (1st Cir. 1976)....................................................................................10

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust Inc.*,
  703 F. Supp. 2d 253 (E.D.N.Y. 2010) ..................................................................12

*Fishman Haygood Phelps Walmsley Willis & Swanson LLP v. State Street Corp.*,
  No. 1:09-10533-PBS, 2010 WL 1223777 (D. Mass. Mar. 25, 2010)......................3

*Forsythe v. Sun Life Fin., Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006) ...................................................................12

*Hoffman v. USB-AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008)...................................................................12

*In re AIG Advisor Group Sec. Litig.*,
  No. 06 Civ. 1625, 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007)..........................12

*In re Boston Scientific Corp. ERISA Litig.*,
  254 F.R.D. 24 (D. Mass. 2008).......................................................................10, 13

*In re Columbia Entities Litig.*,
  No. 04-11704-REK, 2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) .....11

*In re Eaton Vance Corp. Sec. Litig.*,
  219 F.R.D. 38 (D. Mass. 2003)..............................................................................12

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  718 F. Supp. 2d 495 (S.D.N.Y. 2010) ...................................................................13

*In re Lehman Brothers Sec. & ERISA Litig.*,
  684 F. Supp. 2d 485 (S.D.N.Y. 2010)......................................................................12, 13

*In re Salomon Smith Barney Mutual Fund Fees Litig.*,
  441 F. Supp. 2d 579 (S.D.N.Y. 2006)..........................................................................12

*In re Salomon Smith Barney Transfer Agent Litig.*,
  No. 05 Civ 7583 (WHP), 2011 WL 350289 (S.D.N.Y. Jan. 25, 2011) .................................12

*Lewis v. Casey*,
  518 U.S. 343 (1996)...................................................................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................................8

*Maine State Retirement System v. Countrywide Fin. Corp.*,
  722 F. Supp. 2d 1157 (C.D. Cal. 2010) ......................................................................13

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08 Civ 8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) .........................................12

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
  720 F. Supp. 2d 254 (S.D.N.Y. 2010)......................................................................12, 13

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  632 F.3d 762 (1st Cir. 2011) ..............................................................................10, 11, 13

*Raines v. Byrd*,
  521 U.S. 811 (1997)...................................................................................................8

*Ramirez v. Ramos*,
  438 F.3d 92 (1st Cir. 2006).........................................................................................8

*Simon v. Eastern Kentucky Welfare Rights Organization*,
  426 U.S. 26 (1976)....................................................................................................8

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005) ........................................................................12

*Tropigas de P.R., Inc. v. Certain Underwriters at Lloyds of London*,
  637 F.3d 53 (1st Cir. 2011).........................................................................................7

*United States v. Hays*,
  515 U.S. 737 (1995)...................................................................................................8

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982)........................................................................................................8

*Warth v. Seldin*,
   422 U.S. 490 (1975)........................................................................................................8

## STATUTES & RULES

28 U.S.C. § 2072(b) ............................................................................................................11

29 U.S.C. § 1001 ..................................................................................................................2

Fed. R. Civ. P. 56 ..................................................................................................................1

Fed. R. Civ. P. 56(a) ............................................................................................................8

Fed. R. Civ. P. 82 ................................................................................................................11

Defendants State Street Corporation and State Street Bank and Trust Company (together with its State Street Global Advisors division, "State Street") respectfully submit this memorandum of law in support of their motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment with respect to collective trust funds that Plaintiff did not purchase.  Plaintiff Glass Dimensions, Inc., the administrator of the Glass Dimensions, Inc. Profit Sharing Plan and Trust ("Glass Dimensions Plan" or "Plan"), lacks Article III standing to assert claims challenging the reasonableness of State Street's compensation for providing securities lending services to funds that the Glass Dimensions Plan did not own.

## PRELIMINARY STATEMENT

This is a putative class action that covers the period between April 9, 2004 and April 8, 2010.  Plaintiff has brought the case on behalf of hundreds of pension plans, with tens of thousands of beneficiaries, and which invested in more than 260 State Street lending funds.  The problem for Plaintiff is that during this period it owned only three of those funds.  Each lending fund is a separate legal entity and governed by a unique fund declaration.  Each lending fund is separately held, managed, administered and distributed.  Each lending fund offers a unique investment strategy.  The demand for the securities in each fund varies, and for this reason the percentage of each fund's securities on loan also varies.  No two funds have on loan the exact same securities in the exact same percentages.  Each lending fund issues separate audited financial statements.  Plaintiff paid no compensation to any of the lending funds in which it did not invest.

