# EXHIBIT E

Page 1

1         IN THE UNITED STATES DISTRICT COURT
2              DISTRICT OF MASSACHUSETTS
3
4    _____
5    GLASS DIMENSIONS, INC., ON        )
     BEHALF OF THE GLASS               )Civil Action No.
6    DIMENSIONS, INC. PROFIT           )1:10-CV-10588(JLT)
     SHARE PLAN AND TRUST, AND         )
7    ALL OTHERS SIMILARLY              )
     SITUATED,                         )
8              Plaintiffs,             )
                                       )
9              vs.                     )
                                       )
10   STATE STREET CORPORATION,         )
     STATE STREET BANK & TRUST         )
11   CO., AND STATE STREET GLOBAL      )
     ADVISORS,                         )
12             Defendants.             )
                                       )
13   _____)
14
15              VIDEOTAPED DEPOSITION of DARRELL
16   R. PERKINS, called as a witness by and on behalf of
17   the Defendants, pursuant to the applicable
18   provisions of the Federal Rules of Civil Procedure,
19   before P. Jodi Ohnemus, RPR, RMR, CRR, CA-CSR
20   #13192, NH-CSR #91, MA-CSR #12393, and Notary
21   Public, within and for the Commonwealth of
22   Massachusetts, at the offices of WilmerHale, LLP,
23   60 State Street, Boston, Massachusetts, on
24   Wednesday, 15 June, 2011, commencing at 10:07 a.m.

1  between your mom, your dad, and you, you were the
2  most financially savvy member of the family?
3      A.   Absolutely.  But I also was not involved
4  in the plan at all prior to them not being able to
5  take out their funds, as far as I can remember
6  so...
7      Q.   So when -- whenever they couldn't take out
8  their funds -- whenever that was -- that's when you
9  became involved with the plan.
10     A.   That's when I started -- yes.
11     Q.   That's when you first had a role with the
12  plan.
13     A.   Yeah.  As far as I can remember.
14     Q.   As far as you can remember.
15          Now, sir, do you currently understand
16  Glass Dimensions is suing State Street?
17     A.   Yes.
18     Q.   Can you tell me what grievance Glass
19  Dimensions is currently suing State Street over?
20     A.   Over the exorbitant fees that were charged
21  by State Street on the securities lending.
22     Q.   Okay.  To whom were those fees charged?
23     A.   To Glass Dimensions profit sharing plan.
24     Q.   Were they charged to anybody else?

Page 33

1  A. I'm sure they were, yes, plenty of people.
2  Q. How many?
3  A. I have no idea.
4  Q. Can you give me an approximation.
5  A. Many. Thousands, I guess. I don't know.
6  Depends on how many clients they had.
7  Q. All right. Are you talking about clients
8  who invested in any securities lending fund or
9  every securities lending fund?
10 A. I'm talking about the same clients who
11 were in the same lending fund that Glass Dimensions
12 profit sharing plan was in.
13 Q. Fair enough. Can you tell me which
14 lending funds the Glass Dimensions profit sharing
15 plan was in?
16 A. Which lending funds?
17 Q. Which security lending funds.
18 A. The names of them?
19 Q. Yes.
20 A. I can't --
21     MR. PORTER: Do you mean the names in the
22 plan -- the name of the funds in the plan, or the
23 external securities lending collateral pools?
24     MR. RUDMAN: Let's try it this way.

```
                                                    Page 96
 1      Q.   You have no idea, right?
 2      A.   No idea.
 3      Q.   And you have no idea what it would cost to
 4  distribute -- to whatever living or pension
 5  beneficiaries there are -- these funds if you ever
 6  recover them?
 7      A.   I don't.
 8      Q.   Let's go, if you please, sir, to the front
 9  page of your complaint.
10           You see the words, "Glass Dimensions,
11  Inc., on behalf of the Glass Dimensions, Inc.
12  Profit Sharing Plan and Trust, and all other
13  similarly situated."
14           Do you see those words?
15      A.   Yes.
16      Q.   Who are the other similarly situated?
17      A.   Anyone else who has been charged the
18  exorbitant fees, the same percentage we were
19  charged, which is too high.
20      Q.   All right.  So anyone else, no matter
21  when, and no matter what they knew about the fees
22  they were being charged is similarly situated to
23  you.
24           MR. PORTER:  Objection.  Calls for a legal
```

