IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **Glass Dimensions, Inc. on behalf of the** **Glass Dimensions, Inc. Profit Sharing** **Plan and Trust,** *and all others* *similarly situated,* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO: 1:10-CV-10588 (JLT) |
| v. | ) ) ) | |
| **State Street Corporation, State Street** **Bank and Trust Co., and** **State Street Global Advisors,** | ) ) ) ) | |
| Defendants. | ) ) | |

---

**DECLARATION OF BRAD E. KONSTANDT IN SUPPORT OF**
**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

I, BRAD E. KONSTANDT, hereby declare as follows:

1.      I am a counsel at the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, counsel

for Defendants State Street Corporation ("SSC") and State Street Bank and Trust

Company ("SSBT") (together with its division State Street Global Advisors ("SSgA")

("State Street")), in the above-captioned action.  I submit this Declaration in support of

Defendants' Opposition to Plaintiff's Motion for Class Certification.

2.      Attached as Exhibit A is a true and correct copy of the Transcript of the Deposition of

David Perkins, dated June 17, 2011 ("D. Perkins Tr.").

3.      Attached as Exhibit B is a true and correct copy of the Transcript of the Deposition of

Maureen Perkins, dated June 16, 2011 ("M. Perkins Tr.").

4.    Attached as Exhibit C is a true and correct copy of selected portions of the Transcript of

the Deposition of Darrell R. Perkins, dated June 15, 2011 ("Darrell Perkins Tr.").

**Glass Dimensions, Inc. and The Glass Dimensions Plan**

5.    David and Maureen Perkins testified that they were the principal owners of Glass

Dimensions, Inc., and served as the President and Treasurer, respectively, of the company.

*See* D. Perkins Tr. at 9:16 – 10:6; M. Perkins Tr. at 9:12-13.

6.    Maureen Perkins testified that she and her husband had responsibility for the Glass

Dimensions, Inc. Profit Sharing Plan and Trust ("Glass Dimensions Plan" or "Plan"). *See*

M. Perkins Tr. at 22:7-16.

7.    David and Maureen Perkins testified that the Glass Dimensions Plan did not retain a

professional investment consultant to support its decision to invest in the State Street

collective trust funds or the fees it would pay to State Street. *See* D. Perkins Tr. at 78:19-

21; M. Perkins Tr. at 32:15 – 33:15.

8.    David and Maureen Perkins testified that the Glass Dimensions Plan did not prepare a

Request for Proposal. *See* M. Perkins Tr. at 38:23 – 39:11; D. Perkins Tr. at 75:3-17.

9.    David and Maureen Perkins testified that the Glass Dimensions Plan did not request

information regarding the fees that the Plan paid. *See* M. Perkins Tr. at 53:3 – 54:3; D.

Perkins Tr. at 73:20 – 74:4, 81:8-23.

10.   David and Maureen Perkins testified that the Glass Dimensions Plan did not compare the

fees the Plan paid to State Street with fees charged by State Street's competitors. *See* M.

Perkins Tr. at 30:16-19, 67:8-18, 69:21 – 70:22; D. Perkins Tr. at 75:3-17, 95:3-23.

11.   David and Maureen Perkins testified that the Glass Dimensions Plan did not inquire about fees for supplemental services, such as securities lending fees. *See* M. Perkins Tr. at 35:23 – 36:3, 62:15-21, 69:21 – 70:22; D. Perkins Tr. at 41:22 – 43:2, 89:24 – 90:4.

12.   Maureen Perkins testified: "We didn't really discuss if [the fees were] reasonable. We just accepted the fee." M. Perkins Tr. at 34:13-23.

13.   Maureen Perkins testified that she assumed that the fees charged by State Street were reasonable and industry standard. *See* M. Perkins Tr. at 31:17 – 32:14, 33:11-15.

14.   David and Maureen Perkins testified that they did not specifically request that State Street invest the Plan's assets in a Lending Fund. *See* M. Perkins Tr. at 35:15 – 36:3, 59:11 – 60:5, 62:15 – 62:21; D. Perkins Tr. at 87:22 – 89:1.

15.   David and Maureen Perkins testified that, prior to the initiation of this action, they were not aware that the Plan invested in Lending Funds. *See* D. Perkins Tr. at 87:7 – 89:5, 97:10 – 98:11; M. Perkins Tr. at 59:11 – 60:24, 62:15-21.

