**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Glass Dimensions, Inc. on behalf of the** ) | |
| **Glass Dimensions, Inc. Profit Sharing** ) | |
| **Plan and Trust,** *and all others* ) | |
| *similarly situated,* ) | |
| ) | **CIVIL ACTION NO: 1:10-CV-10588 (JLT)** |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| **State Street Corporation, State Street** ) | |
| **Bank & Trust Co.,** ) | |
| **and State Street Global Advisors,** ) | |
| ) | |
| Defendants. ) | |

**GOODYEAR'S MOTION TO INTERVENE**

**I.      Introduction**

The Trustees of the Retirees of the Goodyear Tire and Rubber Company Health Care Trust

(the "Trustees") as fiduciaries of the Retires of the Goodyear Tire & Rubber Company Health Care

Trust (the "Goodyear VEBA Plan" or "Plan") respectfully move to intervene as a class

representative plaintiff in the above-captioned action against State Street Corporation, State Street

Bank & Trust Co., and State Street Global Advisors (collectively, "State Street"). The Trustees'

Proposed Complaint is attached as Exhibit 1.

**II.      Facts**

As of December 31, 2010, the Goodyear VEBA Plan held approximately $940 million in

assets.  The Goodyear VEBA Plan Summary Annual Report for the 2010 plan year is available at

http://www.goodyear-veba.com.  The Goodyear VEBA Plan invested its assets with State Street.

State Street is an investment manager of the funds in the Goodyear VEBA Plan. State Street is and

at all relevant times has been a Goodyear VEBA Plan fiduciary, responsible for managing Plan investments prudently and solely in the interests of the Plan and its participants.

The Trustees would allege against State Street facts very similar to those alleged by Glass Dimensions, Inc. ("Glass Dimensions") against State Street.  That is, the Trustees would allege that State Street breached its fiduciary duties to the Goodyear VEBA Plan and engaged in prohibited self-dealing transactions with Plan assets by charging the Plan, (and all similar plans) a securities lending fee in the amount of 50% of securities lending income earned from loaning Plan securities.

Further, like Glass Dimensions, the Trustees, would assert two claims for relief against State Street: (1) State Street failed to prudently and loyally manage the Plan assets as required by ERISA § 404(a), 29 U.S.C. § 1104(a), by entering into contracts with affiliates, purportedly for the benefit of the client employee benefit plans, without due diligence or consideration of unaffiliated vendors, in order to award themselves unreasonable compensation; and (2) State Street engaged in numerous self-dealing and prohibited transactions that are *per se* prohibited by Section 406 of ERISA. 29 U.S.C. § 1106, and cannot satisfy any applicable exemption.  The Goodyear VEBA Plan has suffered significant and realized damages caused by State Street's alleged fiduciary and statutory violations.

The Trustees only recently discovered the claims against State Street.[1]  The Goodyear VEBA Plan Committee meets on a periodic basis, approximately six times per year.  In late 2011 and in 2012, the Trustees reviewed materials relating to the *Glass Dimensions* litigation.  Thereafter, the Trustees discussed those materials with its counsel, and having confirmed significant losses on this score, the Trustees then invited counsel for Glass Dimensions to attend and make a presentation at the formal January 30, 2012, meeting of Goodyear VEBA Plan.  The purpose of the presentation was to enable the Trustees to make a fully informed decision about whether or not to join the *Glass*

---

[1] *See generally* Declaration of Thomas Duzak in Support of The Board of Trustees of the Retirees of the Goodyear Tire and Rubber Company Health Care Trust's Motion to Intervene, ("Duzak Decl.") attached as Exhibit 2.

*Dimensions* litigation as an additional class representative.[2]  Subsequently, the Trustees executed a written retainer agreement whereby they retained the counsel for Glass Dimensions to represent them as a class representative in the *Glass Dimensions* litigation.[3]  In sum, after learning of the *Glass Dimensions* litigation, the Trustees moved expeditiously to investigate potential claims, confirm realized losses, and intervene in this proceeding.

