UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GLASS DIMENSIONS, INC.,                    *
and all others similarly situated          *
on behalf of GLASS DIMENSIONS, INC.,       *
PROFIT SHARING PLAN AND TRUST,             *
                                           *
            Plaintiff,                     *
                                           *
      v.                                   *        Civil Action  No. 10-10588-JLT
                                           *
STATE STREET BANK & TRUST CO.,             *
STATE STREET CORPORATION, and              *
STATE STREET GLOBAL ADVISORS, INC.,        *
                                           *
            Defendants.                    *

MEMORANDUM AND ORDER

August 22, 2012

I.    Introduction

      Plaintiff is the fiduciary for the Glass Dimensions, Inc. Profit Sharing Plan and Trust.  The

Glass Dimensions Plan, like other ERISA retirement plans, invested in collective trust funds.

These were offered and managed by Defendants.[1]  Plaintiff asserts that Defendants breached their

fiduciary duty to the Plan, in violation of ERISA, by taking unreasonable compensation for

managing the securities lending program on behalf of the Collective Trusts.[2]  Plaintiffs seek to

represent all ERISA plans that invested in a lending fund established by Defendants that received

only fifty-percent of the securities lending income.[3]  Presently at issue are <u>Defendants' Motion for</u>

_____

      [1]Pl.'s St. Mat. Facts [#46] at I-II.

      [2] Am. Compl. [#14] at ¶ 10.

      [3]Pl.'s Mem. in Supp. of Mot. for Class Cert. [#68] at 2.

1

Summary Judgment with Respect to Collective Trust Funds Plaintiff Did Not Purchase [#36] and Plaintiff's Motion for Class Certification [#66]. For the following reasons, Defendant's Motion for Summary Judgment [#36] is DENIED, and Plaintiff's Motion for Class Certification [#66] is ALLOWED.

II.    Background

Plaintiff is the fiduciary for the Glass Dimensions, Inc. Profit Sharing Plan and Trust.[4] The Glass Dimensions Plan brings suit on behalf of itself and a proposed class of other ERISA retirement plans that invested in collective trust funds offered and managed by Defendants.[5] Collective trusts are investment funds (like mutual funds) that pool together the investments of many institutional investors.[6]

Plaintiff alleges that Defendants are fiduciaries to the ERISA retirement plans, responsible for managing plan investments prudently.[7] The collective trusts managed by the Defendants engaged in a practice known as "securities lending," through which the collective trusts loaned securities to third-party borrowers, such as short sellers, for short-term use.[8] Borrowers secured the loans with collateral worth 102-to-105 percent of the borrowed securities.[9] Defendants then

---

[4]Pl.'s St. Mat. Facts at I-II.

[5] Id..

[6] Am. Compl. ¶ 3.

[7] Am. Compl. ¶¶ 6-10.

[8]See Testimony of Steven R. Meier [#44-12] at 2-3.

[9] Testimony of Steven R. Meier at 2-3; Defs.' St. Mat. Facts [#40] ¶ 12.

invested the collateral in low risk income-producing instruments known as collateral pools.[10]

Upon return of the borrowed securities, the collateral is returned to the borrower.[11] The borrower is paid a "rebate," essentially interest, for the investment use of the collateral.[12] The difference between (a) the gross income generated from collateral pool investments and (b) the fees and expenses of managing the collateral pools plus the rebate paid to the borrower is the "spread."[13] The spread is split between the manager of the securities lending program (here the Defendants) and the owner of the securities (here the retirement plans).[14]

Plaintiff alleges that Defendants took an exorbitant share of the spread for themselves in addition to Defendants fees for managing the collateral pools.[15] Defendants took fifty percent of the spread. As a result only fifty percent of the net income generated through the securities lending program went to the retirement plans.[16] Plaintiff contends that the fifty percent share of the spread received by Defendants far exceeds industry standards.[17] Moreover, Plaintiff also alleges that Defendants took substantially higher compensation from the retirement plans when

---

[10] Testimony of Steven R. Meier at 2-3; Defs.' St. Mat. Facts [#40] ¶ 13.

[11] Am. Compl. ¶ 7.

[12] Id.

[13] Testimony of Steven R. Meier at 3

[14] Testimony of Steven R. Meier at 3; Defs.' St. Mat. Facts ¶ 15.

