UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GLASS DIMENSIONS, INC., on behalf of the     *
GLASS DIMENSIONS, INC. PROFIT               *
SHARING PLAN AND TRUST, and all others      *
similarly situated,                          *
                                             *
                Plaintiffs,                  *
                                             *
        v.                                   *     Civil Action  No. 10-10588-JLT
                                             *
STATE STREET BANK & TRUST CO.,              *
STATE STREET CORPORATION, and               *
STATE STREET GLOBAL ADVISORS,               *
                                             *
                Defendants.                  *

MEMORANDUM

January 14, 2013

TAURO, J.

I.      Introduction

        Plaintiff is the fiduciary for the Glass Dimensions, Inc. Profit Sharing Plan and Trust

("Glass Dimensions Plan").  Plaintiff brings suit on behalf of the Glass Dimensions Plan and a

class of other ERISA retirement plans that invested in collective trust funds offered and managed

by Defendants.  Plaintiff asserts that Defendants breached their fiduciary duty, in violation of

ERISA, by engaging in self-dealing transactions and taking unreasonable compensation for

securities lending services.  Several motions are before this court.  For the reasons set forth

below, Goodyear's Motion to Intervene [# 129] is DENIED; Defendants' Motion to Strike

Plaintiff's Untimely Expert Reports [#106] is ALLOWED IN PART and DENIED IN PART; and

Plaintiff's Motion to Strike Defendants' Prohibited Transaction Exemption 2006-16 Defense

and/or Preclude Defendants from Offering Evidence of Related Rebates [#132] is ALLOWED IN

PART and DENIED IN PART.

II.      Goodyear Trustees' Motion to Intervene

The Trustees ("Goodyear Trustees") of the Retirees of the Goodyear Tire and Rubber

Company Health Care Trust ("Goodyear Plan"), move for permissive intervention under Federal

Rule of Civil Procedure 24(b).[1]  Goodyear Trustees seek to assert claims against Defendants

similar to those brought by Plaintiff, including violations of ERISA § 404(a) and § 406.[2]

Goodyear Trustees state that they learned of their interest in this action in late 2011.[3]  They then

filed a motion to intervene on July 12, 2012.

Under Rule 24(b), a court may allow permissive intervention if the application is timely

and the applicant's claims shares a common question of law or fact with the main action.[4]

"Permissive intervention is 'wholly discretionary,' and a court should consider whether

intervention will prejudice the existing parties or delay the action."[5]  For intervention, "timeliness

is 'of first importance.'"[6]  The First Circuit has set forth four factors for determining the timeliness

of a motion to intervene: "(1) the length of time the applicant knew or should have known of his

---

[1] Goodyear's Mot. Intervene 1, 3 [#129].

[2] Goodyear's Mot. Intervene 2, Ex. 1.

[3] Goodyear's Mot. Intervene 2, Ex. 2 (Decl. Thomas F. Duzak) ¶ 2.

[4] Fed. R. Civ. P. 24(b)(1).

[5] In re Bos. Scientific Corp. ERISA Litig., 254 F.R.D. 24, 33 n.82 (D.Mass. 2008)
(quoting In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 345 (D.Mass. 2005)).

[6] Id. at 33 (quoting Caterino v. Barry, 922 F.2d 37, 40 (1st Cir. 1990)).

interest before moving to intervene; (2) prejudice to existing parties due to the applicant's delay; (3) prejudice to the applicant if intervention is denied; and (4) any 'unusual circumstances mitigating for or against intervention.'"[7]  This court considers these four factors in turn and finds that Goodyear Trustees' motion is not timely.

>    1.    Length of Time

Goodyear Trustees waited at least seven months between learning of their interest in this litigation in late 2011 and moving to intervene on July 12, 2012.[8]  Goodyear Trustees knew of their interest in this litigation before the close of fact and expert discovery.  They could have moved to intervene before those deadlines.  Instead, Goodyear Trustees waited over seven months and filed this motion six months after the close of fact discovery, six months after the deadline to join additional parties, three months after the close of expert discovery, and two weeks after the deadline for summary judgment motions.  This delay is simply too long in the context of this litigation.[9]

>    2.    Prejudice to Existing Parties

Intervention would cause substantial prejudice to the existing parties to this suit.  It appears that the Goodyear Plan is not a member of the certified class.  On August 22, 2012, this

---

[7] Id. (quoting Caterino, 992 F.2d at 40).

