UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GLASS DIMENSIONS, INC., on behalf of the | * | |
| GLASS DIMENSIONS, INC. PROFIT | * | |
| SHARING PLAN AND TRUST, and all others | * | |
| similarly situated, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action  No. 10-10588-JLT |
| | * | |
| STATE STREET BANK & TRUST CO., | * | |
| STATE STREET CORPORATION, and | * | |
| STATE STREET GLOBAL ADVISORS, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

March 21, 2013

TAURO, J.

I.      Introduction

        Plaintiff brings this class action under the Employment Retirement Income Security Act

("ERISA") §§ 404 and 406.  Plaintiff claims that after class members invested in Defendants'

Lending Funds and appointed Defendants as trustee and investment manager, Defendants engaged

in prohibited transactions and breached their fiduciary duties of loyalty and prudence.  According

to Plaintiff, Defendants did so by (1) selecting themselves as the securities lending agent for the

Lending Funds in a self-dealing transaction without competitive bidding or arm's length

negotiation; and (2) taking unreasonable securities lending compensation.  Both sides have moved

for summary judgment.  For the reasons set forth below, both Defendants' Motion for Summary

Judgment [#109] and Plaintiff's Motion for Summary Judgment [#104] are DENIED.

1

II.    Factual Background

A.    The Parties

Plaintiff, Glass Dimensions, Inc., is the administrator of the Glass Dimensions, Inc. Profit

Sharing Plan and Trust ("Glass Dimensions Plan"), an ERISA defined contribution plan.  Between

April 2004 and September 2010, the Glass Dimensions Plan invested directly in three collective

trust funds ("Lending Funds")[1] offered and managed by State Street.[2]  Plaintiff brings this suit on

behalf of the Glass Dimensions Plan and a class of similarly-situated ERISA plans that invested in

Defendants' Lending Funds.  The Class includes:

> ERISA plans that, during the period of April 9, 2004 to the present: (1) invested in
> a Collective Trust established by Defendants that loaned securities under a Master
> Securities Lending Authorization Agreement, and (2) paid to Defendants fifty
> percent (50%) of the net securities lending income that the Collective Trust earned
> from a Lending Fund.[3]

Defendants are State Street Corporation ("SSC"), State Street Bank & Trust Company

("SSBT"), and State Street Global Advisors ("SSGA") (collectively, "State Street").  SSC is a

bank holding company and SSBT's corporate parent.[4]  SSBT manages State Street's securities

lending program and is trustee for the Lending Funds.[5]  SSGA is an unincorporated division of

---

[1] This court uses the term "Lending Funds" to refer to the Lending Funds that were part of the Collective Trust, listed in Schedule A of the Declaration of Trust, and that participated in securities lending pursuant to the Securities Lending Authorization Agreement.  Lending Funds are investment funds (like mutual funds) that pool together the investments of many institutional investors.  Am. Compl. ¶ 3 [#14]; Defs.' Answer ¶ 3 [#16].

[2] Pl.'s St. of Mat. Facts ¶ 2 [#115]; Defs.' St. of Mat. Facts ¶ 6 [#111].

[3] Memorandum & Order 9 [#156] (citing Pl.'s Mot. to Cert. Class 1-2 [#66]).

[4] Defs.' St. of Mat. Facts ¶ 11 [#111]; Am. Compl. ¶ 15 [#14].

[5] Defs.' St. of Mat. Facts ¶ 12 [#111]; Pl.'s St. of Mat. Facts ¶¶ 3, 8 [#115]

SSBT that manages the assets of the Lending Funds and collateral pools.[6]

B.    Overview of the Parties' Contractual Relationship

Prior to any class member's involvement with State Street, State Street unilaterally created a Collective Trust, consisting of a number of Lending Funds.[7] The Declaration of Trust, the formal document creating the Collective Trust, (1) established SSBT as the trustee for the Lending Funds, (2) gave SSBT the exclusive right to manage and control the Lending Funds, and (3) empowered SSBT to create new Lending Funds through Fund Declarations.[8]

