**EXHIBIT A TO THE DECLARATION OF BRAD E. KONSTANDT
IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE
TO TAKE EXPERT DEPOSITIONS, DATED APRIL 1, 2013**

NASD REGULATION, INC.
DISTRICT BUSINESS CONDUCT COMMITTEE
FOR DISTRICT NO. 10
Complaint No. C10960146

| | |
|---|---|
| District Business Conduct Committee For District No. 10, <br><br> Complainant <br><br> vs. <br><br> John Anthony Tabacco, Jr. <br> (CRD #2239885) <br><br><br><br> Respondent. | **DEFAULT DECISION** <br><br> DATED: February 3, 1997 |

The Complaint in this matter was filed on November 15, 1996, pursuant to an order of an examination subcommittee of the District Business Conduct Committee for District No. 10 (the "Committee"), after its review of a staff investigation revealed apparent violations by Respondent John Anthony Tabacco, Jr. ("Tabacco") of NASD Regulation, Inc. (the "NASDR") Conduct Rule 2110.

## BACKGROUND

At all times alleged in the Complaint, Respondent Tabacco was registered with the NASDR as a General Securities Representative ("GSR") and employed with the following member firms: First Hanover Securities, Inc. ("Hanover") (BD No. 14469), from in or around September 1992 through February 1994, and Russo Securities, Inc. ("Russo") (BD No. 14425), from in or around February 1994 through February 1995.

Respondent Tabacco is not currently registered with the NASDR. He nonetheless remains subject to the jurisdiction of the NASDR, pursuant to Article IV, Section 4 of the By-Laws of the National Association of Securities Dealers, Inc. (the "Association").

## THE COMPLAINT

The Complaint consists of one Cause which alleges that Respondent Tabacco executed, or caused to be executed, eleven (11) transactions in three (3) unrelated customer accounts, as is more fully set forth in the Complaint, without the prior knowledge, authorization or consent of the respective customers.

000141253 2008

John Anthony Tabacco, Jr.                                    Complaint No. C10960146

Page 2

By reason of the foregoing, Respondent Tabacco is alleged to have violated NASDR Conduct Rule 2110.

## NOTICE OF COMPLAINT

By certified mail dated November 15, 1996, the first Notice of Complaint was served upon Respondent Tabacco at his last known address as reflected in the Association's records. This mailing was returned to the Association marked, "Unclaimed." By first-class and certified mail dated December 16, 1996, the second Notice of Complaint was served upon Respondent Tabacco at his last known address as reflected in the Association's records. The certified mailing was returned to the Association marked, "Unclaimed," but the first-class mailing was not returned.

## FINDINGS AND CONCLUSIONS

We have reviewed the Complaint and the exhibits presented, and we are satisfied that sufficient evidence exists to support the allegations that Respondent Tabacco executed eleven (11) unauthorized transactions in the accounts of three (3) customers, as set forth in the Complaint.

The evidence includes: Respondent Tabacco's CRD abstract; the transcript from Respondent Tabacco's on-the-record interview, along with the corresponding exhibits; Hanover's letters dated June 1, 1994, with attachment, and April 23, 1996, in response to the staff's inquiry regarding the complaint of customer WM; Respondent Tabacco's letter, dated May 24, 1994, in response to the staff's inquiry regarding the complaint of customer WM; Russo's letter, dated May 1, 1995, in response to the staff's inquiry regarding the complaint of customer WM; Respondent Tabacco's letter dated, December 8, 1995, in response to the staff's inquiry regarding the complaint of customer BP; a complaint letter from customer BP, dated February 14, 1995, sent to the NASDR regarding Respondent Tabacco's conduct; affidavit from customer WM; affidavit from customer DG; affidavit from customer BP; memoranda of conversations between the staff and customers BP and WM; customer WM's complaint letter, dated February 24, 1994; commission statements for Respondent Tabacco from Hanover and Russo; customer DG's tax returns and new account form; customer WM's account statements; the envelopes containing the certified mailing for the first and second Notices of Complaint marked, "Unclaimed."

We note that under the provisions of Procedural Rule 9134, the mailing of the Complaint to Respondent's last known address as reflected in the Association's records constitutes valid service and notice. Based upon the record before us, we are satisfied that the Association has fulfilled its obligations under the Code of Procedure to serve and notify the Respondent of the Complaint. Importantly, the fact that the Respondent Tabacco has apparently failed to update his address records

John Anthony Tabacco, Jr.                                            Complaint No. C10960146

Page 3

with the Association is in no way exculpatory. Associated persons have the unqualified obligation to keep their records current. If they fail to do so, they must suffer the consequences of their inaction.