Under Article III and controlling authority in the United States Court of Appeals for the First Circuit, Plaintiff must own the fund that is the subject of the litigation.  Without an ownership interest in a fund, Plaintiff has no stake in establishing that State Street allegedly received unreasonable or excessive compensation for providing securities lending services to that

fund.  During the putative class period, State Street offered more than 260 collective trust funds

that lent their assets in order to provide incremental income to tax exempt retirement plans that

invested in those funds.  Plaintiff invested in only three of those funds.  Plaintiff did not pay

State Street for providing securities lending services to funds it did not purchase and it lacks

standing under Article III to challenge whether State Street's compensation for those services

was unreasonable.

## STATEMENT OF UNDISPUTED FACTS

### A.    The Parties

Plaintiff Glass Dimensions, Inc. is the administrator of the Glass Dimensions Plan, an

ERISA[1/] defined contribution plan.  Defendants' Rule 56.1 Statement, dated June 15, 2011

("Statement") at ¶ 1.  The Glass Dimensions Plan invested in three State Street collective

investment funds that engage in a practice known as securities lending (also known as "lending

funds").  Statement at ¶ 2.  These funds are the Active U.S. Small Cap Securities Lending Fund,

the Daily International Alpha Securities Lending Fund, and the Passive Bond Market Index

Securities Lending Fund.[2/]  Statement at ¶¶ 2-3.  Although Plaintiff did not invest in any other

lending fund offered by State Street, Plaintiff purports to bring this action on behalf of a class of

ERISA plans that invested in any State Street lending fund between April 9, 2004 and the date

Plaintiff filed this action on April 8, 2010.  Statement at ¶¶ 3-5.

Plaintiff has named three defendants in this lawsuit:  State Street Corporation ("SSC"),

State Street Bank and Trust Company ("SSBT"), and State Street Global Advisors ("SSgA"), a

division of SSBT.  Statement at ¶ 6.  SSBT is a Massachusetts trust company.  Statement at ¶ 7.

---

[1/] Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

[2/] Although the Plan invested in the same three lending funds for the period covered by this action, the names of those funds changed over time.

SSBT manages a securities lending program for State Street clients, including for the three lending funds that the Glass Dimensions Plan offered to its participants. Statement at ¶ 8.[3]

## B.      The SSBT Securities Lending Program

SSBT provides securities lending services for investors that seek incremental returns on their investment. Statement at ¶ 10. Lending program participants appoint SSBT to lend their securities to third party borrowers. Statement at ¶ 11. These borrowers post collateral to secure the return of securities on loan (generally 102% or 105% of the market value of the securities loaned). Statement at ¶ 12. State Street invests the collateral in collateral reinvestment funds, also known as collateral pools. Statement at ¶ 13. The actual percentage of a lending customer's securities that are out on loan fluctuates on a daily basis, and varies across asset classes depending on borrowers' demand for particular securities. Statement at ¶ 14. Program participants compensate SSBT for acting as lending agent by allowing SSBT to retain a portion of the income generated by the collateral pools. Statement at ¶ 15. The program is described in the decision dismissing *Fishman Haygood Phelps Walmsley Willis & Swanson LLP v. State Street Corporation*, No. 1:09-10533-PBS, 2010 WL 1223777 (D. Mass. Mar. 25, 2010), another securities lending action brought by Plaintiff's counsel in the instant litigation.[4]

## C.      The SSgA Lending Funds

During the period covered by this action, State Street offered to tax exempt retirement plans at least 260 unique funds that participated in the SSBT lending program. Statement at ¶ 16. The lending funds paid State Street no more than fifty percent of the net income generated on their collateral as compensation for securities lending services. Statement at ¶ 17. In an

---

[3] SSC is a holding company and the corporate parent of SSBT. Statement at ¶ 9. It is not alleged to have engaged in any conduct at issue in this case, or to owe any fiduciary obligations to the Glass Dimensions Plan. Statement at ¶ 9.