1 conclusion. You can answer.
2     A.   I don't think it matters when. If
3 someone's being screwed, someone's being screwed;
4 and it's not right.
5     Q.   Okay. So let's try this: Suppose someone
6 knew -- starting in 19 -- in 2003 -- they were told
7 exactly what State Street was charging them for
8 their funds; they can just wait until tomorrow --
9 as far as you're concerned -- to recover?
10     MR. PORTER: Objection. Calls for a legal
11 conclusion. You can answer.
12     A.   I don't think it matters -- the time. If
13 the fees are too high -- if everyone else is being
14 charged one thing and everyone at State Street is
15 being charged another, it's not fair. It's not
16 right.
17     Q.   Okay. Do you know that everyone who was
18 invested in State Street securities lending funds
19 was being charged the same thing?
20     A.   I believe there were differences.
21     Q.   Okay. Do you know the magnitude of the
22 differences?
23     A.   I don't know exact numbers and figures,
24 no.

```
 1   that was invested in any State Street securities
 2   lending fund.
 3        A.   I would like --
 4             MR. PORTER:  Is that a statement or a
 5   question?
 6             MR. RUDMAN:  That's a question.
 7        A.   I would like to see everyone who paid
 8   exorbitant fees to State Street to be made whole.
 9        Q.   Now, sir, does the Glass Dimensions
10   pension plan have an engagement letter with Mr.
11   Porter's law firm for this case?
12        A.   What's an engagement letter?
13        Q.   A letter that says, I, Mr. Porter, will
14   represent you, and I will charge you thus and such.
15             MR. PORTER:  Attorney/client agreement.
16        A.   Yes.  Attorney/client agreement, yes.
17        Q.   You do.  When was that executed?
18        A.   A long time ago.
19        Q.   What is your fee arrangement with Mr.
20   Porter's firm?
21             MR. PORTER:  How much are we going to get
22   paid?  Do you know?
23             THE WITNESS:  I don't know.
24        Q.   No idea?
```

Page 143

1   your records?
2       A.   Yes.
3       Q.   Do you recall Mr. Rudman asking some
4   questions about the role of a class representative
5   and what you have done to work with or supervise
6   the lawyers in the case?
7       A.   Yeah. I didn't understand those
8   questions.
9       Q.   Okay. What -- and you -- one -- you
10  testified that one of your roles was to tell the
11  truth.
12          What do you see -- explain to me -- as
13  your role -- or Glass Dimensions' role -- as a --
14  as a representative of this group of people on --
15  on behalf of whom you're suing?
16      MR. RUDMAN: Object to the form.
17      Q.   You can answer. Go ahead.
18      A.   Sorry. Can you repeat the question.
19      Q.   What do you see is your role as a -- Glass
20  Dimensions' role as a representative of a class of
21  similarly-situated persons?
22      A.   To get the fees back; to -- to make things
23  whole; to make it right.
24      Q.   What about sitting for a deposition; is

Page 144

1  that part of your role?
2      A.  Oh, yeah, cooperating in any way I can to
3  make things right.
4      Q.  And have I ever told -- have I ever
5  explained to you what kinds of decisions that you,
6  as the client, are supposed to make?
7      A.  Yes.
8      Q.  And what kind of decisions are those?
9      A.  How much to settle for, what's -- off the
10 top of my head, I can't think exactly what --
11     Q.  What about --
12         MR. RUDMAN:  Excuse me.  Excuse me.  Could
13 I just have that answer read back.
14         MR. PORTER:  Sure.  Go ahead.
15         (Answer read back.)
16         MR. RUDMAN:  Thank you.
17     A.  What we were looking -- I mean, I -- go
18 ahead.  Sorry.
19     Q.  That's all right.  So whether or not to
20 settle the case, is that something I indicated?
21     A.  Oh, definitely.
22     Q.  And --
23     A.  Meaning that would be our decision?
24     Q.  Yes.

1           MR. PORTER:  Do you remember one way or
2    the other?
3           MR. RUDMAN:  You get to do redirect.
4       Q.   Do you have any memory -- strike that.
5           As you sit here now, can you name for me
6    one other lawyer who's working on this case with
7    Mr. Porter?
8       A.   Leona.
9       Q.   Okay.  You met Leona today, right?
10      A.   No.
11      Q.   Yesterday?
12      A.   Yes.
13      Q.   All right.  Before yesterday, you didn't
14   know Leona was working on this case; did you?
15      A.   No.  I knew there were -- I was made aware
16   that there were other attorneys and other firms
17   working on this, but --
18      Q.   What are their names?
19      A.   I don't know.
20      Q.   What's their level of experience?
21      A.   I have no idea.
22      Q.   What are they charging you for their
23   services?
24      A.   Nothing.