16.   David Perkins testified that he did not know that funds could loan their securities for incremental returns, or that the securities lending agent that managed the lending program received compensation for the service. *See* D. Perkins Tr. at 41:22 – 43:2, 89:2 – 90:4.

17.   David Perkins testified that, prior to meeting with counsel, he had never heard the term "securities lending." *See* D. Perkins Tr. at 41:22 – 42:8.

18.   Maureen Perkins testified that she was not familiar with the financial service called securities lending. *See* M. Perkins Tr. at 35:15 – 36:3.

19.   David and Maureen Perkins testified that, prior to their investment of Plan assets, they

had no investment experience, and had never invested in a mutual fund. *See* M. Perkins

Tr. at 5:5-18, 6:23 – 7:3; D. Perkins Tr. at 5:24 – 6:1, 37:9-11.

20.   David and Maureen Perkins testified that they had no understanding that the Plan

invested in funds that loaned their assets for incremental returns until they met with

counsel in late 2009 or early 2010. *See* D. Perkins Tr. at 87:22 – 89:5; M. Perkins Tr. at

59:11 – 60:24, 62:15-21.

21.   Maureen Perkins testified:

> Q:   Okay. So I just want to clarify the period. For all the years that you were a State
> Street client through the Plan, you were unaware that you were participating in a
> securities lending fund, that you had invested in a securities lending fund until the
> end of 2009 or early 2010?
>
> A:   Yes.

M. Perkins Tr. at 62:15-21; *see also id.* at 59:11 – 60:24.

22.   David and Maureen Perkins testified that they were unaware that State Street received

compensation for its service as securities lending agent to the Lending Funds, prior to

meeting with counsel in 2009 or 2010. *See* D. Perkins Tr. at 41:22 – 43:2; M. Perkins Tr.

at 35:23 – 36:3.

23.   David Perkins testified that he did not know that State Street received compensation for

providing securities lending services to the Lending Funds:

> Q:   Okay. So the meeting you had with Mr. Porter [in late 2009 or early 2010], the
> first of the three that you discussed earlier, was the first time you had ever heard
> the term securities lending.
>
> A:   Yes.

Q:     Okay.  Were you aware, prior to that time, that first meeting with Mr. Porter, that
       there are fees associated with securities lending?

A:     I wasn't.

Q:     So getting back to the question I had posed to you earlier, at the meeting with Mr.
       Porter where you discussed potentially amending the Complaint, do you recall
       whether or not fees associated with securities lending were discussed at that
       meeting?

A:     Yes, I believe they were discussed, yes.

Q:     Okay.  And is that meeting the first time you heard about fees related to securities
       lending?

A:     Yes.

Q:     Okay.  So prior to the discussion with Mr. Porter regarding potentially amending
       the Complaint, you had never heard about fees associated with securities lending.

A:     That's correct.

D. Perkins Tr. at 42:4 – 43:2; *see id.* at 95:3-23.

24.   When asked whether an investor that negotiated a 50/50 fee split had been injured,

      Maureen Perkins testified:  "Well, if they agreed to it, how can I say they thought [the

      fees] were too high[?]"  M. Perkins Tr. at 110:22 – 111:11.

25.   Darrell Perkins testified that he was the Chief Financial Officer and Chief Operating

      Officer for Glass Dimensions, Inc.  *See* Darrell Perkins Tr. at 7:4-9.

26.   Darrell Perkins testified that State Street's compensation disclosures were "pretty

      straightforward[,]" and conceded that the disclosures were clear and that the reader of a

      Fund Declaration would know precisely how State Street was being compensated.

      Darrell Perkins Tr. at 123:18 – 124:4, 130:13-24, 132:7-20.

27. Darrell Perkins testified that the Fund Declarations detailed how much State Street received for the provision of securities lending services to the Lending Funds. *See* Darrell Perkins Tr. at 131:16 – 132:20.

28. David and Maureen Perkins testified that they did not know the funds that the Plan purchased, or the investment objectives of those funds. *See* M. Perkins Tr. at 72:2-22, 73:21 – 74:6, 74:20 – 75:10; D. Perkins Tr. at 77:5-20, 85:3 – 86:15 (unaware of the Plan's investments).

29. David and Maureen Perkins testified that they did not request disclosure documents or other materials regarding the funds in which the Plan invested. *See* D. Perkins Tr. at 73:20 – 74:4, 80:18 – 81:7, 83:21 – 84:5, 91:7-14, 92:14 – 93:2; M. Perkins Tr. at 44:24 – 45:4, 64:2-9.