## III.    Legal Standard

The Federal Rules contemplate two types of motions to intervene: intervention as of right pursuant to Rule 24(a) and permissive intervention under Rule 24(b).  *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009).  Permissive intervention, which the Trustees seek here, may be granted to anyone with a claim that shares common questions of law or fact with the main action.  Rule 24(b)(1).  When deciding motions for permissive joinder, courts may consider almost any factor rationally relevant to the motion.  *Daggett v. Commn' on Gov. Ethics and Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999).  Among the most important factors usually considered by courts are: (1) whether the intervenor's claims share common questions of fact or law with the existing plaintiff's claims; and (2) whether the motion to intervene is timely filed.  *In re Thompson*, 965 F.2d 1136, 1142 n .10 (1st Cir. 1992).  Courts also consider whether the intervenor may be helpful in fully developing the case. *Animal Protection Inst. v. Martin*, 241 F.R.D. 66, 71 (D. Me. 2007) (quoting *Daggett*, 172 F.3d 104, 113 (1st Cir. 1999)).

## IV.    Argument

### A.    The Trustees' Claims Share Common Questions Of Facts And Law With The Claims Of Glass Dimensions

It is beyond cavil that the Trustees' claims and Glass Dimensions' claims share numerous common questions of fact and law.  The Trustees' claims and Glass Dimensions' claims turn on the

---

[2] *Id.*

[3] *Id.* at ¶ 12.

core allegation that State Street breached fiduciary duties to and engaged in prohibited self-dealing transactions by charging the Goodyear VEBA Plan, Glass Dimensions and all ERISA plans investing in commingled trusts a securities lending fee in the amount of 50% of any profits received from securities lending.  The critical factual issues in both matters include the following: (1) Whether State Street charged a 50% securities lending fee to all members of the purported Class?; (2) Whether the 50% securities lending fee was non-negotiable?; (3) Whether the 50% securities lending fee was a product of collusive self-dealing?; and (4) Whether State Street violated its duties of loyalty and engaged in prohibited transactions for which no exemption applied?

As noted above, the Trustees and Glass Dimensions assert identical legal claims for relief against State Street, namely that State Street: (1) failed to prudently and loyally manage the plan assets as required by ERISA § 404(a), 29 U.S.C. § 1104(a); and (2) engaged in numerous self-dealing and prohibited transactions that are *per se* prohibited by Section 406 of ERISA. 29 U.S.C. § 1106, and cannot satisfy any applicable exemption.

The Trustees and Glass Dimensions are represented by the same counsel.  Counsel anticipates coordinating the pleadings, discovery and related pretrial matters to effectively streamline the litigation of both clients' factually and legally related claims.  Hence, the Trustees easily meet the core requirement for permissive intervention – namely, that it has claims that share common questions of fact and law with the plaintiff in the existing action.

The Goodyear VEBA Plan like hundreds of other ERISA employee benefit plans, invested in collective trust funds offered and managed by Defendants (the "Collective Trusts").[4]  Collective Trusts are investment funds that pool the investments of many institutional investors, much like mutual funds.  Defendants received investment advisory, custodial, trustee, and administrative fees for managing the Collective Trusts.  By the phrase "Collective Trusts," The Trustees, to be clear,

---

[4] *See* Exhibit 1 at ¶ 3.

refer to all commingled investments trusts (including those Defendants call "common trusts") operated by Defendants in which employee benefit plans governed by ERISA have invested. *See e.g.*, 29 C.F.R. § 2510.3-101(h) ("describ[ing] what constitute[s] assets of a plan" covered by ERISA and including "[a] common or collective trust fund of a bank"). Any argument by Defendants that Collective Trusts are not the same as common trusts is misplaced and clearly inconsistent with the plain language of the controlling statute.[5]

### B.    The Trustees' Motion Is Timely

In analyzing the timeliness of motions to intervene, courts have repeatedly emphasized that the concept of timeliness is not measured, like a statute of limitations, in terms of specific units of time, but rather derives meaning from an evaluation of possible prejudice in the context of the particular litigation. *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987) (explaining that "[t]he timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly, [but] rather [to] insure[] that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion" (quoting *Garrity v. Gallen*, 697 F.2d 452, 455 (1st Cir. 1983)); *see Banco Popular de Puerto Rico* v. Greenblatt, 964 F.2d 1227, 1232 (1st Cir. 1992) ("[T]he purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." (quoting *Culbeath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980)); *Caterino v. Barry*, 922 F.2d 37, 41 (1st Cir. 1990) (noting that "avoiding such prejudice [to existing parties]" has been described as the basic purpose of the timeliness requirement, and that in that case permitting intervention "inevitably would delay the start of the trial – unquestionably a detriment to the plaintiffs").