[15] Am. Compl. ¶ 8.

[16] Cullinane Depo. [#69-2] at 42:14-22.

[17] Am. Compl. ¶ 8.

compared to other institutional investors.[18]

Plaintiff alleges that Defendants' investment relationship with the retirement plans was fraught with conflict and self-dealing.[19] Defendants, on the one hand, purportedly represented the collective trusts and the plans in setting the terms of and executing a securities lending program.[20] On the other hand, Defendants represented themselves as the lending agent.[21] Essentially, Plaintiff contends that Defendants "negotiated with themselves the terms of their compensation, discretion, authority, and . . . liability."[22] It is Plaintiff's position that these arrangements led to Defendants "setting and receiving excessive and unreasonable compensation for themselves."[23]

**III.** Motion for Summary Judgment with Respect to Collective Trust Funds Plaintiff Did Not Purchase.

Defendant moves for summary judgment on the ground that Plaintiff does not have standing to sue on behalf of the funds that it did not purchase.[24] "In a class action lawsuit, as in any lawsuit, Article III standing is a 'threshold requirement,' and the representative plaintiff must demonstrate personal injury in fact to certify a class."[25] There are three basic elements of

---

[18] Id.

[19] Id. at ¶ 9.

[20] Id.

[21] Id.

[22] Id.

[23] Id.

[24] Defs.' Mot. for Summ. J., [#36] at 2.

[25] In Re Boston Scientific Corp. ERISA Litig., 254 F.R.D. 24, 28 (D. Mass. 2008) (Tauro, J.).

constitutional standing: (1) the plaintiff must suffer an injury in fact; (2) that is fairly traceable to the defendant's conduct; and (3) redressable by the court.[26]  Once a plaintiff establishes his own standing, the question of whether a plaintiff will be able to represent the putative class, "depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure."[27]

Here, it is Defendants' position that, while plaintiff has standing to sue on behalf of the three lending funds it invested in directly, it does not have standing to sue on behalf of the 257 funds that it did not invest in.  The question presented, therefore, under relevant First Circuit precedent, is whether Plaintiff has standing to sue on behalf of a class that includes claims related to the 257 lending funds Plaintiff did not purchase.

In Barry v. St. Paul Fire & Marine Ins. Co., the named plaintiffs sought to represent a class of doctors and patients in an action against four medical malpractice insurance companies, who were alleged to have engaged in anti-competitive activity.[28]  The named plaintiffs, however, had only purchased policies from two of the four defendant insurance companies.[29]  The First Circuit affirmed dismissal of the two insurance companies with whom the plaintiffs had no financial privity.[30]

Barry is distinguishable from the facts of this case.  Unlike the named plaintiffs in Barry,

---

[26] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

[27] Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998).

[28] Barry v. St. Paul Fire & Marine Ins. Co., 555 F.2d. 3, 5 (1st Cir. 1977)

[29] Id. at 13.

[30] Id.

Glass Dimensions suffered an injury that is fairly traceable to each defendant named in the present suit.[31] <u>Barry</u> offers no guidance that would suggest Plaintiff has no standing to pursue claims on behalf of a class of investors in the lending funds.

In <u>Plumber's Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.</u>, the lead defendant, Nomura Asset Acceptance Corporation, organized eight mortgaged-backed trusts.[32] The three named plaintiffs bought trust certificates in two of the eight trusts.[33] The plaintiffs rested their case on allegations that the offering documents for the trusts contained false or misleading statements, and as a result the plaintiffs purchased securities whose true value when purchased was less than what was paid for them.[34] Because the plaintiffs' brought suit for violations of sections 11, 12(a)(2) and 15 of the Securities Act of 1933, the First Circuit's standing inquiry had both a statutory and a constitutional element.[35]

The plaintiffs brought a class action against all eight trusts and Nomura Asset Acceptance Corporation.[36] The District Court allowed Defendants' motions to dismiss for lack of standing and failure to state a claim, and an appeal to the First Circuit followed.[37] In affirming the District Court's decision, the First Circuit emphasized that, "[i]n a properly certified class action, the

---

[31]<u>See</u> Am. Compl. ¶¶ 14-16, 54-66

[32] <u>Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.</u>, 632 F.3d 762, 766 (1st Cir. 2011).