[8] Defendants also present evidence that Goodyear Trustees should have known of their interest in this litigation before late 2011.  In particular, Defendants point to information regarding this litigation that was publicly available in the form of public filings, media interviews, and press releases. Defs.' Opp'n to Goodyear's Mot. Intervene 4 n.2 [#140-1].

[9] See R & G Mortg. Corp. v. Fed. Home Mortg. Corp., 584 F.3d 1, 8-9 (1st Cir. 2009); Narragansett Indian Tribe v. Ribo, Inc., 868 F.2d 5, 7 (1st Cir. 1989) ("Parties having knowledge of the pendency of litigation which may affect their interests sit idle at their peril.").

court certified the class to include ERISA plans that invested in a "Collective Trust."[10]  The

Goodyear Plan, in contrast, invested in a "Common Trust."[11]  As a result, intervention would

require amendment of the class or creation of a second class.  Intervention would also require re-

opening fact and expert discovery and re-briefing summary judgment.  This case has been ongoing

for over two years.  The parties have spent too much time and expense in bringing this complex

litigation to its current state to now take three steps backwards by allowing intervention.

### 3.    Prejudice to Goodyear Trustees

Because the Goodyear Plan is not a member of the class, it will suffer little prejudice by a

denial of intervention.  Goodyear Trustees have represented that if their motion is denied, they

intend to immediately bring their own class action.[12]  Goodyear Trustees can protect their

interests and assert their rights by doing just that.

### 4.    Unusual Circumstances

Finally, there are no apparent unusual circumstances favoring intervention.  On the other

hand, the complex nature and advanced stage of this litigation mitigate against intervention.

In sum, all of the timeliness factors favor Defendants.  If Goodyear Trustees wish to

pursue claims against Defendants, they may file another action individually or on behalf of a class.

Goodyear Trustees' Motion to Intervene is DENIED.

---

[10] Mem. & Order 9 [#156].

[11] Am. Decl. Charles E. Cullinane Supp. Defs.' Resp. Pl.'s Letter May 31, 2012 Regarding Goodyear VEBA & Supplemental Authority ¶¶ 3-8 [#170-1].  Counsel also admitted at oral arguments that the Goodyear Plan invested in a Common Trust.

[12] Goodyear's Mot. Intervene 7.

III.    Defendants' Motion to Strike Plaintiff's Untimely Expert Reports

      This court's Scheduling Order [#31] required Plaintiff to serve expert reports by February 24, 2012, Defendant to serve expert reports by March 23, 2012, and Plaintiff to serve reply reports by April 13, 2012.  Plaintiff did not serve any affirmative expert reports.[13]  Defendants timely served the expert reports of Erik Sirri and Edmon Blount.[14]  On April 13, 2012, Plaintiff served the expert reports of  Jessica Flores, Steve Pomerantz, and Gregory Harmon.[15]

      Defendants move to strike the Pomerantz Report and Sections III, IV, and V (¶¶ 30, 31) of the Harmon Report on the ground that these reports exceed the scope of proper rebuttal and are therefore untimely affirmative reports served under the guise of rebuttal reports.  Defendants further claim that they have been prejudiced by Plaintiff's untimely disclosures because their experts did not have the opportunity to respond to Pomerantz and Harmon.  In opposition, Plaintiff argues that the Pomerantz Report and the Harmon Report directly rebut Blount.

       Under Rule 26(a)(2)(D)(ii), an expert report qualifies as a rebuttal report if it "is intended solely to contradict or rebut evidence on the same subject matter identified" by the opposing party's expert report.[16]  A rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.[17]

---

[13] Defs.' Mem. Supp. Mot. Strike 2 [#107-1].

[14] Defs.' Mem. Supp. Mot. Strike 2.