Class members then executed contracts with State Street entitled "Investment Management Agreements."[9] Through these Agreements, class members (1) invested in Lending Funds that were part of State Street's Collective Trust, (2) appointed State Street as a trustee and investment manager for their investments, and (3) consented to State Street's fees for services such as investment management, administration, and trustee/custodial services.[10]

C.    State Street's Securities Lending

To generate investment income, State Street lent securities on behalf of the Lending Funds in which class members invested. State Street also retained a fee of 50% of the securities lending income as compensation for its securities lending services. The source of State Street's authority

---

[6] Pl.'s St. of Mat. Facts ¶¶ 10-12 [#115]; Defs.' St. of Mat. Facts ¶¶ 13-14 [#111].

[7] See Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 4 [#116].

[8] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 4 ¶¶ 3.1, 3.4, 6.1 [#116]

[9] There is no such Agreement between the Glass Dimensions Plan and State Street. This is because, unlike most class members, Glass Dimensions contracted with SSBT's former Trust Department, which State Street divested in 2003. Defs.' St. of Mat. Facts ¶ 3 [#111].

[10] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. OOO [#112].

3

to lend securities and retain a 50% lending fee is both disputed and central to this case.

State Street points to the Investment Management Agreement as the source of its authority.  The Investment Management Agreements, the initial contracts between class members and State Street discussed above, are silent as to securities lending.[11]  These Agreements do, however, purport to incorporate by reference two relevant documents: (1) the Declaration of Trust, and (2) the Fund Declarations.[12]  The Declaration of Trust provides that State Street, as trustee for the Lending Funds, shall have the "right[] and power[] . . . to lend securities . . . ."[13]  The Fund Declarations include the following (or substantially similar) language:

> The **Trustee may lend securities** held directly by the Fund in accordance with Prohibited Transaction Class Exemption 81-6 and Prohibited Transaction Class Exemption 82-63. . . . No less than fifty percent (50%) of the securities lending revenue will accrue to the benefit of the participants in the Fund.  As compensation for these securities lending services conducted on behalf of the Fund, **the Trustee will generally receive a fee of no more than 50%** of the income generated by such securities lending services.  **Specifics of the securities lending revenue split will be set forth in a separate agreement** between Trustee and the individual participant.[14]

Notably, the Investment Management Agreements, the Declaration of Trust, and the Fund Declarations do not expressly appoint State Street as the lending agent or state that State Street (rather than an unaffiliated lending agent) *will* provide securities lending services.  Also significant is the fact that none of these documents purport to establish the actual lending fee.

---

[11] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. OOO [#112].

[12] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. OOO [#112].

[13] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 4 ¶ 6.1 [#116].

[14] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Exs. CC-MM (emphasis added) [#112].  State Street provided Fund Declarations to investors when they initially invested in the Lending Funds.  Defs.' St. of Mat. Facts ¶ 29 [#111].

Plaintiff, in contrast, points to the Securities Lending Authorization Agreement as the source of State Street's authority.  The Securities Lending Authorization Agreement is a contract between SSBT, as trustee for the Lending Funds, and SSBT, as a lending agent.[15]  Through this Agreement, SSBT, acting as trustee, appointed itself as the lending agent for the Lending Funds and set its own lending compensation at 50%.[16]  State Street did not provide this Agreement to class members as a matter of course, but provided copies upon request.[17]

>    D.    Plaintiff's Claims

Plaintiff's theory of liability appears to be as follows.  First, Plaintiff claims that class members' initial contracts with State Street (Investment Management Agreements) established State Street as a fiduciary.  According to Plaintiff, these initial contracts gave State Street discretion in selecting a lending agent and setting the securities lending fee up to 50%.  Second, Plaintiff claims that State Street breached its fiduciary duties and engaged in prohibited transactions when it appointed itself as lending agent and set its lending fee at 50% in the Securities Lending Authorization Agreement.  Plaintiff argues that this was a self-dealing transaction, without competitive bidding or arm's length negotiation.  Finally, Plaintiff claims that State Street's 50% lending fee was unreasonable and unlike fees negotiated at arm's length.