Respondent Tabacco has failed to file an Answer in response to the charge in the Complaint. Pursuant to Procedural Rule 9126, we hereby treat Respondent Tabacco's failure to file an Answer as constituting an admission of the allegations in the Complaint. In reaching our decision, we have relied on this as well as upon the evidence presented which clearly supports findings that Respondent Tabacco executed eleven (11) unauthorized transactions in three (3) unrelated customer accounts.

We acknowledge Respondent Tabacco's position with respect to each of the customer complaints, as set forth in his responses to the staff's requests for information and to the questions posed by the staff during Respondent Tobacco's on-the-record interview; however, we find that his contention that customers WM, DG and BP authorized all trading in their accounts lacks the support of credible evidence. The evidence against Respondent Tabacco is most compelling, as each customer has formally complained to the staff and has provided the staff with an affidavit consistent with their respective complaints.

In his various responses to the staff's requests for information, Respondent Tabacco essentially contended that each of the customers authorized all trades which he executed in their accounts. He noted that customer WM waited until months after the trades were executed before complaining. With respect to customer DG, Tabacco himself characterized the initial purchase of 1,500 shares of Krantor Corp. ("Krantor") as a mistake, but claimed that DG ratified the trade when he subsequently told Tabacco to sell a losing position in his account to pay for the trade. In addition, Tabacco asserted that, although DG had initially authorized the purchase of 25,000 additional shares of Krantor and had even represented to Tobacco that he would sell a bond fund to pay for the trade, DG had later complained that he never authorized the trade because the price of the stock had declined. Similarly, Tabacco maintained that customer BP had accused him of executing an unauthorized trade in his account only after the price of the stock had declined.

With respect to customer WM, we find the eight (8) disputed trades took place as alleged in the Complaint. As to the delay in the filing of a complaint by customer WM, we reject Tabacco's assertion that this should imply the customer authorized the trade. After all, customer WM made a diligent attempt to resolve this matter with Tabacco and his firm. For example, customer WM contacted Tabacco concerning the activity in his account after he received the confirmations of the first four (4) unauthorized transactions, which all occurred within a period of four (4) days. According to customer WM, Tabacco repeatedly assured him that he knew what he was doing and that "there was no reason to worry." After the fifth unauthorized transaction on August 6, 1993, customer WM contacted the compliance officer at Hanover to inquire about the unauthorized activity in his account, but his call was never returned. Customer WM complained a second time to Tabacco after the last three (3) transactions, which were all executed on September 23, 1993. Customer WM

John Anthony Tabacco, Jr.                                         Complaint No. C10960146

Page 4

recalled that Tabacco told him that he had been "forced to sell" WM's positions in Producers Entertainment Group Ltd. and ACC Corp. in order to purchase 5,000 shares of Western Micro Technology Inc. Finally, after several unsuccessful attempts to resolve this matter with Tabacco and his firm, customer WM filed a complaint with the Association on February 24, 1994.

In his on-the-record interview, Tabacco admitted to the staff that the purchase of 1,500 shares of International Colin Energy Corp. on July 20, 1993 into WM's account had been an "error," stating "I believe I purchased two securities with the thought that the money was there, and it was an error on my part and one of those trades was cancelled." He further admitted that WM had "probably" called him about the disputed trades and acknowledged that he has offered customers "some sort of discount" if the customers were unhappy with his service. This testimony evidences Tabacco's failure to properly service his accounts, and lends credibility to the customer's allegations. Notably, WM continued to cooperate with the staff's investigation, even though he incurred no losses in his account due to a settlement with Hanover in April 1994.

We find Respondent Tabacco's actions with respect to customer WM's account to be outrageous and extremely unsettling. His behavior was completely reprehensible. If this were the only customer complaint, harsh sanctions would be warranted, but, unfortunately, there are two other complaining customers.

Customer DG's affidavit attests to the fact that Respondent Tabacco executed two (2) unauthorized trades in his account, as alleged in the Complaint. Respondent Tabacco readily admitted to the staff, in his on-the-record interview, that the purchase of 25,000 shares of Krantor on April 14, 1994 in customer DG's account was unsuitable, a violation of NASDR Conduct Rules 2110 and 2310. However, since a suitability violation was not charged in the Complaint, we will not pass upon this issue here. Notwithstanding, we still find that Respondent Tabacco's conduct, at a minimum, violates Conduct Rule 2110.

Customer DG complained to Tobacco upon receiving the confirmation of the first unauthorized trade, and was told by Tobacco that the transaction had been an error and would be corrected. Although DG told Tabacco to sell a position in his account to pay for the trade, "[t]he fact that a customer accepts an unauthorized trade does not affect the NASD's authority to discipline the salesman for effecting it." Howard Alweil, Securities Exchange Act Release No. 31278, 52 SEC Docket 2506, 2508 (October 1, 1992). After the second trade, customer DG contacted Tabacco who indicated that the trade was a mistake and would be corrected. However, the trade was not cancelled and the equity in DG's account was liquidated to satisfy the debit balance resulting from the

John Anthony Tabacco, Jr.                                    Complaint No. C10960146

Page 5

unauthorized trade. Customer DG wrote to the Association to complain about Tabacco on June 9, 1994. We note that customer DG's credibility was enhanced by his willingness to cooperate with the staff's investigation even though he did not sustain any losses due to a settlement with Russo in March 1996.