[4] The district court dismissed the *Fishman* action because the named plaintiff lacked Article III standing to litigate the claim. *Id.* at *4-*8.

average year, State Street offered between 155 and 214 unique lending funds to tax exempt

retirement plans.  Statement at ¶¶ 18-24.  The number of lending funds offered by State Street

varied from year to year because State Street continuously reassessed its fund lineup, introducing

new funds to its clients and also removing funds from distribution.  Statement at ¶ 25.[5/]

Each lending fund is a separate legal entity and governed by a unique fund declaration.

Statement at ¶ 27.  Each lending fund is separately held, managed, administered and distributed.

Statement at ¶ 28.  Each lending fund issues separate audited financial statements.  Statement at

¶ 54.  Obligations of one lending fund do not run to other lending funds.  Statement at ¶ 29.  As

set forth in the governing declaration of trust, "[e]very note, bond, contract, instrument,

certificate, or undertaking and every other act or thing whatsoever executed or done by or on

behalf of any Fund shall be conclusively deemed to have been executed or done only by or for

such Fund."  Statement at ¶ 30.  Persons extending credit to a lending fund may look only to the

assets of that lending fund for payment.  Statement at ¶ 31.  Department of Labor regulations

require each lending fund to file a unique Form 5500 (Annual Return/Report of Employee

Benefit Plan).  Statement at ¶ 32.  The Form 5500 includes information regarding the fund, its

participants, its assets and liabilities, and its income and expenses.  Statement at ¶ 33.

Each lending fund offers a unique investment strategy.  Statement at ¶ 34.  This is true for

the three lending funds in the Glass Dimensions Plan:  the Active U.S. Small Cap Securities

Lending Fund, the Daily International Alpha Securities Lending Fund, and the Passive Bond

Market Index Securities Lending Fund.  The Active U.S. Small Cap Securities Lending Fund, for

example, seeks to provide "a total investment return in excess of the performance of the Russell

2000 Index."  Statement at ¶ 35.  To meet this objective, the manager invests in small cap equity

---

[5/] Due to changes in the funds offered to investors, the total number of unique lending funds offered
exceeds the number of unique lending funds offered annually.  Statement at ¶ 26.

securities that are included in the Russell 2000 Index.  Statement at ¶ 36.  The Daily International

Alpha Securities Lending Fund, on the other hand, seeks to provide "a total investment return in

excess of the performance of the MSCI EAFE Index."[6/]  Statement at ¶ 37.  The manager invests

in international equity securities that are included in the MSCI EAFE Index.  Statement at ¶ 38.

Last, the Passive Bond Market Index Securities Lending Fund seeks "an investment return that

approximates, as closely as practicable, before expenses, the performance of the Barclays Capital

U.S. Aggregate Bond Index."  Statement at ¶ 39.  In an effort to meet the objective of the Passive

Bond Market Index Fund, State Street invests in investment grade bonds and other debt

instruments traded in the United States.  Statement at ¶ 40.

        Each of the more than 257 lending funds that the Glass Dimensions Plan did not purchase

pursues different investment objectives than the three funds in the Glass Dimensions Plan.  For

example, the SSgA U.S. Treasury Inflation Protected Securities (TIPS) Index Securities Lending

Fund ("TIPS Fund"), which is not included in the Plan, seeks "an investment return that

approximates as closely as practicable, before expenses, the performance of the Barclays Capital

U.S. Treasury Inflation Protected Securities (TIPS) Index."  Statement at ¶ 41.  To meet this

objective, the manager invests in securities comprising the U.S. Treasury Inflation Protected

Securities (TIPS) Index.  Statement at ¶ 42.  The SSgA S&P 500 Flagship Securities Lending

Fund, which also is not included in the Plan, seeks "an investment return that approximates as

closely as practicable, before expenses, the performance of the S&P 500," and invests in

securities comprising the S&P 500 Index.  Statement at ¶¶ 43-44.