30. David and Maureen Perkins testified that they did not request audited financial statements for any of the funds held by the Plan. *See* M. Perkins Tr. at 46:24 – 49:2, 647:7-9; D. Perkins Tr. at 83:7-20.

31. David and Maureen Perkins testified that they did not make an inquiry about the fees applicable to the Plan's account or investments held by the Plan from the date the Plan engaged State Street in 1997 until it brought this action. *See* M. Perkins Tr. at 41:15-20, 42:7-14, 42:23 – 43:4, 50:1-6, 51:15-18, 52:17-22, 54:1-3, 66:15-22, 69:1-20, 81:5-20; D. Perkins Tr. at 79:22 – 80:1, 91:4-6, 92:3-5.

32. David and Maureen Perkins testified that they did not try to negotiate a different fee for services while the Plan was a State Street client. M. Perkins Tr. at 66:15-22, 69:1-20; D. Perkins Tr. at 78:22 – 79:1.

33.   David Perkins testified:

> Q:   Do you know whether Glass Dimensions has ever sued State Street?
>
> A:   No, I don't believe.
>
> * * * *
>
> Q:   You can answer the question.  To the best of your knowledge, has Glass Dimensions ever sued State Street?
>
> A:   I don't know.  Is this a lawsuit that we're involved in?  Before that, no.

D. Perkins Tr. at 27:8-20 (objection omitted).

34.   Maureen Perkins testified that she did not believe that Glass Dimensions had filed a lawsuit against State Street. *See* M. Perkins Tr. at 92:4-11.

35.   David Perkins testified that he did not know "any specifics" about the allegations in the Amended Complaint. *See* D. Perkins Tr. at 40:20 – 41:11.

36.   David Perkins testified that he did not know whether Glass Dimensions, Inc. seeks to represent investors in other pension plans. *See* D. Perkins Tr. at 99:12-19, 100:11-16.

37.   David Perkins testified that he did not know whether Glass Dimensions, Inc. seeks to represent plans that invested in Lending Funds that were not held by the Glass Dimensions Plan. *See* D. Perkins Tr. at 101:18 – 102:1.

38.   David Perkins testified that he did not know that Glass Dimensions, Inc.'s theory of liability had changed or the reasons why it had amended the Complaint. *See* D. Perkins Tr. at 38:6-24, 40:17-19.  Maureen Perkins testified that she did not know that Glass Dimensions, Inc. originally brought a complaint based upon withdrawal restrictions. *See* M. Perkins Tr. at 95:2-7.

**Investment Management Agreements For Plans That Invested in the Three Lending Funds
Held By the Glass Dimensions Plan During the Period 2004 Through 2010**

39.     I have reviewed the investment management agreements for institutional investors in the three Lending Funds held by the Glass Dimensions Plan during the period 2004 through 2010:  Daily International Alpha Securities Lending Fund, Active U.S. Small Cap Securities Lending Fund, and the Passive Bond Market Index Securities Lending Fund (produced by Defendants at SS-GD 0086790 – 0087590 and 0098965 – 100077).

40.     Based upon my review of the agreements, the investment management fees for institutional investors typically ranged from 0.03 to 0.07% of assets under management in a particular fund (three to seven basis points).  The securities lending fee split for institutional investors in the Passive Bond Market Index Securities Lending Fund ranged between 50% and 85% of the securities lending revenue generated by the Fund's assets on loan.

41.     I have also reviewed the investment management agreements for institutional clients that engaged State Street to provide asset allocation or other investment advisory services and which were invested in the three Lending Funds held by the Glass Dimensions Plan during the period 2004 through 2010 (produced by Defendants at SS-GD 0086790 – 0087590 and 0098965 – 100077).

42.     Based upon my review of the agreements, the fees paid by these clients typically ranged

        from 0.10 to 0.85% of total assets under management (10 to 85 basis points).

        I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       March 19, 2011

                                              Brad E. Konstandt (*pro hac vice*)
                                              WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
                                              399 Park Avenue
                                              New York, NY 10022
                                              Telephone: (212) 230-8800
                                              Facsimile: (212) 230-8888
                                              brad.konstandt@wilmerhale.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, I caused a copy of the **DECLARATION OF BRAD E. KONSTANDT IN SUPPORT OF DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** to be served electronically, via the electronic filing system, on the registered participants as identified on the Notice of Electronic Filing (NEF) and by first-class mail on those indicated as non-registered participants.

Brad E. Konstandt