In *Culbreath v. Dukakis*, 630 F.2d 15, 17, 20-24 (1st Cir. 1980), the First Circuit identified four factors to be considered in evaluating the timeliness of an intervention motion. These factors are:

---

[5] *Id.*

(i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

### 1.     The Trustees Recently Discovered The Claims At Bar

The Trustees first discovered that they might have the instant claims against State Street in late 2011 – when the Trustees received for the first time, materials pertaining to the *Glass Dimensions* litigation against State Street.[6]  Thereafter, the Trustees evaluated these potential claims with prompt due diligence by, among other things: (1) conducting an extensive internal investigation of its securities lending fee-related losses; (2) analyzing potential legal claims relating to State Street's securities lending-related fees; (3) participating an in-person presentation from counsel regarding potential legal claims against State Street; (4) analyzing the *Glass Dimensions* complaint and related documents; (5) holding a formal board meeting to discuss, decide, and vote on whether to bring claims against State Street; and (6) retaining counsel to bring claims against State Street.  All of these activities occurred within the past eight months.

Within days of their decision to pursue claims against State Street, counsel for the Trustees contacted State Street's counsel to request that State Street stipulate to allow the Trustees to intervene.  State Street, however, refused to so stipulate.  This refusal necessitated the filing of the instant motion.  In sum, the Trustees recently discovered their interest in this action.  Upon discovering their interest, the Trustees proceeded with due diligence to investigate their claims and then bring those claims in a timely fashion.

---

[6] Duzak Decl. at ¶ 2.

###### 2.     The Existing Parties Will Not Be Unfairly Prejudiced By The Trustees Intervention

If the Trustees are not permitted to intervene, they intend immediately to bring their own class action in this Court which will be related to the instant matter.  The Court and the parties will then be required to duplicate work that has already been done in this action.  On the other hand, if the Trustees are permitted to intervene, the case will essentially move forward in a much more procedurally advanced position.  Although the parties may be required to engage in some additional discovery and submit supplemental briefs on certain limited issues in the event of permitted intervention, such discovery and briefing can be streamlined so as not to duplicate work already performed in this action.  In this regard, State Street will benefit by having the Trustees intervene as opposed to litigating the same issues in a separate action.

Intervention is particularly appropriate in cases like this where common questions of law and fact predominate because it avoids unnecessary cost and delay.  The two sets of claims before the Court involve the same wrongful conduct and causes of action, and common evidence would predominate as among both.  Additionally, the actions present virtually identical factual and legal issues and involve identical defendants.  In short, consolidating the actions will serve judicial efficiency, prevent wasteful duplication of efforts and obviate the risk of inconsistent rulings from dueling cases.

State Street may argue that it will be unfairly prejudiced because the existing case management order contains a January 13, 2012 deadline to join additional parties.[7]  This argument would be unavailing given the applicable law on permissive intervention.  Glass Dimensions is not seeking to join an additional party by way of a traditional pleading amendment; rather, the Trustees are independently seeking to intervene.  There is no provision in the operative case management

---

[7] *See* Order, January 10, 2011 (Docket No. 31).

order that precludes a third-party from intervening at any stage in this action.  Indeed, as discussed in more detail below, it is not uncommon in class actions for class members to intervene in class actions when doing so will help protect class member interests and assist the Court fairly adjudicate class claims on the merits.

### 3.     The Trustees Will Be Unfairly Prejudiced If They Are Not Permitted To Intervene

The Goodyear VEBA Plan is a member of the proposed class that Glass Dimensions has moved to certify in this action.  Accordingly, the Trustees, as fiduciaries to the Goodyear VEBA Plan, have a significant interest in that motion being granted.  State Street is opposing the motion primarily on grounds that Glass Dimensions is not a typical class representative.[8]  Although State Street's arguments pertaining to the typicality of Glass Dimensions are without merit, if the Trustees are permitted to intervene, State Street's stated typicality concerns will be alleviated.

For example, State Street argues that Glass Dimensions is not a typical class member and therefore an inappropriate class representative because it is not a large investor with assets in excess of $ 1 billion like State Street claims it "typically" focuses on in its securities lending business.[9]  This argument is a red herring. (And, we note, unsubstantiated inasmuch as State Street did not submit evidence on the median size of its ERISA plan clients that invest in commingled lending trusts.) Nonetheless, allowing the Trustees to intervene eliminates it; the Goodyear VEBA Plan is a large investor with assets of about $1 billion – exactly like the investors State Street says it "typically" focuses on in its securities lending business.[10] Accordingly, the Trustees as fiduciaries for the Goodyear VEBA Plan would be unfairly prejudiced if they were not allowed to intervene and the

---

[8] *See generally*, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, March 19, 2012 (Docket No. 77).
[9] *Id.* at 4.
[10] *Id.*

Court denied the motion to certify a class simply because Glass Dimensions was not a large investor with assets in excess of $ 1 billion.