[33] <u>Id.</u>

[34]<u>Id.</u> at 767.

[35]<u>Id.</u> at 766, 768.

[36] <u>Id.</u> at 766.

[37]<u>Id.</u> at 767.

named plaintiffs regularly litigate not only their own claims, but also the claims of other class members based on transactions in which the named plaintiffs played no part."[38] The court also noted, however, that cases have not been allowed to proceed as a class where some of the defendants are "not implicated in any of the wrongs done to the named plaintiffs."[39] The First Circuit dismissed the case against the six trusts in which plaintiffs did not purchase trust certificates, because, like in Barry, the named plaintiffs had not established financial privity established with those defendants.[40]

The court also dismissed claims against Nomura Asset Acceptance Corporation, "so far as they are based on the six trusts whose certificates were purchased by no named plaintiff."[41] Although, the court references both Article III standing requirements and securities law standing requirements multiple times in the opinion, it dismissed Nomura Asset only with respect to the six trusts whose certificates were not purchased. In explaining its reasoning, the court wrote that:

> Although Nomura Asset is a common defendant with respect to all eight of the trusts, claims against it as well fail so far as they are based on the six trusts whose certificate were purchased by no named plaintiff. Although Nomura Asset is a properly named defendant, the named plaintiffs have no stake in establishing liability as to misconduct involving the sales of those certificates.[42]

The court called Nomura Asset a "properly named defendant[,]" with respect to the two funds where the named plaintiffs did purchase trust certificates. This distinguishes it from the six trusts

---

[38]Id. at 769.

[39]Id.

[40] Id. at 771.

[41] Id.

[42] Id.

that were not properly named defendants. The court's use of the words "purchased" and "sales" in the Nomura opinion indicates that the holding rests on statutory, not constitutional grounds.

The First Circuit's reasoning in Nomura also focused heavily on the fact that the case involved mortgage-backed trusts that were each backed by different loans, from different lenders.[43] The nature of the injury pled in that case focused on nondisclosure of material information in the purchasing documents for the trusts.[44] Here, by contrast, Plaintiff sues for breach of fiduciary duty, and alleges an injury rooted in Defendants' conduct in managing all 260 lending funds as a group. The named Plaintiff, therefore, has an identity of interest with the proposed class in seeking redress from an injury perpetrated by all named Defendants.

This court finds, therefore, that Plaintiff has established constitutional standing with respect to the 257 funds that it did not purchase. Relevant First Circuit precedent, as discussed above, indicates that a potential class representative is only required to establish constitutional standing with respect to each defendant, which Plaintiff does here. Once a plaintiff establishes his own standing, the question of whether a plaintiff will be able to represent the putative class, "depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure."[45] Here, Defendants have conflated standing requirements with class certification analysis, and Defendants' Motion for Summary Judgment is, therefore, DENIED. In light of the disposition of the Motion for Summary Judgment, the court now turns to Plaintiff's Motion to Certify Class.

---

[43] Id.

[44] Id. at 766.

[45] Fallick, 162 F.3d at 423.

**IV.     Motion to Certify Class**

1.     <u>Class Certification Standard</u>

Plaintiff moves to have the following class certified under Rule 23 of the Federal Rules of

Civil Procedure:

> ERISA plans that, during the period of April 9, 2004 to the present:     (1)
> invested in a Collective Trust established by Defendants that loaned securities
> under a Master Securities Lending Authorization Agreement, and (2) paid to
> Defendants fifty percent (50%) of the net securities lending income that the
> Collective Trust earned from a Lending Fund.[46]

In order for a case to be certified to proceed as a class action, a plaintiff must show that it

meets all of the requirements of Fed. R. Civ. P. 23(a) and one of the sections of Rule 23(b).

Under the Rule, "[t]he moving party bears the burden of establishing the elements necessary for

class certification: the four requirements of 23(a) and one of the several requirements of Rule

23(b)."[47]  Rule 23(a) states that the class will be certified only if:

> (1) the class is so numerous that joinder of all members is impractical
> [numerosity requirement]; (2) there are questions of law or fact common to
> the class [commonality requirement]; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class
> [typicality requirement]; and (4) the representative parties will fairly and
> adequately protect the interests of the class [adequacy requirement].