[15] Defs.' Mem. Supp. Mot. Strike 2.

[16] Fed. R. Civ. P. 26(a)(2)(D)(ii).

[17] See Desert Mgmt. Corp. v. United States, 97 Fed. Cl. 272, 274 (2011); In re Genetically Modified Rice Litig., 2010 WL 4483993, at *3 (E.D.Mo. Nov. 1, 2010) ("An expert may introduce new methods of analysis in a rebuttal report if they are offered to contradict or

Here, Defendants' expert Blount opined at length as to the reasonableness and market-competitiveness of the 50% fee, a subject for which Defendants bear the burden of proof under the Prohibited Transaction Exemption 2006-16 affirmative defense.[18]  Plaintiff was therefore entitled to submit expert reports to rebut Blount's opinions and evidence on the subject matter of the 50% fee.  In doing so, Plaintiff's experts were free to support their contrary opinions with data not cited by Blount, so long as the new data directly rebutted Blount.

A.   The Pomerantz Report is an untimely affirmative report.

The Pomerantz Report falls outside the scope of proper rebuttal.  In his Report, Pomerantz does not purport to respond to Blount or even refer to Blount.  Although the Pomerantz Report is on the same general "subject matter" as the Blount Report (the reasonableness of the 50% fee), Pomerantz does not directly "contradict or rebut" Blount, as required by Rule 26(a)(2)(D)(ii).  For instance, in paragraphs eight through thirteen of his report, Pomerantz appears to calculate damages.  Pomerantz calculates the "excess paid" by Lending Fund clients, such as class members, under alternative scenarios entitled "Alt A," "Alt B," and "Alt C."[19]  In contrast, Blount does not opine or offer evidence on damages.  Pomerantz also compares State Street's fee for Lending Funds to their fee for ETFs.  Blount, however, does not

---

rebut another party's expert."); Kirola v. City & Cnty. of S.F., No. 07-3685-SBA, 2010 WL 373817, at *2 (N.D.Cal. Jan. 29, 2010); MMI Realty Servs, Inc. v. Westchester Surplus Lines Ins. Co., No. 07-00466-BMK, 2009 WL 649894, at *2 (D.Haw. Mar. 10, 2009) ("Under this rule, Holland is free to support his opinions with evidence not cited in Westchester's reports so long as he rebuts the 'same subject matter' identified in those reports.").

[18]  See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 601 (8th Cir. 2009); Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996); Elmore v. Cone Mills Corp., 23 F.3d 855, 864 (4th Cir. 1994); Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1215 (2d Cir. 1987).

[19]  Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. C ¶¶ 10-13 [#108].

offer any opinions or evidence on ETFs or even refer to ETFs in his report.

Finally, Pomerantz does not directly rebut Blount on the topic of Agency Lending.  Blount opines that it is "inappropriate" to compare the fees for Lending Funds to the fees for Agency Lending.[20]  Blount opines that a number of significant factors distinguish Lending Funds from Agency Lending, such that a flat comparison of two is rendered "meaningless."[21]  On the other hand, Pomerantz offers no rebuttal of Blount's opinion on the impropriety of comparing these types of funds.  Rather, Pomerantz, without explanation, engages in a flat comparison of the fees for Lending Funds and the fees for Agency Lending.  This comparison is not responsive to Blount's arguments.  Because Pomerantz does not directly "contradict or rebut" Blount, the Pomerantz report is more appropriately characterized as an untimely affirmative expert report.

B.     The Harmon Report is a proper rebuttal report.

The Harmon Report, in its entirety, falls within the scope of proper rebuttal.  At the outset of his report, Harmon declares his intention to respond to Blount.  Harmon then engages in a point-by-point rebuttal of the Blount Report.  The sections of the Harmon Report challenged by Defendants – Sections III, IV, and V (¶¶ 30, 31) – directly rebut Blount.  For instance, as discussed above, Blount opines that it is inappropriate to compare the fees for the Lending Funds to the fees for Agency Lending.  In response, Harmon opines that the Lending Funds and Agency Lending share a number of common features such that a comparison of the two is proper.[22]  Harmon then presents Agency Lending data that, in his opinion, Blount should have considered

---

[20] Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. B ¶¶ 18, 75-78.