Plaintiff brings two counts in its First Amended Complaint, including (1) breach of the fiduciary duties of loyalty and prudence under ERISA § 404, and (2) prohibited transactions under ERISA § 406.  Both sides have moved for summary judgment.

---

[15] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 6 [#116].

[16] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 6 [#116].

[17] Pl.'s St. of Mat. Facts ¶ 93 [#115]; Defs.' Counter-St. of Mat. Facts ¶ 93 [#158].

III.   Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."[18]  The movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19]  A factual dispute is "genuine" if a reasonable fact-finder could resolve the issue in favor of the nonmoving party.[20]  In the context of cross motions for summary judgment, the court must address each motion separately, viewing the record in the light most favorable to the nonmoving party.[21]

IV.   Defendants' Motion for Summary Judgment

State Street moves for summary judgment as to Counts I and II on five grounds, including: (1) Plaintiff's claims are barred by ERISA's three-year statute of limitations provision; (2) State Street was not a fiduciary at the time of the challenged conduct; (3) Plaintiff has failed to offer evidence of breach of fiduciary duty under ERISA § 404; (4) State Street's securities lending is exempted from liability under the relevant Department of Labor class exemptions; and (5) Plaintiff failed to offer evidence of damages.[22]  This court addresses each of State Street's arguments in turn and finds that genuine issues of material fact preclude judgment at this stage.

---

[18] Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).

[19] Fed. R. Civ. P. 56(a).

[20] United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

[21] Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).

[22] Def.'s Mot. for Summ. J. 1-2 [#].

1.     Statute of Limitations

State Street argues that the claims of class members that received Fund Declarations prior to April 2007 are barred by ERISA's three-year statute of limitations provision.  ERISA's three-year statute of limitations begins to run when a "plaintiff had actual knowledge of the breach or violation."[23]  A plaintiff has "actual knowledge" of an ERISA violation when he or she knows "the essential facts of the transaction or conduct constituting the violation."[24]

State Street has not established that any class member had actual knowledge of any violation prior to April 2007.  The Fund Declarations relied on by State Street provide that "the Trustee [State Street] will generally receive a fee of **no more than 50%**" for securities lending services.[25]  These Declarations merely disclose the fee "cap" or "ceiling," not the actual fee charged.  The Declarations do not even purport to disclose the actual fee, but state that "[s]pecifics of the securities lending revenue split will be set forth in a separate agreement . . . ."[26]  Moreover, the Declarations state only that State Street "may" provide lending services to the

---

[23] 29 U.S.C. § 1113.

[24] Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 142 (1st Cir. 2005) (quoting Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992)).  "[A]ctual knowledge must be distinguished from constructive knowledge.  To charge [plaintiff] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues."  Martin, 966 F.2d at 1086 (citations and internal quotation marks omitted).

[25] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Exs. 13-17 (Fund Declarations) [#118] (emphasis added); see also Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Exs. CC-MM [#112] (emphasis added).

[26] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Exs. 13-17 (Fund Declarations) [#118]; see also Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Exs. CC-MM [#112].

Lending Funds, not that it actually did or would provide such services.[27]  Consistent with these

Declarations, State Street could have negotiated a 10% fee with an unaffiliated lending agent, and

there would be no ERISA violation.  Because the Fund Declarations do not convey "actual

knowledge" of the alleged violations, they are insufficient to trigger ERISA's three-year statute of

limitations.[28]  Accordingly, summary judgment is denied on this ground.

> 2.      Count I: State Street as a Fiduciary

State Street argues that Plaintiff cannot recover under ERISA § 404 because State Street

was not a fiduciary with respect to the 50% securities lending fee.  ERISA extends liability not

only to named fiduciaries, but also to functional fiduciaries.[29]  An entity is a functional fiduciary

"to the extent" that it exercises discretion or control over an ERISA plan, its administration, or its

assets.[30]  Discretion is the key determinant of fiduciary status under ERISA.[31]

When an entity enters into a contract with an ERISA plan and the contract gives the entity

discretion in making decisions regarding the plan or its assets, the entity may become a fiduciary

with respect to those decisions.[32]  For instance, if a contract gives an entity discretion and control

---

[27] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Exs. 13-17 [#118].