In his on-the-record interview, Tabacco admitted that, "Maybe I used some sales techniques that I shouldn't have to convince the guy to buy 25,000 shares of a speculative security." Further, Tabacco admitted that "I probably didn't know my customer good [sic] enough and wasn't aware of his financial parameters at that point when I posed the investment to him," and conceded that when he executed the trade, he "assumed" that the customer would liquidate his bond fund to pay for the trade.[1] Customer DG told the staff that Tabacco continually asked about his positions at other firms, but denied that he had ever told Tabacco that he owned a bond fund, much less that he would sell it to purchase Krantor. Viewed in this light, Tabacco's testimony that the trades were authorized is clearly incredible.

Customer BP's affidavit attests to the fact that Respondent Tabacco executed an unauthorized trade in his account, as alleged in the Complaint. Customer BP complained to Tabacco upon receiving the confirmation of the trade. Tabacco told customer BP that the trade was a mistake that would be corrected. Once again, the transaction was not cancelled and the customer was sold out of existing positions in his account to satisfy the debit balance created by the unauthorized trade. Customer BP subsequently wrote to the Association to complain about Tabacco on February 14, 1995.[2]

---

[1] Tabacco stated, "[I]n my discussion with him (customer DG), I had my history. I've always been a broker to ask that my clients take big positions in securities. I had a very small account with him, was very excited about the particular security, I asked the client to take a large position, I was very persistent in asking, he told me that he had a bond fund at another firm that could probably cover the amount of the trade, and I went ahead and did the trade assuming that the customer would liquidate his bond fund to pay for it."

[2] We note that BP signed a letter, dated April 11, 1995, that was addressed to the firm in which he stated, among other things, "Per our conversation on April 11, 1995, I realize that this was a misunderstanding and I am satisfied with the resolution of this problem. I will expect this to be completely resolved within a week." We note, however, that BP subsequently told the staff that the language in the letter had been provided by the firm and that he submitted and signed the letter in an effort to recoup his losses. Most important, BP expressly manifested his willingness to cooperate with the staff when he executed his affidavit on May 11, 1995, notwithstanding an earlier settlement with Russo in which the firm agreed to incur the entire loss which had resulted from the unauthorized trade in BP's account.

John Anthony Tabacco, Jr.             Complaint No. C10960146

Page 6

Finally, we recognize that BP waited eight (8) months to file a complaint with the NASDR against Respondent Tabacco. However, BP told the staff that had tried unsuccessfully to resolve the dispute over the unauthorized trade with Russo during that period, and provided the staff with a detailed chronology of his efforts (attached to his duly executed affidavit), which tends to support his explanation for the delay in filing his complaint.

In sum, we find that the trades which are at issue here were effected by Respondent Tabacco in each of the customers' accounts without their knowledge, authorization or consent, as alleged in the Complaint. We find that Respondent Tabacco's actions in this matter were completely outrageous and that his contradictory statements were utterly disgraceful. Each customer complained of the unauthorized activity in his account and diligently pursued his complaint, nowithstanding that the losses in their accounts had been absorbed by the Respondent's employer at the time. Finally, Respondent Tabacco's self-serving defenses were either convenient, contradictory or incriminatory and, therefore, in no way exculpatory.

Accordingly, in light of the foregoing, we find that Respondent Tabacco has violated Conduct Rule 2110 in each of the transactions as set forth in the Complaint.

## SANCTIONS

In determining appropriate sanctions, we have considered all of the evidence presented. We consider the effecting of unauthorized trades in customer accounts to be extremely serious misconduct which demonstrates a total disregard for the high standards of conduct to which all associated with the securities industry must adhere, and serves only the registered representative's avaricious desires. Thus, stringent sanctions are needed so as to deter others similarly situated from engaging in similar misconduct

John Anthony Tabacco, Jr.                                   Complaint No. C10960146

Page 7

Accordingly, for the violations found, it is the decision of the Committee that Respondent Tabacco be censured, fined $50,000, barred from associating with any member in any capacity, ordered to pay restitution in the amount of $2,000 to Hanover Securities, Inc. and $18,000 to Russo Securities, Inc. (these firms reimbursed the customers) and required to disgorge $4,609.75, the commissions earned by Respondent Tabacco as a result of the unauthorized trades.

DISTRICT BUSINESS CONDUCT COMMITTEE
FOR DISTRICT NO. 10

BY: *[signature]*
Martin A. Kuperberg
Senior Vice President
Director
District No. 10
On Behalf of the Committee