        The demand for securities by those who borrow from the lending funds varies across

asset classes.  For this reason, the percentage of securities on loan, and actual securities on loan,

---

[6/] The MSCI EAFE Index is a benchmark for international equity performance and is comprised of
developed markets in Europe, Australasia and the Far East.

varies among the lending funds.  Statement at ¶ 45.  In 2009, for example, the year immediately

preceding the filing of this action, the percentage of securities on loan for the three lending funds

in the Glass Dimensions Plan averaged 34% for the Active U.S. Small Cap fund, 13% for the

Daily International Alpha fund, and 44% for the Passive Bond Market Index fund.  Statement at

¶ 46.  The TIPS Fund, by contrast, had 92% of its securities on loan for the same period.

Statement at ¶ 47.  The S&P 500 Flagship Fund had on average 12% of its securities on loan.

Statement at ¶ 48.  For the period 2005 through 2010, the percentage of securities on loan for the

three lending funds in the Glass Dimensions Plan averaged 50% for the Active U.S. Small Cap

fund, 14% for the Daily International Alpha fund, and 37% for the Passive Bond Market Index

fund.  Statement at ¶ 49.  The TIPS Fund had on average 95% of its assets on loan during the

same period; the S&P 500 Flagship Fund had on average 6% of its securities on loan.  Statement

at ¶¶ 50-51.  Thus, the extent of the services that State Street provides to each lending fund

varies.  Statement at ¶ 52.

      Each lending fund issues separate audited financial statements reflecting the performance

of its assets, less the individual liabilities of the fund.  Statement at ¶ 54.  For example, the

financial statements for the SSgA U.S. Active Small Cap Securities Lending Fund, dated

December 31, 2009, list total assets of approximately $69.6 million, total liabilities of

approximately $20.2 million, and securities lending income of approximately $86,000.

Statement at ¶ 55.  The financial statements for the SSgA U.S. Aggregate Bond Index Securities

Lending Fund, dated December 31, 2009, list total assets of approximately $5.3 billion, total

liabilities of $2,124, and securities lending income of approximately $18.2 million.  Statement at

¶ 56.

**D.     The Claims**

This case challenges the reasonableness of compensation that SSBT received as lending agent for more than 260 lending funds.  Plaintiff contends that SSBT provides securities lending services to the lending funds on less favorable terms than it does to other institutional investors.  Although the extent of participation varies among the lending funds, the gravamen of this action is that each lending fund paid an excessive amount for the services that SSBT provided to the respective lending fund.  Count I alleges that Defendants breached their duties of prudence and loyalty, in violation of ERISA §404(a), by receiving "unreasonable compensation" for the provision of securities lending services to the lending funds.  Statement at ¶ 57.  Count II alleges that Defendants engaged in self-dealing transactions.  Statement at ¶ 58.  The Glass Dimensions Plan did not own more than 257 of the unique lending funds that are the subject of this litigation, and never paid any compensation to State Street for the securities lending services that State Street provided to those funds.  Statement at ¶¶ 2-4.

## ARGUMENT

## I.

## THE GLASS DIMENSIONS PLAN LACKS STANDING TO
## ASSERT CLAIMS BASED UPON FUNDS THAT THE PLAN DID NOT OWN

Summary judgment is appropriate where there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyds of London*, 637 F.3d 53, 56 (1st Cir. 2011).  A fact is "material" if "its existence or nonexistence has the potential to change the outcome of the suit."  *Id.*  Where the nonmovant bears the burden of proof on the dispositive issue, it must point to "competent evidence" and "specific facts" to stave off summary judgment.  *Id.*  This motion is directed to standing and Plaintiff bears the burden of proof with respect to its standing under Article III to

litigate this action in federal court.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ramirez v. Ramos*, 438 F.3d 92, 97 (1st Cir. 2006).  "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

### A.    Article III Requires that Plaintiff Must Suffer Injury-in-Fact Traceable to the Alleged Wrongdoing

It is a "bedrock requirement" of Article III that federal courts restrict the exercise of their jurisdiction to actual cases and controversies.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  The standing requirement ensures that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (citation and quotation omitted).  It also ensures that federal courts will not expend judicial resources on complex matters without "'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 n.16 (1976) (*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The Supreme Court has repeatedly emphasized that Article III standing is a "threshold question in every federal case."  *Warth*, 422 U.S. at 498; *see also Simon*, 426 U.S. at 37; *United States v. Hays*, 515 U.S. 737, 742 (1995) (standing is "perhaps the most important" of jurisdictional doctrines) (citation omitted).