By way of another example, State Street argues that Glass Dimensions is not a typical class representative because it terminated its investing relationship with State Street.[11]  The Goodyear VEBA Plan however, is still an investor with State Street.  The Trustees, again, would be unfairly prejudiced if they were not allowed to intervene and the Court denied the motion to certify a class because Glass Dimensions was not still invested with State Street.

By way of still another example, State Street opposes Glass Dimension's motion to certify on the grounds that Glass Dimensions, as a small investor, cannot adequately protect the interests of the proposed class.[12]  And yet again, allowing the Trustees to intervene would immediately address this objection, as the Goodyear VEBA Plan has nearly $ 1 billion of assets.  Again, the Trustees would be unfairly prejudiced if they were not allowed to intervene and the Court denied the motion to certify a class because Glass Dimensions was deemed to be not positioned to adequately protect the interests of the proposed class.   The above examples are, of course, illustrative and not exhaustive.

### 4.      There Are No Unusual Militating Circumstances For Or Against Intervention

The Trustees are not aware of any unusual militating circumstances for or against intervention.

### C.      The Trustees Participation Will Help Develop Facts Of The Case

"The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention.  *Daggett*, 172 F.3d 104, 113 (1st Cir.1999)." *Animal Protection Inst. v. Martin*, 241 F.R.D. 66, 71 (D. Me. 2007).  Here, the Trustees will help

---

[11] *Id.* at 19.
[12] *Id.* at 25.

develop the facts of this case because the Trustees will provide evidence of State Street's systemic breaches of fiduciary duty and ERISA violations with respect to the large and ostensibly "typical" investors on which State Street says it focuses its securities lending business. The proposed class, the Court, and even State Street will accordingly benefit from a duly complete and comprehensive factual record in this action.

Moreover, the class action nature of this case also militates for allowing the Trustees to intervene. In *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 57 -58 (S.D.N.Y.1993), the district court commented on the interplay between Rules 23 and 24 and concluded that class members should be permitted to intervene as named plaintiffs in the action whenever intervention would strengthen the class's claims. The same holding was reached in *Groves v. Ins. Co. of North America*, 433 F. Supp. 877, 888 (E.D.Pa.1977). Indeed, both *Diduck* and *Groves* courts held that "Rule 23(d)(2) permits a court to give absentee class members the opportunity to intervene and present claims or defenses, or otherwise to come into the action." *Diduck*, 149 F.R.D. at 58. Here, allowing the Trustees to intervene plainly will strengthen the class's claims.

## mimV. Conclusion

For each of the foregoing reasons, the Trustees respectfully request that the Court grant this Motion.

Dated: July 12, 2012                                         Respectfully submitted,


                                                              ___/s/ Mark T. Johnson_____
                                                              Todd M. Schneider
Gregory Y. Porter                                             Mark T. Johnson
BAILEY & GLASSER LLP                                          SCHNEIDER WALLACE COTTRELL
910 17th Street, NW                                           BRAYTON KONECKY LLP
Suite 800                                                     180 Montgomery Street, Suite 2000
Washington, DC 20006                                          San Francisco, CA 94104
Tel: (202) 463-2101                                           Tel: (415) 421-7100
Fax: (202) 463-2103                                           Fax: (415) 421-7105

Brian A. Glasser
Michael L. Murphy
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Tel: (304) 345-6555
Fax: (304) 342-1110

Todd S. Collins
Shanon J. Carson
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3040
Fax: (215) 875-4604

Matthew P. McCue
Law Office of Matthew McCue
179 Union Ave.
Framingham, MA 01702
Tel: (508) 620-1166
Fax: (508) 820-3311

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Tel: (480) 428-0142
Fax: (866) 505-8036

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Clarence D. Williams, does hereby certify that this Goodyear's Motion to Intervene, filed through ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicate as non-registered participants on July 12, 2012.

/s/ Clarence D. Williams
Clarence D. Williams