A failure to meet any one prong of Rule 23(a) is grounds for denying class certification.[48] Under

---

[46] Pl.'s Mot. to Cert. Class [#66] at 1-2.

[47] <u>In re Relafen Antitrust Litig.</u>, 218 F.R.D. 337, 341 (D. Mass. 2003) (citing <u>Smilow v. Sw. Bell Mobile Sys.</u>, 323 F.3d 32, 98 (1st Cir. 2003)).

[48] <u>See</u> <u>e.g.</u>, <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2556-57 (2011) (denying class certification based on the putative class's failure to meet the commonality element of Fed. R. Civ. P. 23(a)).

Rule 23(b)(3) the plaintiff seeking class certification must satisfy that provision's requirements of predominance and superiority. The prerequisites for class certification "should be construed in light of the underlying objectives of class actions."[49] In the case of a class seeking certification under Rule 23(b)(3), the court should consider the rule's objective of vindicating "the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."[50]

It is the duty of the district court to undertake a "rigorous analysis of the prerequisites established by Rule 23," while at the same time preventing the class certification proceeding from becoming "an unwieldy trial on the merits."[51] Accordingly, the court takes up each of the Rule 23(a) requirements, as well as those of Rule 23(b)(3) in turn.

2.    Rule 23(a) Analysis

A.    Numerosity:

"The numerosity requirement of Rule 23(a) is satisfied when the class is "so numerous that joinder of all members is impracticable.'"[52] In the present case, numerosity is not in dispute.[53] Defendants maintained 260 lending funds and there are at least 1,790 tax exempt retirement plans

---

[49] Smilow, 323 F.3d at 41 quoted in In re Boston Scientific Corp. Sec. Litig., 604 F. Supp. 2d 275, 280 (2009).

[50] Id.

[51] In Re Boston Scientific, 604 F. Supp. 2d at 280 (internal citations and quotations omitted).

[52] In Re Boston Scientific, 604 F. Supp. 2d at 281.

[53] See Pl.'s Mem. in Supp. of Mot. to Cert. Class [#68] at 8; see also Defs.' Mem. in Opp.'n to Mot. to Cert. Class [#77].

included in the proposed class.[54] It is, therefore, clear that the class is numerous.[55]

B.    Commonality

The commonality requirement is met where "there are questions of law or fact common to the class."[56]  Commonality requires that there be an issue that "is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[57]  In order to meet this burden, "plaintiffs need show only a basic demonstration that there are common questions of law or fact in the case."[51]  In cases where the plaintiff seeks class certification under Rule 23(b)(3), the inquiry into commonality is often subsumed by the "more stringent requirement that common questions of law or fact predominate over individual ones."[52]  In cases where "implementation of [a] common scheme is alleged, the commonality requirement is usually satisfied."[53]

Plaintiff has identified a number of common questions, including the following: whether Defendants were fiduciaries under ERISA with respect to the proposed plaintiff class; whether

---

[54]Springer Class Decl. [#44] ¶ 16.

[55] See McCuin v. Secretary of Health and Human Servs., 817 F.2d 161, 167 (1st Cir. 1987).

[56] Fed. R. Civ. P. 23(a)(2).

[57] Dukes, 131 S.Ct. at 2551.

[51]In re Evergreen Ultra Short Opportunities Fund Sec. Litig., 275 F.R.D. 382, 388 (D. Mass. 2011).

[52]In re Boston Scientific, 604 F. Supp. 2d at 281 (citing Grace v, Perception Tech. Corp., 128 F.R.D. 165, 167 (D. Mass. 1989).

[53]Overka v. American Airlines, Inc., 265 F.R.D. 14, 18 (D. Mass. 2010)(citing Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001)).

Defendant State Street Global Advisors engaged in a diligent and prudent process for selecting State Street Bank and Trust as the Lending Agent; whether Defendants were motivated by self-enrichment when selecting State Street Bank and Trust as the Lending Agent; and whether a fee of fifty percent of the securities lending income is reasonable compensation for Defendants' services.[54]

Defendants contention that the reasonableness of their compensation is not amenable to common proof because the reasonableness of the compensation needs to be determined on an individual basis for each fund is incorrect.[55] Plaintiff's claim rests on the assertion that Defendants negotiated the securities lending fee en masse without regard to the individual characteristics of each ERISA plan investor, or of the funds themselves. Plaintiff claims that the fifty-percent fee was set across the lending funds for Defendants' own administrative convenience.[56]

The evidence submitted reflects that the funds are governed by a "Declaration of Trust," which "sets forth how the funds [are] managed; the trustee's duties and responsibilities; qualification and eligibility requirements; [and] the means by which the trustee can establish individual funds."[57] The individual fund declarations also uniformly stated that, "No less than 50 percent of the securities lending revenue will accrue to the benefit of the participants in the fund."[58] Defendants' 30(b)(6) representative also testified that,

---

[54] Pl.'s Mem. Supp. of Mot. for Class Cert. at 9-10.