[21] Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. B ¶ 77.

[22]  Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. D ¶¶ 17, 20, § V. (4).

and that contradicts Blount's findings.

Blount further opines that the 50% fee was "not uncommon" in the industry and was comparable to fees negotiated at arm's-length.[23]  In support of his opinions, Blount compares the 50% fee to the fees charged by competitors.[24]  In rebuttal, Harmon points to data that Blount omitted from his analysis.[25]  Harmon also opines that, contrary to the opinions of Blount, the 50% fee was uncommon in the industry and unlike fees negotiated at arm's-length.[26]  Harmon supports his opinions with industry data that refutes Blount's findings.

Because Harmon's evidence and opinions directly "contradict or rebut" Blount, the Harmon Report is a proper and timely rebuttal report.  As a result, Defendants' motion to strike the Harmon Report is denied.

     C.    <u>The Proper Sanction</u>

This court must now decide the proper sanction for Plaintiff's untimely disclosure of an affirmative expert report, the Pomerantz Report.  Under Rule 37(c)(1), the standard sanction for a disclosure violation is preclusion of the untimely evidence, unless the violation was substantially justified or harmless.[27]  Preclusion, however, is not automatic or mandatory.[28]  A district court has

---

[23] Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. B ¶¶ 18, 44.

[24] Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. B ¶ 44.

[25] Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. D ¶¶ 20-23, 30-31.

[26] Decl. Sara N. Raisner Supp. Defs.' Mot. Strike Ex. D ¶ 24.

[27] Fed. R. Civ. P. 37(c)(1); <u>Harriman v. Hancock Cnty.</u>, 627 F.3d 22, 29 (1st Cir. 2010).

[28] <u>Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este</u>, 456 F.3d 272, 276 (1st Cir. 2006) ("Still, preclusion is not a strictly mechanical exercise; district courts have some discretion in deciding whether or not to impose that onerous sanction.").

discretion to craft an alternative remedy, such as a continuance, if the prejudice caused by the untimely disclosure can be cured before trial.[29]  The First Circuit has set forth several factors for determining the proper sanction: (1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence.[30]

Although Plaintiff does not offer a substantial justification for its untimely disclosure, there is no history of litigation abuse by Plaintiff and no indication that Plaintiff acted in bad faith. Because this case is complex and relies heavily on financial data and calculations, Plaintiff demonstrates a need for Pomerantz's report and testimony.  Most importantly, this case is months from trial.  As a result, this court can cure any prejudice to Defendants by allowing one of Defendant's experts the opportunity to respond to the Pomerantz Report.  This court therefore finds that the proper remedy for Plaintiff's untimely disclosure is to give Defendants one month to supplement one of their expert reports to reply to the Pomerantz Report.

IV.     Plaintiff's Motion to Strike Defendants' Prohibited Transaction Exemption 2006-16
        Defense and/or Preclude Defendants from Offering Evidence of Related Rebates

Plaintiff moves for sanctions against Defendants on the ground that Defendants failed to disclose relevant rebate data during fact discovery.  Plaintiff argues that the rebate data is clearly relevant to Defendants' Prohibited Transaction Exemption 2006-16 affirmative defense.[31]

---

[29] Id.; Samos Imex Corp. v. Nextel Commc'ns, Inc., 194 F.3d 301, 305 (1st Cir. 1999).

[30] Harriman, 627 F.3d at 30.

[31] Pl.'s Mot. Strike 1 [#132]; Pl.'s Mem. Supp. Mot. Strike 1-3 [#133].