[28] Cf. Young v. Gen. Motors Inv. Mgmt. Corp., 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008) (finding plaintiffs' ERISA claim time-barred where plaintiffs received quarterly performance summaries that "clearly disclosed the fees and expenses").

[29] Livick v. The Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008).

[30] Id.; see also 29 U.S.C. § 1002(21)(A); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).

[31] Beddall, 137 F.3d at 18; Pohl v. Nat'l Benefits Consultants, Inc., 956 F.2d 126, 129 (7th Cir. 1992) ("ERISA makes the existence of discretion a sine qua non of fiduciary duty.").

[32] See Seaway Food Town, Inc. v. Med. Mut. of Ohio, 347 F.3d 610, 618-19 (6th Cir. 2003); Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 737 (7th Cir. 1986) ("When

over the factors that determine the amount of its compensation, the entity becomes an ERISA fiduciary with respect to its compensation.[33]

Plaintiff has offered sufficient evidence that State Street was a fiduciary with respect to its compensation.  In particular, Plaintiff has offered evidence that State Street's initial contracts with class members (Investment Management Agreements) established, at most, the maximum lending fee and gave State Street discretion to set its fee anywhere from 0% to 50%.[34]  These agreements appear to give State Street significant discretionary authority to determine the amount of its lending compensation.  Accordingly, summary judgment is denied on this ground.[35]

### 3.   Count I: Breach of Fiduciary Duty

State Street argues that Plaintiff has failed to offer evidence that State Street breached its fiduciary duties.  ERISA § 404(a)(1)(A) and (B) "impose[] upon fiduciaries the twin duties of

---

a contract, however, grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary.").

[33] Seaway, 347 F.3d at 619; F.H Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987) ("[A]fter a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.") (citing Sixty-Five Security Plans v. Blue Cross & Blue Shield, 583 F.Supp. 380, 387-88 (S.D.N.Y. 1984)); Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189, 197 (D. Mass. 2008) (citing cases); Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co., No. 07-11344-GAO, 2008 WL 4457861, at *4 (D. Mass. Sept. 30, 2008) (citing cases).

[34] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. OOO (Investment Management Agreements) (purporting to incorporate by reference the Fund Declarations) [#112]. Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Exs. CC-MM ("Trustee will generally receive a fee of no more than 50% . . . .") [#112].

[35] Plaintiff presents a number of alternative arguments to support State Street's status as a fiduciary.  Because this court finds the above evidence sufficient at this stage, the court need not address Plaintiff's alternative arguments.

loyalty and prudence," which are among "the highest known to the law."[36]  ERISA's duty of

loyalty requires a fiduciary to discharge its duties "solely in the interest of the [plan] participants

and beneficiaries" and "for the exclusive purpose" of providing them with benefits.[37]  ERISA's

duty of prudence requires a plan fiduciary to discharge its duties "with the care, skill, prudence,

and diligence" of a prudent person under the circumstances.[38]  In evaluating prudence, courts

"focus on the process by which [the fiduciary] makes its decisions rather than the results of those

decisions."[39]  The inquiry is whether the fiduciary employed proper methods to investigate and

evaluate decisions regarding the plan and its assets.[40]

　　　　Plaintiff presents sufficient evidence to survive summary judgment on this count.  First,

Plaintiff offers evidence that, contrary to State Street's assertion, State Street did not negotiate

the 50% lending fee with class members at arm's length as part of the Investment Management

---

[36] Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595, 598 (8th Cir. 2009) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

[37] 29 U.S.C. 1104(a)(1)(A); see Donovan, 680 F.2d at 271-72; Leigh v. Engle, 727 F.2d 113, 125-26 (7th Cir. 1984) ("Where it might be possible to question the fiduciaries' loyalty, they are obligated at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.").