To establish Article III standing, a plaintiff must show an injury to himself that is likely to be redressed by a favorable decision.  *Warth*, 422 U.S. at 498-99.  "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation."  *Simon*, 426 U.S. at 38; *see Lujan*, 504 U.S. at 560-61; *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

Plaintiff must demonstrate an "injury-in-fact" with respect to each asserted claim. Standing to one claim does not confer standing to raise other claims, regardless of whether the other claims are closely related.  As the Supreme Court stated: "standing is not dispensed in gross."  *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review.  That is of course not the law.") (emphasis in original); *see Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

**B.      Article III Requires that Plaintiff Have Standing to Assert All of the Claims in the Case In Order to Seek Relief on Behalf of a Class**

These bedrock principles of Article III standing do not change in class actions.  As the Supreme Court has held:  "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis*, 518 U.S. at 357 (citations omitted) (illiterate prisoner lacked standing to bring claims on behalf of prisoners suffering from other impediments).  The claims advanced on behalf of a class must be calculated to redress the named plaintiff's injury, not similar (or different) injuries suffered by the class members. *See Blum*, 457 U.S. at 997 n.11, 1001 (nursing home residents lacked standing to challenge decisions to transfer residents to "higher levels of care" because nothing suggested that "any of the *individual respondents*" was so transferred or threatened with transfer) (emphasis supplied).

-9-

The United States Court of Appeals for the First Circuit has long recognized that, if named plaintiffs lack standing to claim particular relief, "they may not seek such relief on behalf of a class." *Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976) (citation omitted). Courts in this district thus require that the named "plaintiff, not another . . . must suffer the injury. It is irrelevant that he is a member of a group, some other members of which may have suffered an injury." *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 263 (D. Mass. 2008); *see In re Boston Scientific Corp. ERISA Litig.*, 254 F.R.D. 24, 32 (D. Mass. 2008) ("Merely because Plaintiffs claim that they are suing on behalf of the respective ERISA plans does not change the fact that they must establish individual standing") (Tauro, J.) (citations omitted).

### C.   The Glass Dimensions Plan Has Not Been Injured From Compensation Paid to State Street by Lending Funds That the Plan Did Not Purchase

In cases relating to financial instruments, the First Circuit strictly interprets "personalized injury" as requiring that the named plaintiff purchase the actual instrument that is the subject of the litigation. In *Barry v. St. Paul Fire & Marine Ins. Co.*, 555 F.2d 3 (1st Cir. 1977), *aff'd*, 438 U.S. 531 (1978), for example, the First Circuit affirmed dismissal of a fraud action against two insurance companies. The named plaintiffs sought to represent a class in an action against four insurance companies, even though the plaintiffs had contact with only two of them. *Id.* at 13. The First Circuit affirmed the dismissal of claims that did not flow from the plaintiffs' contractual relationship with just two of the companies. *Id.* As the First Circuit later observed, although "[e]ach of the insurance companies had almost certainly sold such policies to *some* members of the class," this Circuit requires privity between the parties and "none of the *named plaintiffs* ever bought that type of policy from two of the companies." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 (1st Cir. 2011) (emphasis in original).

In a later decision, which is now the controlling decision in this circuit, the First Circuit extended *Barry* to require that the named plaintiff own the trust fund that is the subject of the litigation. *Plumbers' Union, id.* at 768-71. In *Plumbers' Union*, the named plaintiffs filed Securities Act claims relating to eight different mortgage-backed trusts, only two of which had been purchased by the plaintiffs. The plaintiffs urged the court to find standing with respect to all eight trusts because Nomura Asset Acceptance Corporation was a common defendant with respect to all eight of the mortgage-backed trusts, having organized the creation of the trusts, acquired mortgages from various banks, and transferred them to the eight trusts. The First Circuit rejected these arguments and affirmed dismissal as to six trusts "whose certificates were purchased by no named plaintiff . . . . [T]he named plaintiffs have no stake in establishing liability as to misconduct involving the sales of those certificates." *Id.* at 766, 771.