[55] See Defs.' Mem. in Opp.'n [#77] at 20-25.

[56] See Mitchem Depo. [#69-2] at 24:21-25:2.

[57] Cullinane Depo. at 5:10-18, 7:24-8:7.

[58] Culliane Depo. at 11:11-22.

> each lending fund is part of a broader group trust, [and] . . . part of a single group trust structure. Each lending fund participates in the lending program, and is a party to a securities lending program authorization agreement that is one securities lending authorization agreement that covers all of the funds for efficiency purposes. The lending funds all have the same 50/50 lending split, or no less than 50 percent will accrue to the benefit of the participants. . . . State Street is the fiduciary for all of the funds.[59]

The record also indicates that a uniform fee split is used across the defined contribution funds because it is administratively easier for defendants.[60] The securities lending fee split additionally remains the same even though other fees connected to the lending funds may vary.[61]

As defined, the class only includes ERISA plans that paid a fifty percent fee split, and were invested in the lending funds. Because the fee did not vary across the numerous lending funds at issue, it is inconsistent for Defendants to argue that its reasonableness may vary depending on the type of fund each putative class member invested in. The record clearly demonstrates that the structure of the fee split was common across all of the lending funds. Accordingly, Plaintiff has presented sufficient common issues to meet the commonality prong of Rule 23(a).

C.      Typicality

Under Rule 23, a class representative's claims must be typical of the claims of the class as a whole. The claims need not be identical, but "only need to share the same essential

---

[59]Cullinane Depo. at 45:19-46:10.

[60]Mitchem Depo. at 24:21-25:2.

[61]Mitchem Depo. at 52:20-53:21 (The return on the split may vary according to investment decisions, but the percentage split itself remains the same); id. at 54:8-16.

characteristics."[62]  The plaintiff can meet this requirement by demonstrating that its injuries arise from the same course of conduct as the rest of the class, and that its claims are based on the same legal theory as those of the class.[63]  Typicality "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."[64]  It requires that a "'class representative have the incentive to prove all the elements of the cause of action [that] would be presented by the individual members of the class were they initiating individualized actions.'"[65]

Defendants argue that Plaintiff is not typical for two reasons.  First, Plaintiff is atypcial because it did not negotiate and accept the terms of the securities lending services like the rest of the class, and second, while Glass Dimensions was unfamiliar with State Street's compensation, the institutional lending fund investors had actual notice of State Street's compensation for securities lending activities, therefore the claims of the institutional lending fund investors are subject to the statute of limitations.[66]

The plaintiff here can demonstrate that its injuries arise from the same course of conduct as the rest of the class, and that its claims are based on the same legal theory as those of the rest of the class.  The class is defined so as to include only ERISA plans invested in Lending Funds governed by the Master Fund Declaration, and that paid a fifty-percent fee split.  One of the

---

[62] Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 24-25 (D. Mass. 2005)).

[63] In re Credit Suisse-AOL Secs. Litig., 253 F.R.D 17, 23 (D. Mass. 2008).

[64] In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 311 (3d Cir. 1998).

[65] Evergreen, 275 F.R.D. at 389 (quoting Hicks v. Morgan Stanley & Co., No. 01 Civ. 10071, 2003 WL 21672085, at *1-2, *3 (S.D.N.Y. July 16, 2003)).

[66] Defs.' Mem. in Opp.'n at 12-18.

principal issues to be decided is whether Defendants owed the Plaintiff class a fiduciary duty, and, if so, whether that duty was breached. Whether Defendants negotiated a fifty-percent fee split with some plans, and simply implemented it for others does not defeat typicality because it does not affect Plaintiff's incentives in pursuing the litigation, which is at the heart of the typicality inquiry. Plaintiff's claim is that Defendants negotiation with itself led to the injury to both Plaintiff and the class. Whether Defendant did, in fact, negotiate with itself in such a way as to result in a breach of fiduciary duty, and the type of negotiations that Defendant engaged in with Lending Fund clients is, therefore, appropriate for disposition on a class wide basis.