Plaintiff further argues that Defendants failed to disclose this data as part of their initial disclosures under Rule 26(a) and failed to supplement their disclosures to include the data under Rule 26(e).[32]  Instead, Defendant produced the rebate data on June 15, 2012, six months after the close of fact discovery and just two weeks before the summary judgment deadline.[33]  Plaintiff argues that it has been prejudiced by Defendants' untimely disclosure because it was deprived of the opportunity to obtain expert analysis of the rebate data.[34]

Rule 26(a)(1)(A) provides that "a party must, without awaiting a discovery request, provide to the other parties: . . . (ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[35]  Additionally, Rule 26(e)(1) requires a party to supplement its initial disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."[36]

This court finds that Defendants failed to timely disclose the rebate data in violation of Rule 26.[37]  The rebate data is clearly relevant to Defendant's Exemption defense. Yet, Defendants

---

[32] Pl.'s Mem. Supp. Mot. Strike 2-3, 8 n.6.  Plaintiff also argues that Defendants failed to produce the data despite Plaintiff's 2011 request for all documents related to the Exemption defense.

[33] Pl.'s Mot. Strike 1-2; Pl.'s Mem. Supp. Mot. Strike 6.

[34] Pl.'s Mem. Supp. Mot. Strike 11.

[35] Fed. R. Civ. P. 26(a)(1)(A).

[36] Fed. R. Civ. P. 26(e)(1).

[37] This court's Modified Discovery Order [#19] required Defendants to not only disclose but also exchange all documents subject to Rule 26(a)(1).  Defendants' failure to produce the

did not provide a copy or sufficient description of the rebate data as part of their initial disclosures.[38]  Nor did Defendants supplement their disclosures to identify or produce this data during over a year of fact discovery.

As stated above, under Rule 37(c), preclusion is the standard sanction for a disclosure violation, unless the untimely disclosure was substantially justified or harmless.[39]  A court need not, however, exclude evidence if an alternative remedy would cure the prejudice to the opposing party before trial.[40]  Here, as with Plaintiff's disclosure violation discussed above, the balance of factors weighs against preclusion.  First, although Defendants do not offer a substantial justification for their late disclosure,[41] there is no history of litigation abuse by Defendants.  Second, this court cannot conclude on the current record that Defendants acted in bad faith.  Third, Defendants have a need for the data in order to demonstrate compliance with the Exemption defense.  Fourth, trial is months away and thus there is ample time to cure any prejudice.

Finally, the sanctions of preclusion and striking a defense are inappropriate in light of Plaintiff's failure to file a motion to compel.  Although a motion to compel is not require to

---

rebate data during fact discovery also violates this Order.

[38] Decl. Todd S. Collins Supp. Pl.'s Mot. Strike, Ex. 1 [#136-1]

[39] Fed. R. Civ. P. 37(c)(1); Harriman v. Hancock Cnty., 627 F.3d 22, 29 (1st Cir. 2010).

[40] Samos Imex Corp. v. Nextel Commc'ns, Inc., 194 F.3d 301, 305 (1st Cir. 1999).

[41] Contrary to Defendants' argument, the fact that Plaintiff did not specifically request rebate data during discovery is not a substantial justification.  Rule 26(a)(1)(A)'s disclosure requirements are automatic and do not require a discovery request.

trigger Rule 37(c)(1),[42] this court specifically instructed Plaintiff to file a motion to compel at the Scheduling Conference on December 7, 2010, after Plaintiff expressed concern over deficient disclosures.[43]  In light of these factors, the proper remedy for Defendants' untimely disclosure is to allow Plaintiff the opportunity to obtain expert analysis of the data.  Plaintiff shall have one month to submit the rebate data to one of its experts and serve a supplemental expert report on the data.

V.      Conclusion

        For the above-stated reasons, Goodyear's Motion to Intervene [# 129] is DENIED; Defendants' Motion to Strike Plaintiff's Untimely Expert Reports [#106] is ALLOWED IN PART and DENIED IN PART; and Plaintiff's Motion to Strike Defendants' Prohibited Transaction Exemption 2006-16 Defense and/or Preclude Defendants from Offering Evidence of Related Rebates [#132] is ALLOWED IN PART and DENIED IN PART.


AN ORDER HAS ISSUED.

                                                    /s/ Joseph L. Tauro
                                                United States District Judge

---

[42] Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R., 248 F.3d 29, 33 (1st Cir. 2001).

[43] Tr. Scheduling Conf. 12:21-24, Dec. 7, 2010 [#25].