[38] See 29 U.S.C. 1104(a)(1)(B).

[39] Braden, 588 F.3d at 595; see Bunch v. W.R. Grace & Co., 555 F.3d 1, 7 (1st Cir. 2009).

[40] See Braden, 588 F.3d at 595; Hunter v. Caliber Sys., Inc., 220 F.3d 702, 723 (6th Cir. 2000); see also Gary W. Howell, Allocation and Delegation of ERISA Fiduciary Responsibility, in ERISA Fiduciary Law 8-1, 8-4 (Susan P. Serota & Frederick A. Brodie eds., 2d ed. Supp. 2011) ("Counts continue to hold that whether fiduciaries have satisfied the duty of prudence will be determined in large part by examining the process undertaken by the fiduciary.").

Agreements.[41]  Rather, Plaintiff presents evidence that the Investment Management Agreements,

at most, established the maximum possible lending fee and stated that State Street would

negotiate the specific lending fee as part of a separate contract.[42]

Second, Plaintiff presents evidence that State Street engaged in self-dealing when State

Street, acting as trustee for the Lending Funds, contracted with itself to appoint itself as lending

agent at a 50% fee in the Securities Lending Authorization Agreement.[43]  Plaintiff further presents

evidence that State Street did so without arm's length negotiation, competitive bidding, or any

evaluation of alternative lending agents or fees.[44]

Finally, Plaintiff presents evidence that the 50% lending fee was unreasonable and unlike

fees negotiated at arm's length.  According to Plaintiff's data, State Street charged other clients

significantly lower lending fees when it engaged in arm's length negotiation or competitive

bidding.[45]  In particular, State Street charged other clients, including other commingled

---

[41] Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 25-37 [#115]; Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 5, p. 21:6-22:15 (Bonn Dep.), and Ex. 7, p. 15:7-24 (Cullinane Dep.) [#116].

[42] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. OOO (Investment Management Agreements) ("The terms and conditions of the . . . Fund Declaration creating the Funds, are hereby adopted and incorporated by reference . . . .") [#112]; Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Exs. 13-17 (Fund Declarations) ("[T]he Trustee will generally receive a fee of *no more than 50%* of the income generated by such securities lending activities.  Specifics of the securities lending revenue split will be set forth *in a separate agreement* between the Trustee and the individual participant.") (emphasis added) [#118].

[43] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 6 (Securities Lending Authorization Agreement), Ex. 5, p. 21:6-22:15 (Bonn Dep.), and Ex. 7, p. 31:5-9 (Cullinane Dep.) [#116]; see also Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 25-37 [#115].

[44] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 5, p. 32:6-33:8, 36:9-37:13; 38:9-21 (Bonn Dep.), and Ex. 9, p. 32:7-16 (Starble Dep.) [#116, #119].

[45] Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 80-88 [#115].

investment funds, fees of between 10% and 25% during the class period for essentially the same securities lending services.[46]   In light of this evidence, a reasonable fact-finder could conclude that State Street breached its duties of loyalty and prudence.[47]

State Street argues that Plaintiff's evidence is insufficient because it fails to account for the fact that the 50% lending fee was part of a "bundle" of fees for a number of services.   State Street argues that the "bundle" of fees, taken as a whole, was reasonable because the 50% lending fee was offset by lower investment management fees.   The parties, however, dispute whether the 50% fee was part of a "bundle" or a separate fee for a separate service (securities lending).   Plaintiff presents evidence that the 50% lending fee was not set as part of a "bundle," but that State Street set the investment management fees and securities lending fees at distinct points in time and in distinct contracts.[48]   Plaintiff further presents evidence that SSGA's Chief Investment Officer, Steven Meier, testified before the United States Senate that State Street's lending fee was separate from, and "not tied to," its fee for management of the collateral pools.[49]   From this evidence, a reasonable fact-finder could conclude that the 50% fee was a separate fee for

---

[46] Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 80-88 [#115].