These decisions are consistent with the stated limitations of the Rules of Civil Procedure. If a plaintiff could acquire Article III standing he did not otherwise have by seeking to represent a class under Rule 23, it would mean that a Rule of Civil Procedure could trump Article III and expand the jurisdiction of the district courts. That is contrary to the Rules themselves, and the Rules Enabling Act. *See* Fed. R. Civ. P. 82 (Rules "do not extend or limit the jurisdiction of the United States district courts"); 28 U.S.C. § 2072(b) (Rules may not "abridge, enlarge or modify any substantive right").

The First Circuit's decision is in accord with the weight of authority dismissing claims for lack of standing where named plaintiffs did not personally purchase the same security as the absent class members. *See, e.g., In re Columbia Entities Litig.*, No. 04-11704-REK, 2005 U.S. Dist. LEXIS 33439, at *29 (D. Mass. Nov. 30, 2005) ("Courts in this circuit have held that ownership of shares of a limited number of defendant mutual funds is *not* sufficient to confer

standing against all funds, regardless of the similarity of the alleged wrongful conduct")
(emphasis in original); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2011 WL
350289, at *6 (S.D.N.Y. Jan. 25, 2011) (plaintiffs "lack standing for claims relating to funds in
which they did not personally invest"); *Hoffman v. USB-AG*, 591 F. Supp. 2d 522, 530-31
(S.D.N.Y. 2008) (same).

These Article III standing decisions do not turn on the underlying federal statute that is
the subject of the litigation. For this reason, without regard to whether the litigant is pursuing
claims under the Securities Act of 1933,[7] the Securities Exchange Act of 1934,[8] or the
Investment Company Act of 1940,[9] the majority of the federal courts now require that the named
plaintiff own the fund that is the subject of the litigation. Indeed, in recent litigation regarding
mortgage backed securities, "[e]very court to address the issue in a [mortgage-backed security]

---

[7] *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40-41 (D. Mass. 2003), *aff'd*, 220 F.R.D. 162 (D. Mass. 2004); *see In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010) (dismissing claims relating to 85 of 94 securities offerings because "no named plaintiff has alleged that he or she purchased Certificates in any of the other eighty-five offerings"); *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781, 2010 WL 1257528, at *4 (S.D.N.Y. Mar. 31, 2010) (dismissing claims relating to offerings that named plaintiffs did not purchase); *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, 720 F. Supp. 2d 254, 265-66 (S.D.N.Y. 2010) (same); *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust Inc.*, No. CV 08-1418, 2010 WL 1371417, at *7 (E.D.N.Y. Apr. 6, 2010) (dismissing Securities Act claims relating to 16 of 18 trusts in which the plaintiff did not invest).

[8] *In re Smith Barney Transfer Agent Litig.*, 2011 WL 350289, at *6 (dismissing claims relating to 102 of the 105 mutual funds that the named plaintiff did not own); *Hoffman*, 591 F. Supp. 2d at 530-31 (dismissing Section 10(b) claims for "the sixty-eight funds of which Plaintiffs own no shares" because plaintiffs cannot "claim to be personally injured by violations" relating to funds in which they had not invested); *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 605-07 (S.D.N.Y. 2006) (dismissing claims relating to 68 mutual funds in which plaintiffs did not invest); *In re AIG Advisor Group Sec. Litig.*, No. 06 CV 1625, 2007 WL 1213395, at *3-*6 (E.D.N.Y. Apr. 25, 2007) (in dismissing claims relating to 3 of 19 mutual funds that plaintiff did not own, the court stated, "In this securities fraud case, the named plaintiffs can allege no injury from the purchase or sale of funds they never invested in. … They therefore have no standing to ask me to remedy injuries related to those funds."), *aff'd on other grounds*, 309 F. App'x 495 (2d Cir. 2009).