Whether the proposed class's claims are time barred is also a class-wide question. Defendants contend that the class is subject to a statute of limitations defense because State Street provides institutional investors with a "Fund Declaration" that discloses State Street's compensation for "the provision of securities lending services to the Lending Funds.[67] Defendants admit, however, that such a notice was never sent to Plaintiff.[68] The statute of limitations, therefore, is not a unique dispositive defense as to this Plaintiff. By contrast, it is undisputed that it does not apply to this plaintiff. The First Circuit has found that classes are usually certified under Rule 23, "even though individual issues were present in one or more affirmative defenses."[69] If, as Defendants allege, notice of the fee split was provided as a matter of course, the determination of the relevant statute of limitations will present an issue common to all class members, and therefore cannot defeat class certification.

---

[67]Id. at 7 (citing Cullinane Decl. [#76] at ¶¶ 6, 28-29, 24).

[68]Id. at 7 (citing Cullinane Decl. at ¶¶ 21-22).

[69]Smilow, 323 F.3d at 39.

D.      Adequacy

There are two elements to the adequacy inquiry.  First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and, second, the counsel chosen by the class representative must be "qualified, experienced, and able to vigorously conduct the proposed litigation."[70]

Here, it is clear that Plaintiff and Plaintiff's counsel meet the adequacy requirements. Plaintiff has presented evidence demonstrating that its officers understand the suit, and the responsibilities attached to being lead plaintiff representing a class of similarly situated ERISA plans.[71]  Indeed, Plaintiff's CFO Darrell Perkins attended the class certification hearing before this court.  There is no potential conflict between Plaintiff and any potential class members.  As discussed above, Plaintiff presents the same claims as the rest of the proposed class, and is not subject to any unique defense.[72]

Plaintiff's chosen counsel is qualified, experienced, and able to vigorously conduct the proposed litigation.  The record demonstrates that Plaintiff's counsel has extensive experience in conducting ERISA securities class action suits, and Plaintiff's counsel has demonstrated a

---

[70] Adair v. Sorenson, 134 F.R.D. 13, 18 (D. Mass. 1991) (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)).

[71] D. Perkins Depo. [#73-1] at 32:18-33:6, 96:16-97:19, 116:7-9, 143:19-144:7, 107:16-108:3.  See Adair, 134 F.2d at 18-19 (finding that "a representative need not have personal knowledge of all the relevant facts to be an adequate representative," and finding the named plaintiff an adequate representative where he, "appears to understand the basic issues behind the complaint.")

[72] See 2 (B)-(C) supra.

thorough approach to all matters presently before the court.[73]

3.    Rule 23(b)(3) Analysis

Class certification is appropriate under Rule 23(b)(3) where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[74]  Courts consider a non-exhaustive list of factors to determine whether a proposed class has met the predominance and superiority requirements:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[75]

With these in mind, the court turns to the requirements of predominance and superiority in turn.

A.      Predominance

In order to establish that common issues predominate, a named plaintiff "must demonstrate that the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"[76] The First Circuit has elaborated by finding that "[a]s long as a sufficient constellation of common issues binds class members together," notwithstanding the existence of

---

[73]See Porter Decl. [#67] Ex. A-C (firm resumes of Bailey & Glasser, Berger & Montague, and Schneider Wallace).

[74]Fed. R. Civ. P. 23(b)(3).

[75]Overka, 265 F.R.D. at 19.

[76]Overka, 265 F.R.D. at 19 (quoting Amchem Products, Inc. V. Windsor, 521 U.S. 591, 623 (1997)).

some individualized issues, a class may still be certified under Rule 23(b)(3).[77]  The predominance inquiry requires an "individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues."[78]

In cases where a named plaintiff seeks class certification under Rule 23(b)(3), the requirements of commonality under Rule 23(a)(2), and predominance under Rule 23(b)(3) largely overlap, but the predominance inquiry is the more stringent test.[79]  The central issues in this case are, first, whether Defendants had a fiduciary duty to the plaintiff class, and second, whether that duty was breached by Defendants negotiating an unreasonable fee split for the lending funds. Plaintiff's claims rest only on federal law, ERISA, intended to "establish standards of conduct, responsibility, and obligations for fiduciaries."[80]  The claims are subject to common proof because they rest on documentation that was applicable to all the lending funds in question, and that was generated by Defendants as a matter of course.[81]

Although Defendants point to differences among the funds, the record makes clear that

---

[77]Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000); see also Overka 265 F.R.D. at 19.