[47] Contrary to State Street's argument, Plaintiff need not offer evidence or expert analysis of State Street's lending performance after State Street allegedly appointed itself as lending agent for the Lending Funds at a 50% fee.   The test under § 404 focuses on the fiduciary's conduct leading up to the challenged decision, not the results of that decision.   See Bunch v. W.R. Grace & Co., 555 F.3d 1, 7 (1st Cir. 2009) ("The 'test [is] how the fiduciary acted viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight.'" (quoting Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917-18 (8th Cir. 1994))).

[48] Konstandt Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. OOO (Investment Management Agreements) [#112]; Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 6 (Securities Lending Authorization Agreement) [#116].

[49] Porter Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 12, p. 4 [#118].

securities lending services.  For these reasons, summary judgment is denied as to Count I.

4.    Count II: Prohibited Transactions and PTE 2006-16

State Street argues that its use of an affiliated lending agent is exempted from liability

under ERISA § 406 by the Department of Labor's Prohibited Transaction Exemption ("PTE")

2006-16.[50]  State Street is not entitled to summary judgment on Count II because there are

genuine issues of material fact as to State Street's compliance with PTE 2006-16.

For instance, the parties present conflicting evidence as to whether State Street's 50%

lending fee was "reasonable," as required by PTE 2006-16, § IV(c).  On one hand, State Street's

experts opine and present data that the 50% fee was (1) "not uncommon" in the industry, (2) the

same as the fee charged by State Street's competitor, Barclays Global Investors, and (3) "within

the range of fees that could result from arm's length bargaining."[51]  On the other hand, Plaintiff's

experts opine and present data that the 50% fee was "unreasonable when compared to what are

the common or prevailing fees paid to lending agents through arm's length transactions."[52]  The

---

[50]  U.S. Dep't of Labor, Prohibited Transaction Exemption 2006-16, 71 F.R. 63786 (Oct. 31, 2006) [hereinafter "PTE 2006-16"].  State Street also relies on PTE 2006-16's predecessors, PTE 81-6 (46 F.R. 7527, Jan. 23, 1981) and PTE 82-63 (47 F.R. 14804, Apr. 6, 1982).  The requirements of these provisions are the same for the purposes of the parties' motions and neither party distinguishes between these provisions.  As a result, the court uses the term "PTE 2006-16" to refer to all of these provisions.

[51]  Konstandt Dec. in Supp. of Defs.'s Mot. for Summ. J. Ex. A ¶¶ 38, 39 (Expert Report of Erik Sirri), and Ex. B ¶¶ 18, 44 (Expert Report of Edmon Blount) [#112].

[52]  Konstandt Dec. in Supp. of Defs.'s Mot. for Summ. J. Ex. C § III, ¶ 24 (Expert Report of Gregory Harmon) [#112]; see also Pl's St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 80-88 [#115].

parties' conflicting evidence on this issue precludes summary judgment on Count II.[53]

5.    Damages

State Street argues that Plaintiff has failed to establish damages.  Summary judgment is not appropriate on this ground because there are genuine issues of material fact as to the existence and extent of any losses suffered by the Class.

ERISA § 409(a) permits the Class to recover damages for the losses it suffered as a result of any breach of fiduciary duty by State Street.[54]  The purpose of this damage provision is to restore the Class to the position it would have occupied but for State Street's breach.[55]

Plaintiff argues that the proper measure of damages is the difference between (1) the 50% lending fee that State Street charged the Class, and (2) the securities lending fee that State Street charged its other clients during the class period.  In particular, Plaintiff presents data on the securities lending fees State Street charged agency lending clients and other commingled investment funds, such as mutual funds and exchange traded funds ("ETFs").[56]

Plaintiff argues that State Street's other clients provide a proper point of comparison for two reasons.  First, the fees State Street charged these other clients were for the same service

---

[53] There are also triable issues as to whether State Street's securities lending disclosures were "reasonable" under PTE 2006-16, § IV(e) and whether the rebates paid by the Class were comparable to transactions with unrelated parties under PTE 2006-16, § II(f)(2).  These issues similarly preclude summary judgment and are discussed in more detail below in relation to Plaintiff's motion for summary judgment.