[9] *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119-120 (D. Mass. 2006) (in dismissing Investment Company Act claims relating to 60 of 62 mutual funds that the named plaintiff did not own, the court reasoned, "plaintiffs may not rely on the rules-based class action procedural device as a method to bootstrap themselves into standing they lack merely because in theory some member of the putative class, if it were to be certified, might have a claim because they owned shares in the other MFS Funds at the time the suit was brought. … Plaintiffs are only permitted to assert a claim on behalf of the two MFS Funds in which they owned shares"); *Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005) (dismissing Investment Company Act claims relating to 32 of 33 funds that the named plaintiff did not own); *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d at 604-08 (dismissing Investment Company Act claims relating to 68 of 88 mutual funds in which the plaintiffs did not invest).

class action has concluded that a plaintiff lacks standing under both Article III of the U.S.

Constitution and under Sections 11 and 12(a)(2) of the 1933 Act to represent the interests of

investors in [mortgage-backed securities] offerings in which the plaintiffs did not themselves

buy." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal.

2010).[10/]  Although defendants have identified no decision discussing the application of Article

III to actions claiming liability with respect to funds that a retirement plan did not purchase,

numerous courts have recognized that Article III applies to ERISA claims.  *See In re Boston*

*Scientific Corp. ERISA Litig.*, 254 F.R.D. at 32 (dismissing ERISA class action because named

plaintiffs suffered no harm related to the subject investment and therefore did not have individual

standing) (Tauro, J.).

　　As in *Plumbers' Union*, there is insufficient identity of issues or alignment of incentives

to permit the Glass Dimensions Plan to pursue claims on behalf of investors in more than 257

lending funds in which it did not invest.  Plaintiff seeks to challenge State Street's compensation

for lending securities and investing the cash collateral for more than 260 different lending funds,

each of which is separately organized and managed, has its own investors, and is governed by a

unique fund declaration.  Statement at ¶¶ 27-32.  The lending funds do not own identical

securities.  Statement at ¶¶ 34-44.  The small cap, international and corporate bond funds that the

Glass Dimensions Plan purchased do not own the same securities as the lending funds that

Plaintiff did not purchase.  Statement at ¶¶ 34-44.  The TIPS Fund, for example, owns no small

cap, international or corporate bond securities.  Statement at ¶¶ 41-42.  Moreover, securities on

loan to borrowers are traceable to particular lending funds, and at percentages that historically

have varied by fund.  Statement at ¶¶ 45-51.  The proportion of securities on loan for the lending

---

[10/] *See New Jersey Carpenters Vacation Fund*, 720 F. Supp. 2d at 264-66; *In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 501 (S.D.N.Y. 2010); *City of Ann Arbor*, 703 F. Supp. 2d at 260-61; *In re Lehman Bros.*, 684 F. Supp. 2d at 490.

funds that Plaintiff purchased, for example, averaged 34% (Active U.S. Small Cap fund), 13%

(Daily International Alpha fund), and 29% (Passive Bond Market Index fund) in 2009.

Statement at ¶ 46.  The TIPS Fund, by contrast, a fund which Plaintiff did not own, loaned 92%

of its securities in 2009.  Statement at ¶ 47.  The return to investors also varied by lending fund.

Statement at ¶ 53.

Notwithstanding these distinctions, at core the Glass Dimensions Plan never invested in

more than 257 of the funds encompassed by the purported class, and never paid any

compensation to State Street for the securities lending services performed on behalf of those

funds.  The Glass Dimensions Plan, therefore, does not have standing to pursue claims regarding

those funds, and the claims should be dismissed with respect to those funds.

## CONCLUSION

There is no genuine issue that the Glass Dimensions Plan purchased only three of the

more than 260 lending funds that are the subject of this litigation.  The Court should grant

Defendants' motion for summary judgment with respect to the remaining funds on the grounds

that Plaintiff lacks Article III standing to pursue these claims.

Dated:   June 17, 2011

Respectfully submitted,

 _/s/ Lori A. Martin_____
Lori A. Martin (*pro hac vice*)
Brad E. Konstandt (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
lori.martin@wilmerhale.com

Jeffrey B. Rudman (BBO #433380)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
jeffrey.rudman@wilmerhale.com

*Counsel for Defendants State Street
Corporation and State Street Bank & Trust
Company (including its division State Street
Global Advisors)*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2011, I caused a copy of this Document to be served electronically, via the  electronic filing system, on the registered participants as identified on the Notice of Electronic Filing (NEF) and by first-class mail on those indicated as non-registered participants.

/s/ Brad E. Konstandt
Brad E. Konstandt