[78]In re Relafen Antitrust Litigation, 218 F.R.D. 337, 343 (D. Mass. 2003) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 (2d ed.)).

[79]In re Boston Scientific, 604 F. Supp. 2d at 281 (citing Grace, 128 F.R.D. at 167).

[80]See ERISA § 2(b), 29 U.S.C. § 1001(b); See also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (noting that ERISA "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans.").

[81]See generally Cullinane Decl.[#76]; Compare Smilow, 323 F.3d at 39 (finding predominance requirement met where all class members were subject to the same standard contract) with Abla v. Brinker Investment Corp., 279 F.R.D. 51, 57 (D. Mass. 2011) (finding the predominance requirement was not met where the documentation in the case varied widely based on the geographic location of members of the plaintiff class).

those differences did not affect the percentage of the lending fee split.[82]  Because the

reasonableness of the fee split itself is the central issue presented by Plaintiffs' claims, common

issues predominate, notwithstanding any individual issues that may arise.[83]  The applicability of

any defenses are, similarly, appropriate for disposition on a class-wide basis, given Defendants'

assertion that information about the lending funds was routinely distributed to all investors in a

systematic manner.[84]

        B.    Superiority

The requirement of superiority is designed to ensure that "resolution by class action will

'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results.'"[85]

Adjudication in the form of a class action is superior in this case because, while individual

ERISA plans may not have a financial incentive to challenge the reasonableness of the

fifty-percent fee split, when the claims of the different ERISA plans are aggregated,  it provides an

incentive to thoroughly litigate the issue.  Furthermore, Defendants and the named plaintiff are

located in this forum, and, as discussed above, the identity of issues weighs in favor of class-wide

---

[82]Cullinane Depo. at 45:19-46:7; Mitchem Depo. at 52:9-53:21; Bonn Depo. [#69-2] at 21:9-13.

[83]See Am. Compl. ¶¶ 25-30.

[84]Cullinane Decl. [#76] ¶¶ 6, 8, 21-24, 28, 30; see Smilow, 323 F.3d at 39 ("[W]here common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses.").

[85]Relafen, 218 F.R.D. at 346 (quoting Amchem, 521 U.S. at 615).

resolution. There is no other litigation between Defendants and members of the proposed plaintiff class on this issue. Accordingly, a class action provides a superior method for dealing with the claims presented by the named plaintiffs.

4.   Appointment of Class Counsel

Pursuant to Fed. R. Civ. P. 23(g)(1)(A)&(B),

> When considering whether to appoint counsel as class counsel, the court is to consider 'the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions . . . ; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class' and 'may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'[86]

There can be no question that proposed class counsel are able and ready to conduct this litigation on behalf of the proposed class. The three firms put forth have a wealth of experience in litigating complex class action cases.[87]  Class counsel has, furthermore, been vigorous in pursuing the litigation up to this point. Accordingly, Plaintiff's proposed class counsel is appropriate for appointment under the Federal Rules of Civil Procedure.

**IV.  Conclusion**

For the reasons given above, this court hereby orders as follows. Defendant's Motion for Summary Judgment [#36] is DENIED.  Plaintiff's Motion to Certify Class [#66] is ALLOWED.  Plaintiff's proposed class counsel is  APPOINTED as counsel for the Plaintiff Class.

---

[86]Riva v. Ashland, Inc., 2011 WL 6202888 at *10, n.5 (D. Mass. Dec. 13, 2011) (citing Fed. R. Civ. P. 23(g)(1)(A)&(B)).

[87]See Porter Decl. [#67] Ex. A-C (firm resumes of Bailey & Glasser, Berger & Montague, and Schneider Wallace).

IT IS SO ORDERED

_____/s/ Joseph L. Tauro_____
United States District Judge