[54] See 29 U.S.C. § 1109(a).

[55] Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985); Eaves v. Penn, 587 F.2d 453, 462 (10th Cir. 1978).

[56] Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 80-88 [#115].

(securities lending) from the same service provider (State Street) during the same time period (2004 to the present) as the 50% fee at issue in this case.  Second, the only significant distinguishing factor between the fees paid by the Class and those paid by State Street's other clients is that the latter were negotiated at arm's length, set through competitive bidding, and/or overseen by an independent board.  Accordingly, Plaintiff argues that the fees that State Street charged its other clients represent the fees that the Class would have paid had State Street engaged in competitive bidding and arm's length negotiation.

For instance, Plaintiff provides evidence that independent retirement plans that negotiated at arm's length with State Street for securities lending services paid an average fee of 20%, as compared to the 50% fee in this case.[57]  Plaintiff further presents evidence that State Street charged a securities lending fee of 15-25% for its own family of in-house pooled mutual funds, where these fees were set through competitive bidding and overseen by an independent board.[58] Finally, Plaintiff's expert, Steve Pomerantz, offers various damage calculations, including the opinion that "[h]ad the Lending Funds paid the average fee paid by State Street's Mutual Funds and ETFs, the Lending Funds would have paid State Street $504.4 million less during the period 2004-2010."[59]  This evidence presents a triable issue as to damages.

State Street argues that Plaintiff's evidence is insufficient because Plaintiff has not established that State Street's other clients are the proper benchmark for calculating damages.

---

[57] Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 82-87 [#115].

[58] Pl.'s St. of Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 80, 88 [#115].

[59] Konstandt Dec. in Supp. of Defs.'s Mot. for Summ. J. Ex. D ¶ 9 (Expert Report of Steve Pomerantz).

Yet, Plaintiff's expert, Steve Pomerantz, opines that the comparison of Lending Funds to internal mutual funds and ETFs is "especially apt" because these funds are all in-house pooled investment products offered by State Street that entail "more or less the same core services to investors."[60] State Street's own experts admit that mutual funds are "similar" to Lending Funds and compare the 50% Lending Fund fee to the lending fees for mutual funds and ETFs.[61]  From this evidence, a reasonable fact-finder could conclude that State Street's other clients provide a proper point of comparison.  Accordingly, summary judgment for State Street is not warranted.

V.      Plaintiff's Motion for Summary Judgment

        Plaintiff moves for summary judgment as to Count II.  Plaintiff argues that the undisputed evidence establishes that State Street engaged in prohibited transactions under ERISA § 406 when it loaned securities at a 50% fee.  Plaintiff further argues that State Street is not shielded from liability under PTE 2006-16 because State Street has not offered evidence of compliance with PTE 2006-16, § II(f)(2) (rebate requirement) and § IV(e) (disclosure requirement).[62]  This court finds that Plaintiff is not entitled to summary judgment as to Count II because there are genuine disputes of material fact as to State Street's compliance with these provisions.

        1.      PTE 2006-16, § II(f)(2): Rebate Rates

        Plaintiff argues that State Street failed to offer evidence of reasonable rebate rates under

---

        [60] Konstandt Dec. in Supp. of Defs.'s Mot. for Summ. J. Ex. D ¶ 9 (Expert Report of Steve Pomerantz).

        [61]  Konstandt Dec. in Supp. of Defs.'s Mot. for Summ. J. Ex. A ¶¶ 24, 37, 38  (Expert Report of Erik Sirri), and Ex. B ¶¶ 33, 44 (Expert Report of Edmon Blount) [#112].

        [62] To the extent that Plaintiff challenges State Street's evidence of compliance with PTE 2006-16, § IV(c), § II(f)(1) and § II(g), there are genuine disputes of material fact as to the "reasonableness" of State Street's 50% fee, as described in more detail above.

PTE 2006-16, § II(f)(2).  This provision requires that any rebates paid by a plan are "not greater than the plan would pay in a comparable transaction with an unrelated party."[63]

State Street has offered sufficient evidence of compliance with PTE 2006-16, § II(f)(2) to survive summary judgment.  In particular, State Street has offered evidence that: (1) State Street negotiated rebates at arm's length with unrelated borrowers; (2) State Street negotiated rebates blindly, without regard to the identity of the client; (3) the Lending Funds paid the same rebates as State Street's other clients that lent the same security at the same time; and (4) State Street reviewed its rebates against a third-party data aggregator to ensure competitive rates.[64]  State Street has also offered raw data for the rebates rates on three dates during the class period.[65]  In response, Plaintiff offers expert testimony to rebut this evidence.[66]  The parties' conflicting evidence as to State Street's compliance with PTE 2006-16, § II(f) precludes summary judgment.

2.      PTE 2006-16, § IV(e): Lending Disclosures

Plaintiff also argues that State Street's lending disclosures did not comply with PTE 2006-16, § IV(e).  This provision requires that:

> No such authorization is made or renewed unless the Lending Fiduciary shall have furnished the authorizing fiduciary with **any reasonably available information** which the Lending Fiduciary **reasonably believes to be necessary** to determine whether such authorization should be made or renewed, and any other reasonably available information regarding the matter that the authorizing fiduciary may

---

[63] PTE 2006-16, § II(f)(2).

[64] Defs.' St. of Mat. Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 66, 69-72 [#111]; Defs.' Counter-St. of Mat. Facts in Supp. of Defs.' Opp'n to Pl.'s Mot. for Summ. J. § II, ¶¶ 84-89 [#158].

[65] Bonn Decl. in Supp. of Defs.' Mot. for Summ. J. Ex. A [#113-2].

[66] See Expert Report of John Tobacco ¶¶ 31, 35 [#225].

reasonably request.[67]

The parties do not dispute the second requirement of this provision – that State Street made information available upon reasonable request.  The parties do, however, dispute whether State Street provided the Class with the information that State Street reasonably believed necessary for the Class to authorize State Street's securities lending transactions.[68]

Plaintiff argues that State Street did not provide the information "reasonably necessary" because it did not provide the Class with copies of the lending contract (Securities Lending Authorization Agreement) and did not disclose the actual lending fee.  State Street responds that its disclosure of the Fund Declarations was sufficient because the Declarations informed the Class of (1) the objectives of the Lending Funds, (2) the maximum securities lending fee, and (3) the fact that State Street "may" lend securities in accordance with PTE 2006-16.

The question presented is whether the Fund Declarations provided the Class with the information "reasonably necessary" under PTE 2006-16, § IV(e).  Reasonableness is traditionally a question of fact, and thus inappropriate for summary judgment.[69]  Reasonableness only becomes a question of law if reasonable minds cannot differ on the question.[70]  That is not the case here for several reasons.  First, ERISA and PTE 2006-16 provide no statutory or regulatory definition of

---

[67] PTE 2006-16, § IV(e) (emphasis added).

[68] PTE 2006-16, § IV(e) appears to have both a subjective and objective component.  This provision requires that State Street provide the information it believed necessary and that State Street's belief was objectively reasonable.

[69] See TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976) (citing 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2729 (1973)).

[70] See id. (citing cases).

what disclosures are reasonably necessary under PTE 2006-16, § IV(e).  Second, there is no case

law interpreting the disclosures required by this provision.  Finally, the parties have not presented

any evidence regarding industry practices for securities lending disclosures.

In the absence of any binding or persuasive authority on the issue, this court cannot say at

this stage of the trial sequence that State Street's disclosures were unreasonable as a matter of

law.  The reasonableness of State Street's disclosures is better resolved at trial.  Accordingly,

Plaintiff is not entitled to summary judgment on this ground.

VI.   Conclusion

Genuine disputes of material fact preclude judgment at this stage.  Accordingly,

Defendants' Motion for Summary Judgment [#109] and Plaintiff's Motion for Summary Judgment

[#104] are both DENIED.


AN ORDER HAS ISSUED.

                                                            /s/ Joseph L. Tauro
                                                     United States District Judge